

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

MELVYN D. TAYLOR

        Plaintiff,

vs.

PROVIDENT LIFE AND ACCIDENT
INSURANCE CO., and UNUM LIFE
INSURANCE COMPANY OF
AMERICA

        Defendants.

_____/

CASE NO. **00 - 06208**

**CIV-DAVIS**

### NOTICE OF REMOVAL

Defendants, Provident Life and Accident Insurance Co. ("Provident"), and UNUM Life Insurance Company of America ("UNUM"), hereby jointly file this Notice of Removal of the above-captioned cause from the Circuit Court of the Seventeenth Judicial Circuit of the State of Florida, in and for Broward County, in which Court the action is now pending, to the United States District Court for the Southern District of Florida, and states:

1.     Suit was commenced against Provident and UNUM in the Circuit Court of the Eleventh Judicial Circuit, in and for Dade County, Florida, Civil Division, entitled <u>Melvyn Taylor v. Provident Life and Accident Insurance Co. and UNUM Life Insurance Company of America</u>, Case No. 00-0445 CA 12. The Insurance Commissioner served Provident by mail with the Summons and Complaint on or about January 14, 2000, being first received by Provident thereafter. As of this date, UNUM is unaware of receipt of service of process.



2.    The Notice of Removal is timely filed within the period prescribed by 28 U.S.C.
§ 1446(b), in that it is filed within thirty days after receipt by Provident of notice of the initial
pleading setting forth the claim for relief upon which the action is based.

3.    This Court has original jurisdiction under the provisions of 28 U.S.C. § 1331, and this
matter is one which may be removed to this Court by Provident and UNUM pursuant to the
provisions of 28 U.S.C. § 1441, in that the complaint is a civil action of which the district courts have
original jurisdiction founded on a claim or right arising under the laws of the United States.

4.    The allegations of the Complaint are founded under disability insurance policies
issued by Provident and UNUM.  The policies were provided to certain employees of the dental
practice in which plaintiff Melvyn Taylor ("Taylor") worked.   Taylor's policies were issued to
certain employees through a plan established, maintained, or endorsed by the dental practice.
Applications to three of the Provident policies contain "yes" answers to the question: "Will your
employer pay for all disability coverage to be carried by you with no portion of the premium to be
included in your taxable income?" The fourth Provident policy contains a "yes" answer by Taylor
to the question: "Will your employer pay for all Accident and Sickness disability coverage to be
carried by you?"  In addition, an agreement was entered into between Provident and Taylor's
employer that provided that Provident would bill premiums to Taylor's employer for his policies.
Moreover, Taylor's UNUM policy application was amended to state that "All rights and benefits
under the Policy are reserved to the Insured, except that it is hereby agreed that premiums will be
payable by the Insured's Employer, under an employee accident or health plan . . . ."  Accordingly,
based on the foregoing, the policies at issue in this case are exclusively regulated by the Employee
Retirement Income Security Act of 1974 ("ERISA").  29 U.S.C. § 1001, et seq.

- 2 -

5.      Because the Complaint involves an ERISA claim, removal is proper under 28 U.S.C.

§ 1441, even though ERISA does not appear on the face of the Complaint. See Metropolitan Life

Insurance Co. v. Taylor, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).  ERISA has been held

by the Supreme Court to preempt all state law causes of action and to provide a federal forum for

actions such as the one herein.  Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549

(1987).

6.      Copies of all process, pleadings and orders served upon Provident in this case are

attached to this Notice of Removal.

7.      A copy of this Notice of Removal will be filed concurrently in the Circuit Court of

the Seventeenth Judicial Circuit, in and for Broward County Florida.

WHEREFORE, defendants, Provident Life and Accident Insurance Company and UNUM

Life Insurance Company of America, hereby jointly file this Notice of Removal, and pray that the

above action now pending against them in the Circuit Court in and for Broward County, Florida, be

removed therefrom to this Court.

Respectfully submitted,

**SHUTTS & BOWEN LLP**
Attorneys for Defendants
201 South Biscayne Boulevard
1500 Miami Center
Miami, Florida 33131
(305) 358-6300
(305) 381-9982 - Telecopier

By: _____
    John E. Meagher
    Florida Bar No. 511099
    Jeffrey M. Landau
    Florida Bar No. 863777

- 3 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed on this
_11th_ day of February, 2000, to: Walter G. Campbell, Esq., Krupnick, Campbell, Malone et al.,

700 S. E. Third Avenue, Courthouse Law Plaza, Suite 100, Fort Lauderdale, FL  33316.

_____
Of Counsel

MIADOCS 318621.1

- 4 -



IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY,
FLORIDA.

CASE NO.:          00  00445

MELVYN D. TAYLOR,

       Plaintiff,

v.

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY and UNUM
LIFE INSURANCE COMPANY OF
AMERICA,

       Defendants.

_____/

**RECEIVED**

JAN 19 2000

**LAW DEPT.**

### SUMMONS

THE STATE OF FLORIDA:

To All and Singular, the Sheriffs of said State:

      YOU ARE HEREBY COMMANDED to serve this summons and a copy of the complaint or petition in this action on defendant

### PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY

**By Serving:**    **Insurance Commissioner
Dept. of Insurance and State Treasurer
Service of Process
Revenue Process Section
P.O. Box 6200
Tallahassee, Florida 32314-6200**

      Each defendant is required to serve written defenses to the complaint or petition on **WALTER G. CAMPBELL, JR., ESQUIRE**, Krupnick, Campbell, Malone, Roselli, Buser, Slama & Hancock, P.A., plaintiff's attorneys, whose address is 700 Southeast Third Avenue, Suite 100, Fort Lauderdale, Florida, 33316, within twenty (20) days after service of this summons on that defendant, exclusive of the day of service and

1/10

to file the original of the defense with the Clerk of this Court either before service on plaintiff's attorneys or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

WITNESS my hand and seal of said Court. JAN 1 0 2000

ROBERT E. LOCKWOOD
As Clerk of Said Court

By:_____



YVONNE P. OATMAN

A TRUE COPY
Circuit Court Seal

In accordance with the Americans with Disabilities Act of 1990 (ADA), disabled persons who, because of their disabilities, need special accommodation to participate in this proceeding should contact the ADA Coordinator at 201 Southeast 6th Street, Room 136, Fort Lauderdale, Florida 33301 or Telephone Voice/TDD (954-357-6364) no later than five (5) business days prior to such proceeding.

2

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY,
FLORIDA.

CASE NO.:    00  00445

**12**

MELVYN D. TAYLOR,

        Plaintiff,

v.

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY and UNUM
LIFE INSURANCE COMPANY OF
AMERICA,

        Defendants.

_____/

A TRUE COPY
ROBERT E. LOCKWOOD

JAN 1 0 2000

RECEIVED
JAN 1 9 2000
LAW DEPT.

## COMPLAINT

COMES NOW the Plaintiff, MELVYN D. TAYLOR, by and through the undersigned

attorneys, and sues the Defendants, PROVIDENT LIFE AND ACCIDENT INSURANCE

COMPANY and UNUM LIFE INSURANCE COMPANY OF AMERICA, and as grounds

therefor would state:

    1.    This is an action for damages in excess of Fifteen Thousand ($15,000.00)

Dollars.

    2.    At all times material hereto, the Plaintiff, MELVYN D. TAYLOR (hereinafter

referred to as "DR. TAYLOR"), was and is a resident of Broward County, Florida.

    3.    At all times material hereto, the Defendant, PROVIDENT LIFE AND

ACCIDENT INSURANCE COMPANY (hereinafter referred to as "PROVIDENT"), was and

is an insurance company, authorized to do business in the State of Florida, and in fact, doing business in Broward County, Florida.

4.    At all times material hereto, the Defendant, UNUM LIFE INSURANCE COMPANY OF AMERICA (hereinafter referred to as "UNUM"), was and is an insurance company, authorized to do business in the State of Florida, and in fact, doing business in Broward County, Florida.

<u>COUNT I</u>

<u>BREACH OF CONTRACT AS TO DEFENDANT, PROVIDENT</u>

Plaintiff realleges and reavers Paragraphs 1-4 as if fully set forth herein and would further state:

5.    At all times material hereto, the Defendant, PROVIDENT, was engaged in the business of writing and selling occupational disability insurance policies and Defendant, PROVIDENT, regularly sold occupational disability insurance policies in Broward County, Florida.

6.    At all times material hereto, the Plaintiff, DR. TAYLOR, was regularly engaged in the occupation of an endodontic surgeon in Broward County, Florida.   At all times material hereto, Plaintiff's occupation as an endodontic surgeon was a recognized specialty within the scope of Plaintiff's degree and license to practice dentistry.

7.    On or about October, 1990, in consideration of premiums paid by the Plaintiff, DR. TAYLOR, the  Defendant, PROVIDENT, sold, executed and delivered to Plaintiff its occupations disability policies, Numbers 05031732; 00548958; 00836766 and 05023645.   A copy of the disability insurance policies are attached hereto as Plaintiff's Exhibit "A."

2

8.    All premiums for the occupational disability policies were paid and all conditions precedent to the liability of Defendant, PROVIDENT, under the disability policies have been fulfilled.

9.    The policies, among other things, provides:

Total Disability means that due to injuries or sickness:

1.    You are not able to perform the substantial and material duties of your occupation; and,

2.    You are under the care and attendance of a physician.

Your occupation means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled.

10.    The disability policies is occupation specialty specific in that Defendant, PROVIDENT, agreed to provide disability insurance for Plaintiff's occupation as an endodontic surgeon.    In the policies, Defendant, PROVIDENT, agreed to pay Plaintiff, DR. TAYLOR, a monthly disability payment if, because of injury or sickness, Plaintiff, DR. TAYLOR, became unable to perform the substantial and material duties of his occupation as an endodontic surgeon.

11.    Plaintiff, DR. TAYLOR, began to experience dermatological reactions to the use of any gloves required to be used by endodontic surgeons.    As a result of this significant dermatological condition, the Plaintiff, DR. TAYLOR, became sick and because of the sickness, he became unable to perform the substantial and material duties of his occupation as an endodontic surgeon.    At the time Plaintiff, DR. TAYLOR, became sick, and at all times material to the onset of his disability, Plaintiff, DR. TAYLOR, was regularly engaged in the occupation of an endodontic surgeon.    At all times material hereto, the

3

Plaintiff, DR. TAYLOR, received care by a physician which is appropriate for the sickness and condition causing the disability.    On or about November, 1995, Plaintiff, DR. TAYLOR, was declared totally disabled by Defendant, PROVIDENT, because of his sickness.

12.    Due to the total disability of the Plaintiff, DR. TAYLOR, a claim for disability benefits payable pursuant to Policy Numbers 05031731; 00548958; 00836766 and 05023645, was made by Plaintiff.    Plaintiff has complied with all conditions precedent to entitle him to recover under the policies, however, Defendant, PROVIDENT, has denied and/or refuses to pay the monthly disability payments required by the subject policies.

13.    Defendant's, PROVIDENT, actions in wrongfully failing and/or refusing to pay said occupational disability insurance benefits to Plaintiff, DR. TAYLOR, constitutes a breach of the disability policies.    As a result of Defendant's, PROVIDENT, breach of its obligations under the subject policies, Plaintiff, DR. TAYLOR, has sustained damages and will continue to sustain damages because he is being denied the benefits of said disability insurance policies.

14.    Plaintiff, DR. TAYLOR, has been required to retain the services of the undersigned law firm to prosecute this matter, and has become obligated to pay said firm a reasonable attorney fee for said representation.    Pursuant to Florida Statute §627.428, Plaintiff, DR. TAYLOR, has the right to recover attorney fees, pre-judgment interest and other costs from the Defendant, PROVIDENT.

WHEREFORE, Plaintiff, DR. TAYLOR, demands judgment for damages against the Defendant, PROVIDENT, together with pre-judgment interest, costs, attorney fees and demands trial by jury of all issues triable as of right by jury.

<u>COUNT I</u>

<u>BREACH OF CONTRACT AS TO DEFENDANT, UNUM</u>

Plaintiff realleges and reavers Paragraphs 1-4 as if fully set forth herein and would further state:

15.    At all times material hereto, the Defendant, UNUM, was engaged in the business of writing and selling occupational disability insurance policies and Defendant, UNUM, regularly sold occupational disability insurance policies in Broward County, Florida.

16.    At all times material hereto, the Plaintiff, DR. TAYLOR, was regularly engaged in the occupation of an endodontic surgeon in Broward County, Florida.   At all times material hereto, Plaintiff's occupation as an endodontic surgeon was a recognized specialty within the scope of Plaintiff's degree and license to practice dentistry.

17.    On or about October, 1972, in consideration of premiums paid by the Plaintiff, DR. TAYLOR, the Defendant, UNUM, sold, executed and delivered to Plaintiff its occupations disability policies, Number LAN505951.   A copy of the disability insurance policy is attached hereto as Plaintiff's Exhibit "B."

18.    All premiums for the occupational disability policies were paid and all conditions precedent to the liability of Defendant, UNUM, under the disability policies have been fulfilled.

19.    The policies, among other things, provides:

Total Disability means that due to injuries or sickness:

1.    You are not able to perform the substantial and material duties of your occupation; and,

2.    You are under the care and attendance of a physician.

5

> Your occupation means the occupation (or occupations, if more
> than one) in which you are regularly engaged at the time you
> become disabled.

20.     The disability policies is occupation specialty specific in that Defendant, UNUM, agreed to provide disability insurance for Plaintiff's occupation as an endodontic surgeon.    In the policies, Defendant, UNUM, agreed to pay Plaintiff, DR. TAYLOR, a monthly disability payment if, because of injury or sickness, Plaintiff, DR. TAYLOR, became unable to perform the substantial and material duties of his occupation as an endodontic surgeon.

21.     Plaintiff, DR. TAYLOR, began to experience dermatological reactions to the use of any gloves required to be used by endodontic surgeons.    As a result of this significant dermatological condition, the Plaintiff, DR. TAYLOR, became sick and because of the sickness, he became unable to perform the substantial and material duties of his occupation as an endodontic surgeon.    At the time Plaintiff, DR. TAYLOR, became sick, and at all times material to the onset of his disability, Plaintiff, DR. TAYLOR, was regularly engaged in the occupation of an endodontic surgeon.    At all times material hereto, the Plaintiff, DR. TAYLOR, received care by a physician which is appropriate for the sickness and condition causing the disability.    On or about November, 1995, Plaintiff, DR. TAYLOR, was declared totally disabled by Defendant,   UNUM, because of his sickness.

22.     Due to the total disability of the Plaintiff, DR. TAYLOR, a claim for disability benefits payable pursuant to Policy Number LAN505951, was made by Plaintiff.    Plaintiff has complied with all conditions precedent to entitle him to recover under the policies, however, Defendant, UNUM, has denied and/or refuses to pay the monthly disability payments required by the subject policies.

6

23.    Defendant's, UNUM, actions in wrongfully failing and/or refusing to pay said occupational disability insurance benefits to Plaintiff, DR. TAYLOR, constitutes a breach of the disability policies.   As a result of Defendant's, UNUM, breach of its obligations under the subject policies, Plaintiff, DR. TAYLOR, has sustained damages and will continue to sustain damages because he is being denied the benefits of said disability insurance policies.

24.    Plaintiff, DR. TAYLOR, has been required to retain the services of the undersigned law firm to prosecute this matter, and has become obligated to pay said firm a reasonable attorney fee for said representation.   Pursuant to Florida Statute §627.428, Plaintiff, DR. TAYLOR, has the right to recover attorney fees, pre-judgment interest and other costs from the Defendant, PROVIDENT.

WHEREFORE, Plaintiff, DR. TAYLOR, demands judgment for damages against the Defendant, UNUM, together with pre-judgment interest, costs, attorney fees and demands trial by jury of all issues triable as of right by jury.

KRUPNICK, CAMPBELL, MALONE, ROSELLI,
BUSER, SLAMA, HANCOCK, McNELIS
LIBERMAN & McKEE, P.A.
Attorney for Plaintiff
700 Southeast Third Avenue
Courthouse Law Plaza, Suite 100
Fort Lauderdale, Florida  33316
(954) 763-8181

BY:_____
WALTER G. CAMPBELL, JR., ESQUIRE
Florida Bar No.:  161009

# YOUR OUTLINE OF COVERAGE

## (PLEASE KEEP WITH YOUR POLICY)

**PROVIDENT LIFE AND ACCIDENT**
INSURANCE COMPANY
CHATTANOOGA, TN 37402

DISABILITY INCOME PROTECTION COVERAGE

REQUIRED OUTLINE OF COVERAGE

POLICY SERIES 334

1. READ YOUR POLICY CAREFULLY

This outline of coverage provides a very brief description of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth in detail the rights and obligations of both you and your insurance company. It is, therefore, important that you READ YOUR POLICY CAREFULLY.

2. DISABILITY INCOME PROTECTION COVERAGE

Policies of this category are designed to provide, to persons insured, coverage for disabilities resulting from covered Injuries or Sickness, subject to any limitations set forth in the policy. Coverage is not provided for basic hospital, basic medical-surgical, or major-medical expenses.

3. BENEFITS

Elimination Period, where used in this outline, means the number of days of disability, at the start of a period of disability, for which benefits are not payable. The number of days in an Elimination Period is shown with the Benefit to which it applies. Days of Total and/or Residual Disability may be used to satisfy the Elimination Period for either Total or Residual Disability benefits. However, if this policy is renewed after you attain age 65, an Elimination Period starting thereafter must consist entirely of days of Total Disability.

BASIC BENEFITS OF YOUR POLICY

----------------------Schedule of Benefits for Total Disability----------------------

✗The Monthly Benefit for Total Disability is $3,625.00. Benefits start on the day of Total Disability after a 30 day Elimination Period. Benefits are payable during Total Disability for as long as the applicable maximum benefit periods shown below:

Injuries – Total Disability starting before age 65  ...................... For Life
             ✗Total Disability starting at or after age 65  ................. 24 Months

Sickness – Total Disability starting before age 50  ...................... For Life
             Total Disability starting at or after age 50 but
                  before age 65  ................................. to age 65, but not
                                                                   less than 24 months
             ✗Total Disability starting at or after age 65  ................. 24 months
--------------------------------------------------------------------------------------

BASIC BENEFITS OF YOUR POLICY (continued)

**Definition of Total Disability.** Total Disability means that due to Injuries or Sickness:

1. you are unable to perform the duties of your occupation; and
2. you are under the care and attendance of a Physician.

✕**Presumptive Total Disability.** We will consider you to be totally disabled if you suffer the entire and irrecoverable loss of:

1. speech or hearing;
2. sight of both eyes; or
3. use of both hands, both feet, or one hand and one foot.

Your $3,625.00 Monthly Benefit for Total Disability will be paid even if you can work. Further medical care will not be required. Benefits will be paid according to the Total Disability provisions of the policy. But, benefits will start on the day of loss if earlier than when benefits would otherwise start. And, if loss occurs before age 65, your $3,625.00 Monthly Benefit for Total Disability will be paid as long as you live.

✕**Waiver of Premium.** After 90 days of Total Disability, we will:

1. refund any premiums which became due and were paid during the 90 days; and
2. waive future premiums which fall due during the period of Total Disability.

✕**Transplant Surgery.** If you are disabled because you donate a part of your body to another person, we will consider it to be the result of a Sickness.

✕**Rehabilitation.** You may participate in a program of occupational rehabilitation while disabled. This will not of itself affect Total Disability payments. If we approve the program, we will pay certain training expenses up to $10,875.00.

✕**Treatment of Injuries (Payable if disability benefits not paid).** If Injuries require treatment prescribed by a Physician, we will pay your expenses for such treatment. We will pay up to $1,812.50 as the result of an accident.

If you qualify for payment under this provision and also under a disability provision of this policy because of the same accident, payment will be made under the provision which provides the greater benefit.

## ADDITIONAL BENEFITS

The following optional benefits are also a part of your policy:

**Residual Disability Benefit** – We will consider you to be residually disabled if due to Injuries or Sickness:

1. you are unable to perform one or more of your important daily business duties or you are unable to perform your usual daily business duties for as much time as is normally required to perform them;
2. you have a loss of at least 25% of your earnings just prior to disability; and
3. you are under the care and attendance of a Physician (other than you).

Residual Disability benefits are payable as follows:

1. Benefits start on the day of Residual Disability: (1) after a 30 day Elimination Period or, if later, (2) after the end of compensable Total Disability during the same period of disability.
2. Benefits are payable until age 65.
3. Your benefit for each month will be a percentage of the Monthly Benefit for Total Disability. This percentage will be equal to the percentage of earnings loss for that month due to Residual Disability. (The formula used to compute each Residual Disability Monthly Benefit is contained in your policy.) If your loss is more than 75% of pre-disability earnings, we will consider it to be 100%. The first 6 monthly payments for Residual Disability will be the greater of:
   a. 50% of the Monthly Benefit for Total Disability; or
   b. the Residual Disability Monthly Benefit computed by the formula for each month.

**Waiver of Premium** – For periods of disability starting before age 65, the basic Waiver of Premium provision is replaced by the following:

"After 90 days of Residual and/or Total Disability, we will:

1. refund any premiums which became due and were paid during the 90 days; and
2. waive future premiums which fall due while the period of disability (Residual and/or Total) continues."

**Cost of Living Adjustment for Total and Residual Disability Benefits (This benefit provides for annual adjustments in the monthly benefits which become payable under a claim beginning with payment for the 13th month of a period of disability).**

During Total Disability payments, your Monthly Benefit for Total Disability can increase with the Consumer Price Index (CPI) up to 7% compounded annually, beginning with the second year of a period of disability, until it has doubled or until the earlier of when the benefit period ends or you reach age 65. However, an increased benefit is not payable for any time for which you receive Total Disability benefits while you are engaged in a gainful occupation.

During Residual Disability payments, the annual CPI adjustment factor is not applied to the Monthly Benefit for Total Disability used in the formula for computing each Residual Disability Monthly Benefit. It is instead applied to your pre-disability earnings used in the formula. CPI increases cause your loss of earnings to be greater,

and this in turn produces increases in your Residual Disability Monthly Benefit. The CPI factor used in the Residual Disability formula can increase up to 7 percent compounded annually. The amount of the Monthly Benefit for Total Disability payable just before the start of Residual Disability will be used in the formula. This amount will be frozen at that level while Residual Disability continues.

Should your earnings loss during Residual Disability exceed 75%, the CPI adjustment factor and the Residual Disability formula will not be used. Instead, the loss will be deemed to be 100%, and the monthly benefit will be the amount of the Monthly Benefit for Total Disability payable just before the start of Residual Disability.

Should the CPI go down during a Total or Residual Disability claim, the monthly benefit will also be adjusted but it will never drop below the amount your benefit would have been without this Cost of Living benefit.

When a claim ends, an increased monthly benefit returns to its original amount. The benefit provisions will operate the same as before the claim.

If there is a later claim for a period of disability lasting longer than one year and you are then under age 65, this benefit will operate in the same way for that claim but the annual Cost of Living adjustments will be those applicable to the new period of disability.


4.  EXCLUSIONS

This policy does not cover loss caused by:  war or act of war; or normal pregnancy or childbirth.

The policy will only cover pre-existing conditions as follows:

1.  During the first two policy years, a pre-existing condition will be covered if it was disclosed and not misrepresented in answer to a question in the application for the policy, and we did not exclude it from coverage.
2.  After two years, we will cover any condition not excluded by the policy.

Pre-existing conditions are defined in the policy.

## 5. RENEWABILITY OF YOUR POLICY

**Non-Cancellable and Guaranteed Continuable to Age 65 at Guaranteed Premiums:** You can continue this policy in force to age 65 by paying the premiums when due.

**Conditional Right to Renew From Age 65 to Age 75; Premiums are not Guaranteed:** If you are actively and gainfully employed full time when you attain age 65, you have the right to renew this policy to age 75 for as long as you continue to be actively and gainfully employed full time. You must pay premiums when due at our premium rates in effect at time of renewals.

*If this policy is renewed after you attain age 65, the benefit provisions shown in this outline with an asterisk (*) will be those included in the continued policy. Any other benefits will not renew.

This Outline of Coverage was prepared on 12/29/82 and
replaces any previous description of coverage furnished you.

334-OC

# YOUR OUTLINE OF COVERAGE

(PLEASE KEEP WITH YOUR POLICY)

**PROVIDENT LIFE AND ACCIDENT**
INSURANCE COMPANY

CHATTANOOGA, TN 37402

DISABILITY INCOME PROTECTION COVERAGE

REQUIRED OUTLINE OF COVERAGE

POLICY SERIES 335

1. READ YOUR POLICY CAREFULLY

This outline of coverage provides a very brief description of the important features of your policy.  This is not the insurance contract and only the actual policy provisions will control.  The policy itself sets forth in detail the rights and obligations of both you and your insurance company.  It is, therefore, important that you READ YOUR POLICY CAREFULLY.

2. DISABILITY INCOME PROTECTION COVERAGE

Policies of this category are designed to provide, to persons insured, coverage for disabilities resulting from covered Injuries or Sickness, subject to any limitations set forth in the policy.  Coverage is not provided for basic hospital, basic medical-surgical, or major-medical expenses.

3. BENEFITS

a. General Definitions

Benefit Schedule means the schedule of benefits attached to this Outline.

Elimination Period means the number of days of disability that must elapse in a period of disability before benefits become payable.  The number of days is shown in this Outline's Benefit Schedule.  These days need not be consecutive; they can be accumulated during a period of disability to satisfy an Elimination Period. Benefits are not payable, nor do they accrue, during an Elimination Period.

Total Disability or totally disabled means that due to Injuries or Sickness:

1. you are not able to perform the substantial and material duties of your occupation; and
2. you are receiving care by a Physician which is appropriate for the condition causing the disability.

your occupation means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you became disabled.  If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation.

b. **Basic Benefits of Your Policy**

The basic Monthly Benefit for Total Disability is shown in the Benefit Schedule. Benefits start on the day of Total Disability after the Elimination Period. Benefits are payable for as long as the applicable maximum benefit periods also shown in the Benefit Schedule.

UPDATE - This benefit provides for automatic increases in your Monthly Benefit for Total Disability. Refer to the Policy Schedule in your policy for details.

Presumptive Total Disability - You will be presumed totally disabled if Injuries or Sickness result in the entire and permanent loss of: 1) speech; 2) hearing in both ears; 3) sight of both eyes; or 4) use of both hands, both feet, or one hand and one foot.

The basic Monthly Benefit for Total Disability will be paid even if you can work. Further medical care will not be required. Benefits will be payable for life.

Waiver of Premium - After you have been disabled for 90 days during a period of total and/or residual disability we will:

1. refund any premiums which became due and were paid while you were totally and/or residually disabled; and
2. waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts. After it ends, to keep your policy in force, you must again pay any premiums which become due.

Transplant Surgery - If you are disabled because you donate a part of your body to another person, we will consider it to be the result of a Sickness.

Cosmetic Surgery - If you are disabled from surgery to improve your appearance or correct disfigurement, we will consider it to be the result of a Sickness.

Pregnancy - If you are disabled from pregnancy or childbirth, we will consider it to be the result of a Sickness.

Rehabilitation - You may participate in a program of occupational rehabilitation while disabled. This will not of itself affect Total Disability payments. If we approve the program we will pay certain training expenses up to an amount equal to three times one basic Monthly Benefit for Total Disability.

Treatment of Injuries (payable if disability benefits not paid) - If Injuries require treatment prescribed by a Physician, we will pay your expenses for such treatment, up to one-half of one basic Monthly Benefit for Total Disability.

c. **Additional Benefits**

The following optional benefits are also a part of your policy and are shown in the Benefit Schedule. Additional premium is required.

Residual Disability Benefits pay a percentage of the Total Disability Monthly Benefit when, due to Injuries or Sickness, you suffer a loss of earnings of 20% or more, and are receiving care by a physician.  (During the Elimination Period only, you must not be able to work fully because of the Injuries or Sickness.) A loss of earnings over 75% is deemed a 100% loss and 100% of your Total Disability Monthly Benefit will be paid.  Residual benefits are payable for as long as stated in the policy.

When a disability lasts more than one year, Cost of Living indexing (based on the Consumer Price Index) will be applied to your pre-disability earnings.  As they increase, your loss of earnings becomes greater and this, in turn, produces increases in your Residual Disability Monthly Benefit.

Recovery Benefits are payable for up to three months following a period for which benefits were paid if you are under age 65 and return to full-time work with a loss of earnings of at least 20%.  Benefits will be the greater of the Residual formula amount for each of the first three months or the applicable percentage (100% first month, 75% second month and 50% third month) of the actual claim payment made for the 30 days prior to your return to work.

Cost of Living Adjustments provide increases in the Total Disability Monthly Benefit of up to 7% compounded annually, based on changes in the Consumer Price Index (CPI), when a disability lasts longer than one year.  The benefit can increase until it doubles or until the earlier of when the benefit period ends or you reach age 65.  Should the CPI go down during a claim, benefits can decrease, but never below what benefits would have been without the COLA option in the policy.  At the end of a claim during which cost of living adjustments were made, you may (if under age 60) increase the basic Total Disability Monthly Benefit to the adjusted amount which was used to determine the last monthly claim payment.

4. EXCLUSIONS

This policy does not cover loss caused by war or act of war.

The policy will only cover pre-existing conditions as follows:

1. During the first two policy years, a pre-existing condition will be covered if it was disclosed and not misrepresented in answer to a question in the application for the policy, and we did not exclude it from coverage.
2. We will cover any condition not excluded by the policy for a disability that starts after two years.

Pre-existing conditions are defined in the policy.

If there are any additional exclusions, they will be referred to in the Policy Schedule.  If there is an exclusion or limitation which applies only to a benefit rider added after the policy is issued, it will be included with the rider.

5.   RENEWABILITY OF YOUR POLICY

Non-Cancellable and Guaranteed Continuable to Age 65 at Guaranteed Premiums:  You can continue this policy to age 65 by paying the premiums on time.

Conditional Right to Renew After Age 65; Premiums are not Guaranteed:  You can renew this policy as long as you are actively and gainfully working full time; there is no age limit.  You must pay premiums on time at our rates then in effect at time of renewal.  The basic policy, if renewed before age 75, will provide a 24 month maximum benefit period for Total Disability and Presumptive Total Disability.  A 12 month maximum benefit period will be provided if the policy is renewed at or after age 75.

If the policy is continued, all of the basic benefit provisions will be included in the continued policy.  Any additional benefit provision contained in the policy will not be included unless it is so named as one that will be included in the continued policy.

335-OC

BENEFIT SCHEDULE FOR THIS OUTLINE

--------------------------------------------------------------------

Elimination Period                    30 days of Total and/or Residual Disability

Monthly Benefit for Total Disability                              $1,000.00

Maximum Benefit Periods:

Injuries:
    Total Disability starting before age 65   ..............................   for Life
    Total Disability starting at age 65 but before age 75  .................   24 months
    Total Disability starting at or after age 75  ..........................   12 months

Sickness:
    Total Disability starting before age 60   ..............................   for Life
    Total Disability starting at age 60 but before age 61  .................   to age 65
    Total Disability starting at age 61 but before age 62  .................   48 months
    Total Disability starting at age 62 but before age 63  .................   42 months
    Total Disability starting at age 63 but before age 64  .................   36 months
    Total Disability starting at age 64 but before age 65  .................   30 months
    Total Disability starting at age 65 but before age 75  .................   24 months
    Total Disability starting at or after age 75  ..........................   12 months

------------------------------ADDITIONAL BENEFITS------------------------------

Residual Disability Benefit

Cost of Living Adjustments

This Outline of Coverage was prepared on 03/22/88 and
replaces any previous description of coverage furnished you.

Insured - MELVYN D TAYLOR                         Policy Number 6-335-836766

# YOUR
# OUTLINE
# OF COVERAGE

## (PLEASE KEEP WITH YOUR POLICY)

# PROVIDENT
# LIFE AND ACCIDENT
## INSURANCE COMPANY

1 FOUNTAIN SQUARE
CHATTANOOGA, TN 37402

**ASSOCIATED PENSION
CONSULTANTS, INC.**
2699 Stirling Road B-100
Fort Lauderdale, FL 33312
Brwd: 983-5600     Dade: 624-0053
N. Brwd: 786-0116     Palm Bch: 734-6111

DISABILITY INCOME PROTECTION COVERAGE

REQUIRED OUTLINE OF COVERAGE

POLICY SERIES 337

1. READ YOUR POLICY CAREFULLY

This outline of coverage provides a very brief description of the important fea-
tures of your policy.  This is not the insurance contract and only the actual
policy provisions will control.  The policy itself sets forth in detail the rights
and obligations of both you and your insurance company.  It is, therefore, im-
portant that you READ YOUR POLICY CAREFULLY.

2. DISABILITY INCOME PROTECTION COVERAGE

Policies of this category are designed to provide, to persons insured, coverage
for disabilities resulting from covered Injuries or Sickness, subject to any
limitations set forth in the policy.  Coverage is not provided for basic hospital,
basic medical-surgical, or major-medical expenses.

3. BENEFITS

a.  General Definitions

Benefit Schedule means the schedule of benefits attached to this Outline.

Elimination Period means the number of days of disability that must elapse
in a period of disability before benefits become payable.  The number of days
is shown in this Outline's Benefit Schedule.  These days need not be consec-
utive; they can be accumulated during a period of disability to satisfy an
Elimination Period.  Benefits are not payable, nor do they accrue, during an
Elimination Period.

Total Disability or totally disabled means that due to Injuries or Sickness:

1.  you are not able to perform the substantial and material duties of your
    occupation; and
2.  you are receiving care by a Physician which is appropriate for the
    condition causing the disability.  We will waive this requirement when
    continued care would be of no benefit to you.

your occupation means the occupation (or occupations, if more than one) in
which you are regularly engaged at the time you became disabled.  If your
occupation is limited to a recognized specialty within the scope of your de-
gree or license, we will deem your specialty to be your occupation.

Outline of Disability Coverage for MELVYN D TAYLOR 06-337-5031731

b. **Basic Benefits    Your Policy**

The basic Monthly Benefit for Total Disability is shown in the Benefit Schedule. Benefits start on the day of Total Disability after the Elimination Period. Benefits are payable for as long as the applicable maximum benefit periods also shown in the Benefit Schedule.

**UPDATE** – This benefit provides for automatic increases in your Monthly Benefit for Total Disability.  Refer to the policy schedule in your policy for details.

**Presumptive Total Disability** – You will be presumed totally disabled if Injuries or Sickness result in the entire and permanent loss of:  1) speech; 2) hearing in both ears; 3) sight of both eyes; or 4) use of both hands, both feet, or one hand and one foot.

The basic Monthly Benefit for Total Disability will be paid even if you can work.  Further medical care will not be required.  Benefits will be payable for life.

**Waiver of Premium** – After you have been disabled for 90 days during a period of total and/or residual disability we will:

1. refund any premiums which became due and were paid while you were totally and/or residually disabled; and
2. waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts.  After it ends, to keep your policy in force, you must again pay any premiums which become due.

**Transplant Surgery** – If you are disabled because you donate a part of your body to another person, we will consider it to be the result of a Sickness.

**Cosmetic Surgery** – If you are disabled from surgery to improve your appearance or correct disfigurement, we will consider it to be the result of a Sickness.

**Rehabilitation** – You may participate in a program of occupational rehabilitation while disabled.  This will not of itself affect Total Disability payments.  If we approve the program we will pay for certain training expenses that you incur.

c. **Additional Benefits**

The following optional benefits are also a part of your policy and are shown in the Benefit Schedule.  Additional premium is required.

**Residual Disability/Recovery Benefits** pay a percentage of the Total Disability Monthly Benefit when, due to Injuries or Sickness, you suffer a loss of earnings of 20% or more, and are receiving care by a physician.  (During the Elimination Period only, you must not be able to work fully because of the Injuries or Sickness.)  A loss of earnings over 75% is deemed a 100% loss and 100% of your Total Disability Monthly Benefit will be paid.  Residual benefits are payable for as long as stated in the policy.

When a disability lasts more than one year, Cost of Living indexing (based on the Consumer Price Index) will be applied to your pre-disability earnings.  As they increase, your loss of earnings becomes greater and this, in turn, produces increases in your Residual Disability Monthly Benefit.

MELVYN D TAYLOR 06-337-5031731                                    Page DC-2

Cost of Living Adjustments provide increases in the Total Disability Monthly Benefit of up to 7% compounded annually, based on changes in the Consumer Price Index (CPI), when a disability lasts longer than one year. The benefit can increase until it doubles or until the earlier of when the benefit period ends or your 65th birthday. Should the CPI go down during a claim, benefits can decrease, but never below what benefits would have been without the COLA option in the policy. At the end of a claim during which cost of living adjustments were made, you may (if under age 60) increase the basic Total Disability Monthly Benefit to the adjusted amount which was used to determine the last monthly claim payment.

4. **EXCLUSIONS**

This policy does not cover loss caused by:

1. war or any act of war; or

2. normal pregnancy or childbirth. Complications of pregnancy are covered. See your policy for details.

The policy will only cover a pre-existing condition if it is disclosed and not misrepresented in answer to a question in your application, and we do not specifically exclude it from coverage.

A pre-existing condition is defined in your policy.

If there are any additional exclusions, they will be referred to in the Policy Schedule. If there is an exclusion or limitation which applies only to a benefit rider added after the policy is issued, it will be included with the rider.

5. **RENEWABILITY OF YOUR POLICY**

**Non-Cancellable and Guaranteed Continuable At Guaranteed Premiums To Your 65th Birthday or For Five Years, Whichever Is Later:** You can continue this policy to your 65th birthday or for five years, whichever is later, by paying the premiums on time.

**Conditional Right to Renew After Your 65th Birthday or Five Years, Whichever Is Later: Premiums are not Guaranteed:** You can renew this policy as long as you are actively and gainfully working full time; there is no age limit. You must pay premiums on time at our rates then in effect at time of renewal. The basic policy, if renewed before your 75th birthday, will provide a 24 month maximum benefit period for Total Disability and Presumptive Total Disability. A 12 month maximum benefit period will be provided if the policy is renewed on or after your 75th birthday.

If the policy is continued, all of the basic benefit provisions will be included in the continued policy. Any additional benefit provision contained in the policy will not be included unless it is so named as one that will be included in the continued policy.

337-OC

MELVYN D TAYLOR 06-337-5031731                                            Page OC-3

### BENEFIT SCHEDULE FOR THIS OUTLINE   -

------------------------------------------------------------------------

Elimination Period                    30 days of Total and/or Residual Disability

Monthly Benefit for Total Disability                          $1,455.00

Maximum Benefit Periods:

Injuries:
    Total Disability starting before your 65th birthday ...............   for Life
    Total Disability starting on or after your 65th birthday
      but before your 75th birthday ..................................  24 months
    Total Disability starting on or after your 75th birthday ..........  12 months

Sickness:
    Total Disability starting before your 60th birthday ...............   for Life
    Total Disability starting on or after your 60th birthday
      but before your 61st birthday ........................  to your 65th birthday
    Total Disability starting on or after your 61st birthday
      but before your 62nd birthday ..................................  48 months
    Total Disability starting on or after your 62nd birthday
      but before your 63rd birthday ..................................  42 months
    Total Disability starting on or after your 63rd birthday
      but before your 64th birthday ..................................  36 months
    Total Disability starting on or after your 64th birthday
      but before your 65th birthday ..................................  30 months
    Total Disability starting on or after your 65th birthday
      but before your 75th birthday ..................................  24 months
    Total Disability starting on or after your 75th birthday ..........  12 months

------------------------------ADDITIONAL BENEFITS------------------------------

Residual Disability/Recovery Benefit

Cost of Living Adjustments


                    This Outline of Coverage was prepared on 10/11/90 and
                  replaces any previous description of coverage furnished you.


Insured - MELVYN D TAYLOR                        Policy Number 5031731

# YOUR
# OUTLINE
# OF COVERAGE

## (PLEASE KEEP WITH YOUR POLICY)

# PROVIDENT
# LIFE AND ACCIDENT
## INSURANCE COMPANY

1 FOUNTAIN SQUARE
CHATTANOOGA, TN 37402

ASSOCIATED PENSION
CONSULTANTS, INC.
2699 STIRLING ROAD B-100
FORT LAUDERDALE, FL 33312
BRWD: 983-5600    DADE: 624-0053
N. BRWD: 786-0116    PALM BCH: 734-6111

DISABILITY INCOME PROTECTION COVERAGE

REQUIRED OUTLINE OF COVERAGE

POLICY SERIES 337

1.  READ YOUR POLICY CAREFULLY

This outline of coverage provides a very brief description of the important fea-
tures of your policy.  This is not the insurance contract and only the actual
policy provisions will control.  The policy itself sets forth in detail the rights
and obligations of both you and your insurance company.  It is, therefore, im-
portant that you READ YOUR POLICY CAREFULLY.

2.  DISABILITY INCOME PROTECTION COVERAGE

Policies of this category are designed to provide, to persons insured, coverage
for disabilities resulting from covered Injuries or Sickness, subject to any
limitations set forth in the policy.  Coverage is not provided for basic hospital,
basic medical-surgical, or major-medical expenses.

3.  BENEFITS

a.  General Definitions

Benefit Schedule means the schedule of benefits attached to this Outline.

Elimination Period means the number of days of disability that must elapse
in a period of disability before benefits become payable.  The number of days
is shown in this Outline's Benefit Schedule.  These days need not be consec-
utive; they can be accumulated during a period of disability to satisfy an
Elimination Period.  Benefits are not payable, nor do they accrue, during an
Elimination Period.

If the Elimination Period is fulfilled during a period of disability, the
first subsequent disability due to a different or unrelated cause will not
require an Elimination Period, provided the first subsequent disability oc-
curs within the twelve month period from the end of the prior disability,
during which the Elimination Period was satisfied.

Total Disability or totally disabled means that due to Injuries or Sickness:

1.  you are not able to perform the substantial and material duties of your
    occupation; and
2.  you are receiving care by a Physician which is appropriate for the
    condition causing the disability.  We will waive this requirement when
    continued care would be of no benefit to you.

Outline of Disability Coverage for MELVYN D TAYLOR 06-337-5023645

your occupation means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you became disabled. If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation.

b. **Basic Benefits of Your Policy**

The basic Monthly Benefit for Total Disability is shown in the Benefit Schedule. Benefits start on the day of Total Disability after the Elimination Period. Benefits are payable for as long as the applicable maximum benefit periods also shown in the Benefit Schedule.

UPDATE - This benefit provides for automatic increases in your Monthly Benefit for Total Disability. Refer to the policy schedule in your policy for details.

Presumptive Total Disability - You will be presumed totally disabled if Injuries or Sickness result in the entire and permanent loss of: 1) speech; 2) hearing in both ears; 3) sight of both eyes; or 4) use of both hands, both feet, or one hand and one foot.

The basic Monthly Benefit for Total Disability will be paid even if you can work. Further medical care will not be required. Benefits will be payable for life.

Waiver of Premium - After you have been disabled for 90 days during a period of total and/or residual disability we will:

1. refund any premiums which became due and were paid while you were totally and/or residually disabled; and
2. waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts. After it ends, to keep your policy in force, you must again pay any premiums which become due.

Transplant Surgery - If you are disabled because you donate a part of your body to another person, we will consider it to be the result of a Sickness.

Cosmetic Surgery - If you are disabled from surgery to improve your appearance or correct disfigurement, we will consider it to be the result of a Sickness.

Rehabilitation - You may participate in a program of occupational rehabilitation while disabled. This will not of itself affect Total Disability payments. If we approve the program we will pay for certain training expenses that you incur.

c. **Additional Benefits**

The following optional benefits are also a part of your policy and are shown in the Benefit Schedule. Additional premium is required.

Residual Disabil  y/Recovery Benefits pay a perce  age of the Total Disabil-
ity Monthly Benefit when, due to Injuries or Sickness, you suffer a loss of
earnings of 20% or more, and are receiving care by a physician. (During the
Elimination Period only, you must not be able to work fully because of the
Injuries or Sickness.) A loss of earnings over 75% is deemed a 100% loss and
100% of your Total Disability Monthly Benefit will be paid. Residual benefits
are payable for as long as stated in the policy.

When a disability lasts more than one year, Cost of Living indexing (based
on the Consumer Price Index) will be applied to your pre-disability earnings.
As they increase, your loss of earnings becomes greater and this, in turn,
produces increases in your Residual Disability Monthly Benefit.

Cost of Living Adjustments provide increases in the Total Disability Monthly
Benefit of up to 7% compounded annually, based on changes in the Consumer
Price Index (CPI), when a disability lasts longer than one year. The benefit
can increase until it doubles or until the earlier of when the benefit period
ends or your 65th birthday. Should the CPI go down during a claim, benefits
can decrease, but never below what benefits would have been without the COLA
option in the policy. At the end of a claim during which cost of living ad-
justments were made, you may (if under age 60) increase the basic Total Dis-
ability Monthly Benefit to the adjusted amount which was used to determine
the last monthly claim payment.

4. EXCLUSIONS

This policy does not cover loss caused by:

1. war or any act of war; or

2. normal pregnancy or childbirth. Complications of pregnancy are covered.
   See your policy for details.

The policy will only cover a pre-existing condition if it is disclosed and not
misrepresented in answer to a question in your application, and we do not spe-
cifically exclude it from coverage.

A pre-existing condition is defined in your policy.

If there are any additional exclusions, they will be referred to in the Policy
Schedule. If there is an exclusion or limitation which applies only to a benefit
rider added after the policy is issued, it will be included with the rider.

5. RENEWABILITY OF YOUR POLICY

**Non-Cancellable and Guaranteed Continuable to Your 65th Birthday or For Five Years, Whichever Is Later:** You can continue this policy to your 65th birthday or for five years, whichever is later, by paying the premiums on time.

**Conditional Right to Renew After Your 65th Birthday or Five Years, Whichever Is Later: Premiums are not Guaranteed:** You can renew this policy as long as you are actively and gainfully working full time; there is no age limit. You must pay premiums on time at our rates then in effect at time of renewal. The basic policy, if renewed before your 75th birthday, will provide a 24 month maximum benefit period for Total Disability and Presumptive Total Disability. A 12 month maximum benefit period will be provided if the policy is renewed on or after your 75th birthday.

If the policy is continued, all of the basic benefit provisions will be included in the continued policy. Any additional benefit provision contained in the policy will not be included unless it is so named as one that will be included in the continued policy.

337-OC

BENEFIT SCHEDULE FOR THIS OUTLINE

--------------------------------------------------------------------------------

Elimination Period                    90 days of Total and/or Residual Disability

Monthly Benefit for Total Disability                              $3,250.00

Maximum Benefit Periods:

Injuries:
    Total Disability starting before your 65th birthday ............... for Life
    Total Disability starting on or after your 65th birthday
      but before your 75th birthday ................................. 24 months
    Total Disability starting on or after your 75th birthday .......... 12 months

Sickness:
    Total Disability starting before your 60th birthday ............... for Life
    Total Disability starting on or after your 60th birthday
      but before your 61st birthday ....................... to your 65th birthday
    Total Disability starting on or after your 61st birthday
      but before your 62nd birthday ................................. 48 months
    Total Disability starting on or after your 62nd birthday
      but before your 63rd birthday ................................. 42 months
    Total Disability starting on or after your 63rd birthday
      but before your 64th birthday ................................. 36 months
    Total Disability starting on or after your 64th birthday
      but before your 65th birthday ................................. 30 months
    Total Disability starting on or after your 65th birthday
      but before your 75th birthday ................................. 24 months
    Total Disability starting on or after your 75th birthday .......... 12 months

---------------------------ADDITIONAL BENEFITS---------------------------------

Residual Disability/Recovery Benefit

Cost of Living Adjustments

This Outline of Coverage was prepared on 03/09/90 and
replaces any previous description of coverage furnished you.

Insured - MELVYN D TAYLOR                          Policy Number 5023645



## INSURING PROVISION

In consideration of the application herefor, a copy of which is attached hereto and made a part hereof, and the payment in advance of the premium specified in the Schedule, UNUM Life Insurance Company of America does hereby insure the above-named Insured, subject to all the provisions, exceptions and reductions contained herein, attached hereto or endorsed hereon, against disability and loss, as indicated in the Schedule, resulting from:

    (a)  Sickness or disease of the Insured which first manifests itself while this policy is in force, hereafter called "sickness," or

    (b)  Accidental bodily injury occurring while this policy is in force, hereafter called "injury."

Coverage hereunder shall begin on the Policy Date.

## NOTICE OF TEN DAY RIGHT TO EXAMINE POLICY

Within ten days after its delivery to the Insured, this policy may be surrendered by delivering or mailing it to the Home Office at Portland, Maine, or to any branch office or to the agent through whom it was purchased. Upon such surrender, the Company will return any premium paid and the policy shall be deemed void from the Policy Date.

The provisions written or printed by the Company on the following pages hereof are a part of this policy.

**In Witness Whereof,** the UNUM LIFE INSURANCE COMPANY OF AMERICA has caused this policy to be signed by its President and Secretary and countersigned by a Licensed Resident Agent on the Policy Date.

                                    *Secretary*                               *President*

Examined by ......................    Countersigned by ........................................

                                                  *Licensed Resident Agent*



PLAINTIFF'S EXHIBIT
B

**NONCANCELLABLE AND GUARANTEED RENEWABLE TO AGE 65
QUALIFIED RIGHT OF RENEWAL THEREAFTER TO AGE 72.**

## RENEWAL PROVISION

**Renewal Provision.** The first premium under this policy in the amount shown in the Schedule is payable on the Policy Date and will continue the policy for the term specified, subject to the grace period provided herein. The policy may be continued thereafter for like terms by the periodic payment of renewal premiums as specified in the Policy Schedule until the age 65 anniversary when the coverage hereunder shall terminate with respect to any disability incurred thereafter except as otherwise provided by the "Policy Continuance After Age 65" provision.

Until the age 65 anniversary, the only condition for the renewal of this policy is the timely payment of premiums as herein required. While this policy is maintained in force, and before the age 65 anniversary, the Company cannot cancel the policy, increase the premiums in the Policy Schedule, reduce benefits because of change to a more hazardous occupation or place any restrictive rider hereon.

**Policy Continuance After Age 65.** The Insured has the right, by the timely payment of required premiums, to continue this policy beyond the age 65 anniversary, for as long as he is regularly and gainfully employed on a full-time basis, but not beyond the age 72 anniversary. If the Company accepts a premium which covers any period of one year or less beginning on or after the age 72 anniversary, coverage under this policy will continue until the end of such period.

The Maximum Benefit Period for Total Disability commencing after the age 65 anniversary is twenty-four months. Premiums payable on and after the age 65 anniversary will be based on the Company's table of rates then in effect for the Insured's attained age. The Company's table of rates may be changed at any time, but the change shall apply only to premiums due after the effective date of the change, and no change will be made in the premium for this policy which does not also apply to all other persons of the same attained age and rating classification covered under policies of this form.

During such continuance, the Company may at any time require proof that the Insured continues to be regularly and gainfully employed on a full-time basis. If the Insured ceases to be so employed (except by reason of Total Disability),

this policy will terminate as of the date of cessation of employment, except that coverage will continue to the end of any period of one year or less for which premium has been paid. The termination of this policy will be without prejudice to (1) any loss resulting from sickness and commencing prior to the effective date of such termination, or (2) any loss commencing within 20 days following such effective date and resulting from injury occurring on or before such date.

## DEFINITIONS

Wherever used in this policy:

"Total Disability" means the inability of the Insured to perform the duties of his regular occupation, except that if benefits are payable beyond the age 65 anniversary for continuous disability, and this policy provides benefits in excess thereof, then for the remainder of any period of his disability after such anniversary, "Total Disability" shall mean complete inability of the Insured to engage in any gainful occupation for which he is reasonably fitted in consideration of his training, education, experience and/or prior average earnings. However, the total loss by the Insured of the use of both hands, both feet, or one hand and one foot, or the total loss of speech, hearing of both ears, or sight of both eyes shall be deemed to constitute "Total Disability" so long as such total loss of use, speech, hearing or sight shall continue, irrespective of whether the Insured engages in his or any other gainful occupation; and

"Elimination Period" means the number of days at the beginning of the period of Total Disability, commencing with the first day thereof, for which no benefits are payable;

"age 65 anniversary" means the policy anniversary on or next following the Insured's sixty-fifth birthday;

"age 72 anniversary" means the policy anniversary on or next following the Insured's seventy-second birthday.

## BENEFIT PROVISIONS

**Total Disability Benefits — Sickness.** If, as the result of sickness, the Insured suffers continuous Total Disability commencing while this policy is in force, and at the same time requiring the attendance of a licensed physician other than himself, the Company will pay periodically at the rate

POLICY SCHEDULE

                INSURED      MELVYN D  TAYLOR
         POLICY NUMBER       LA   N505951
           POLICY DATE       OCTOBER 28, 1972
         PREMIUM TERM        MONTHLY
     INITIAL PREMIUM         $      70.38

RENEWAL PREMIUMS*           $      70.38 PAYABLE MONTHLY UNTIL 10-28-2001, THEN
                            $      56.48 PAYABLE MONTHLY UNTIL 10-28-2002.

   *PREMIUM GUARANTEED TO AGE 65. THEREAFTER AT COMPANY RATES THEN IN EFFECT.

MONTHLY BENEFIT- FOR TOTAL DISABILITY $ 1,500.00

ACCIDENT ELIMINATION PERIOD-   30 DAYS.  SICKNESS ELIMINATION PERIOD-   30 DAYS

MAXIMUM BENEFIT PERIOD- TO THE LATER OF A OR B.
                        A. AGE 65 POLICY ANNIVERSARY.
                        B. 24 MONTHS AFTER DISABILITY PAYMENTS COMMENCE.

BENEFICIARY- AS DESIGNATED IN THE APPLICATION FOR THIS POLICY UNLESS SUBSE-
   QUENTLY CHANGED IN ACCORDANCE WITH THE POLICY PROVISIONS. (APPLICABLE ONLY
   IF PRINCIPAL SUM PROVIDED HEREIN.)   DUPLICATE

RIDERS ATTACHED

| FORM | DESCRIPTION | BENEFIT AMOUNT | ANNUAL PREMIUM | YEAR PAYAB |
|------|-------------|----------------|----------------|-----------|
| CIHRB-70 | LIFETIME MONTHLY ACCIDENT BENEFIT FOR TOTAL DISABILITY MAXIMUM BENEFIT PERIOD- FOR ACCIDENT............ LIFETIME | $ 1,500.00 | $  58.50 | 3C |
| CIHR22-76 | RESIDUAL DISABILITY BENEFIT QUALIFICATION PERIOD...... 30 DAYS MAXIMUM BENEFIT PERIOD.... SEE RIDER RIDER DATE............... 08-28-1976 | SEE RIDER | $ 163.50 | 2E |

RIDER PREMIUMS FOR THE PREMIUM TERM ARE INCLUDED IN THE POLICY PREMIUM.

CIH3-72                                    PAGE 3

UNUM LIFE INSURANCE COMPANY OF AMERICA

ENDORSEMENTS

(ENDORSEMENTS MAY BE MADE ONLY BY THE COMPANY AT ITS HOME OFFICE)

THE RENEWAL AFTER AGE 65 PROVISION OF POLICY FORM IH3-70 IS CHANGED AS FOLLOWS:

   AGE 72 IS CHANGED TO AGE 75.

THE FOLLOWING PROVISION IS ADDED TO POLICY FORM IH3-70:

   TRANSPLANT DONOR BENEFIT. TOTAL DISABILITY WHICH RESULTS FROM
   THE TRANSPLANT OF A PART OF YOUR BODY TO ANOTHER PERSON'S BODY
   WILL BE CONSIDERED A SICKNESS. HOWEVER, SUCH TOTAL DISABILITY
   WILL NOT BE COVERED IF IT BEGINS BEFORE THIS POLICY HAS BEEN
   IN FORCE FOR SIX MONTHS.

SIGNED FOR THE COMPANY AT ITS HOME OFFICE.

            BY

625-82                                    SECRETARY

PAGE 3A

## BENEFIT PROVISIONS — Continued

of the Monthly Benefit for Total Disability specified in the Policy Schedule, provided however, that no benefit will be payable for the Sickness Elimination Period, nor for any period of disability in excess of the Maximum Benefit Period as specified in said Policy Schedule.

**Total Disability Benefits — Accident.** If, as the result of injury, the Insured suffers continuous Total Disability commencing while this policy is in force, and at the same time requiring the attendance of a licensed physician other than himself, the Company will pay periodically at the rate of the Monthly Benefit for Total Disability specified in the Policy Schedule, provided however, that no benefit will be payable for the Accident Elimination Period, nor for any period of disability in excess of the Maximum Benefit Period as specified in said Policy Schedule.

**Consecutive Disabilities.** Consecutive periods of total disability will be considered as separate periods of total disability, each subject to its own elimination period and maximum benefit period, provided that each such period is due to different causes or that each is separated by at least six months during which the Insured is continuously working on a full-time basis.

**Rehabilitation.** If the Insured is receiving Monthly Benefits for Total Disability, the Company, upon written request from the Insured, will consider a rehabilitation program for the Insured. The extent of the Company's participation in the program shall be determined by mutual agreement between the Insured and the Company giving consideration to such items as additional living costs, tuition and books. Monthly Benefits shall continue to the Insured during his rehabilitation subject to the terms of the agreement.

**Waiver of Premium for Disability Commencing Prior to Age 65.** After any Total Disability that commences prior to the age 65 anniversary has continued for ninety consecutive days, the Company will refund any premiums due and paid during the continuance of such Total Disability and will waive all premiums coming due during such Total Disability. Following such a period of disability during which the Company has waived premiums, the insurance provided in this contract shall continue in full force and effect until the next premium due date, at which time the Insured shall have the right to resume payment of premiums as they become due.

## EXCEPTIONS

This policy does not cover any loss caused by war or any act of war, whether declared or undeclared.

Under no circumstances will the Insured be considered to be suffering from more than one total disability at the same time.

## GENERAL PROVISIONS

**Entire Contract: Changes.** This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance. No change in this policy shall be valid until approved by an executive officer of the Company and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions.

**Incontestable.** (a) After this policy has been in force for a period of two years during the lifetime of the Insured, it shall become incontestable as to the statements contained in the application; and (b) No claim for loss incurred or disability (as defined in this policy) commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from the coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

**Grace Period until Age 65 Policy Anniversary.** A grace period of thirty-one days will be granted for the payment of each premium falling due after the first premium until payment of the premium covering the period ending with the age 65 anniversary, during which grace period this policy shall continue in force.

**Grace Period after Age 65 Policy Anniversary.** Unless, not less than five days prior to the premium due date, the insurer has delivered to the Insured or has mailed to his last address as shown by the records of the Company written notice of its intention not to renew this policy beyond the period for which the premium has been accepted, a grace period of thirty-one days will be granted for the payment of each premium falling due on or after the age 65 anniversary, during which grace period this policy shall continue in force.

**Reinstatement.** If any renewal premium be not paid within the time granted the Insured for payment, a subsequent acceptance of premium by the Company or by any agent duly authorized by the Company to accept such premium, without requiring in connection therewith an application for reinstatement, shall reinstate this policy; provided, however, that if the Company or such agent requires an application for reinstatement and issues a conditional receipt for the premium tendered, this policy will be reinstated upon approval of such application by the Company or, lacking such approval, upon the forty-fifth day following the date of such conditional receipt unless the Company has previously notified the Insured in writing of its disapproval of such application. The reinstated policy shall cover only loss resulting from such accidental injury as may be sustained after the date of reinstatement and loss due to such sickness as may begin more than ten days after such date. After sixty days following the age 65 anniversary, any premium accepted in connection with a reinstatement and applied to a period for which premium has not been previously paid, shall not be

## GENERAL PROVISIONS — Continued

applied to any period more than sixty days prior to the date of reinstatement. In all other respects, the Insured and the Company shall have the same rights thereunder as they had under this policy immediately before the due date of the defaulted premium, subject to any provisions endorsed hereon or attached hereto in connection with the reinstatement.

**Notice of Claim.** Written notice of claim must be given to the Company within twenty days after the occurrence or commencement of any loss covered by this policy, or as soon thereafter as is reasonably possible. Notice given by or on behalf of the Insured or the beneficiary (if designated in this policy) to the Company at its Home Office in Portland, Maine, or to any authorized agent of the Company, with information sufficient to identify the Insured, shall be deemed notice to the Company.

**Claim Forms.** The Company, upon receipt of a notice of claim, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not furnished within fifteen days after the giving of such notice, the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting, within the time fixed in this policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made.

**Proofs of Loss.** Written proof of loss must be furnished to the Company at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within ninety days after the termination of the period for which the Company is liable and in case of claim for any other loss within ninety days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.

**Time of Payment of Claims.** Benefits payable under this policy for any loss other than loss for which this policy provides any periodic payment will be paid immediately upon receipt of due written proof of such loss. Subject to due written proof of loss, all accrued benefits for loss for which this policy provides periodic payment will be paid monthly and any balance remaining unpaid upon the termination of liability will be paid immediately upon receipt of due written proof.

**Payment of Claims.** The benefit for loss of life (if provided by this policy) will be payable in accordance with the beneficiary designation and the provisions respecting such payment which may be prescribed herein and effective at the time of payment. If no such designation or provision is then effective, such benefit shall be payable to the estate of the Insured. Any other accrued benefits unpaid at the In-

sured's death may, at the option of the Company, be paid either to such beneficiary or to such estate. All other benefits will be payable to the Insured.

If any benefit of this policy shall be payable to the estate of the Insured, or to an Insured or beneficiary (if designated in this policy) who is a minor or otherwise not competent to give a valid release, the Company may pay such benefit, up to an amount not exceeding $1,000, to any relative by blood or connection by marriage of the Insured or beneficiary who is deemed by the Company to be equitably entitled thereto. Any payment made by the Company in good faith pursuant to this provision shall fully discharge the Company to the extent of such payment.

**Physical Examinations.** The Company at its own expense shall have the right and opportunity to examine the person of the Insured when and as often as it may reasonably require during the pendency of a claim hereunder.

**Legal Actions.** No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

**Change of Beneficiary.** The right to change beneficiary (if designated in this policy) is reserved to the Insured and the consent of the beneficiary or beneficiaries shall not be requisite to surrender or assignment of this policy or to any change of beneficiary or beneficiaries, or to any other changes in this policy.

**Misstatement of Age.** If the age of the Insured has been misstated, all amounts payable under this policy shall be such as the premium paid would have purchased at the correct age.

If, because of misstatement of the Insured's age, the Company shall accept any premium which falls due on a date when, according to the correct age, this policy, including endorsements or attachments hereto, would not have been issued or coverage would have ceased, then the liability of the Company shall be limited to the refund, upon request, of all premiums paid for the period not covered.

**Payment of Premiums.** All premiums are payable in advance, subject to the terms of the grace period provided herein, at the Home Office of the Company in Portland, Maine, or to any authorized agent of the Company. Premiums may be paid annually, semi-annually or quarterly in advance in accordance with the Company's premium rates in force on the effective date of this policy, as elected in the application herefor and, except in any period during which the Insured is totally disabled, the mode of premium payment may be changed on any anniversary of the effective date of this policy upon request approved in writing by the Company at its Home Office. The payment of any premium

## GENERAL PROVISIONS — Continued

shall not continue this policy in force beyond the date when the next premium is due and payable, except as may be otherwise provided by said grace period.

**Military Service Provision.** If the Insured becomes a member of the armed forces of any country or military authority, or a member of any civilian noncombatant unit serving such forces, he may elect to continue or suspend this policy. Upon receipt of written notice by the Company that the Insured has elected to suspend this policy, the Company will refund that portion of the premium which would have provided coverage for the period following the date such notice was received by the Company.

If, within five years from the date on which this policy was so suspended, the Insured terminates his full-time active duty, the policy will be reinstated without evidence of insurability, on receipt by the Company of (a) written election of reinstatement and (b) payment of the pro-rata unearned premium covering the period from the termination of such active duty to the next premium due date.

If the Insured does not terminate his full-time active duty within five years from the date on which this policy was suspended, or if he does not reinstate this policy within 90 days following termination of his full-time active duty, he may reinstate this policy then only in accordance with the Reinstatement provision.

**Conformity with State Statutes.** Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which the Insured resides on such date, is hereby amended to conform to the minimum requirements of such statutes.

**Premium Refund at Death.** In the event of the death of the Insured while this policy is in force, the Company will refund, on a pro-rata basis, any unearned premium paid by the Insured. Such refund may, at the option of the Company, be paid to the beneficiary or to the estate of the Insured or to any other person to whom benefits may be payable and under the same conditions of such payment.

**Assignment.** No assignment of interest under this policy shall be binding upon the Company unless and until the original or a duplicate thereof is filed with the Company at its Home Office. The Company will assume no responsibility for the validity or sufficiency of any assignment.

**Owner.** The Owner of this policy shall be the Insured unless other person(s) are designated as Owner in the application for this policy or designated as provided below. The Owner may change the designation of Owner by written notice during the lifetime of the Insured received at the Home Office of the Company in such form as the Company may require, accompanied by this Policy. While more than one person is Owner, all persons acting as owner shall act jointly unless such designation so endorsed or accepted by the Company provides otherwise.

The Owner during the lifetime of the Insured may exercise all rights and privileges under this policy without the consent of any person (including any contingent Owner) unless required by law or unless the designation of Owner provides otherwise, EXCEPT that (1) such power shall be subject to the rights of any assignee or other persons then of record, and (2) in processing the particulars of any claim, the Company before paying any benefit may deal with either the Insured or the Owner alone or require both to participate where necessary.

 UNUM Life Insurance Company of America
HOME OFFICE -- PORTLAND, MAINE

# LIFETIME MONTHLY BENEFIT· FOR ACCIDENT TOTAL DISABILITY RIDER

This rider extends the monthly benefit period for total disability. This benefit is subject to the terms of this rider and this policy.

Premiums for this benefit are shown in the rider description on page 3 of this policy. They are payable at the same time as premiums for this policy.

## LIFETIME MONTHLY BENEFIT FOR ACCIDENT

**Benefit Amount** We will pay the Lifetime Monthly Benefit for Accident Total Disability shown on page 3 if:

(1)   the total disability is caused by injury;

(2)   the Monthly Benefit for Total Disability is payable under this policy;

(3)   the total disability begins before the policy anniversary when your age is 65; and

(4)   the total disability continues beyond the Maximum Benefit Period.

**Benefit Period.** We will begin to pay this benefit at the end of the Maximum Benefit Period in the policy.

We will stop paying this benefit on the date when total disability, as defined in the policy, ends.

## TERMINATION

Premiums for this rider are payable to the policy anniversary when your age is 65. Coverage terminates at that time except for total disability which began before that date.

## EFFECTIVE DATE

The effective date of this rider is the Policy Date. If this rider is added at a later date, the effective date will be the Rider Date shown on page 3.

Signed for us at our Home Office on the effective date.

Secretary                                        President



UNUM Life Insurance Company of America
HOME OFFICE — PORTLAND MAINE

## RESIDUAL DISABILITY BENEFIT RIDER

This rider is a part of the policy to which it is attached. It is issued in consideration of the application and the payment of the premium shown on page 3. Premiums for this rider are payable at the same time and under the same conditions as premiums for the policy.

The Company agrees, subject to the terms and conditions of this policy, to pay the benefits provided herein. In order to fully understand the benefits provided by this rider, please read your policy carefully.

### DEFINITIONS

As used in this rider:

(1)  "Residual disability" means
    (a)  inability of the Insured to perform one or more but not all of the material and substantial duties of his regular occupation; or

    (b)  loss by the Insured of at least 25% of the time usually required for the performance of the material and substantial daily duties of his regular occupation,

    as a result of the sickness or accident which caused total disability.

(2)  "Net Earned Income" means payments received by the Insured for personal services in the performance of his regular occupation or profession after deduction of usual and customary business expenses but before deduction of any income taxes. It does not include interest, dividends, rents, royalties, annuities, pensions, deferred compensation, wage continuation payments, and other forms of unearned income.

(3)  "Average Net Earned Income" means the greater of:
    (a)  the Insured's Net Earned Income for the twelve months immediately preceding total disability divided by twelve; or

    (b)  the Insured's highest average monthly Net Earned Income for any two consecutive years in the three-year period immediately preceding total disability.

(4)  "Loss of Net Earned Income" means Average Net Earned Income minus monthly Net Earned Income during residual disability.

(5)  "Monthly Benefit for Total Disability" means the Monthly Benefit for Total Disability specified on page 3 of the policy unless increased as follows by other benefits added by rider if the riders are listed on page 3 of the policy.

    If an Additional Benefit Rider is attached to this policy, the "Monthly Benefit for Total Disability" will be increased by the amount of Additional Monthly Benefit until the Maximum Additional Benefit Period terminates.

    If a Deferred Monthly Benefit Rider is attached to this policy, the amount of Deferred Monthly Benefit will be included in the "Monthly Benefit for Total Disability" following completion of the Deferred Benefit Elimination Period.

(6)  "Residual Monthly Benefit" means

    $(A + B) \times C$ where:

    A = Loss of Net Earned Income – (4) above,
    B = Average Net Earned Income – (3) above, and
    C = Monthly Benefit for Total Disability – (5) above.

(7)  "Qualification Period" means the period specified in the rider description on page 3 of the policy during which total disability must be continuous.

### RESIDUAL DISABILITY BENEFIT

The Company will pay a Residual Monthly Benefit for a period of residual disability following a period of total disability which resulted from the same or a related cause if all of the following conditions are met:

(1)  the total disability began prior to the policy anniversary when the Insured's age is 65; and

(2)  the total disability is continuous for the Qualification Period; and

(3)  the Insured suffers a Loss of Net Earned Income of more than 25% of his Average Net Earned Income as a result of such residual disability; and

(4)  the Insured is not totally disabled, as defined in the policy.

The maximum Residual Monthly Benefit payable is 75% of the "Monthly Benefit for Total Disability" defined in definition (5) above.

**Residual Benefit Period.** The maximum Residual Benefit Period is the Maximum Benefit Period for Total Disability specified on page 3 of the policy if (a) total disability begins prior to the age 55 policy anniversary or (b) total disability begin on or after the age 55 policy anniversary and is continuous for at least one year.

If total disability which begins on or after the age 55 policy anniversary is not continuous for at least one year, the maximum Residual Benefit Period is limited to 24 months.

However, no Residual Monthly Benefit is payable after the age 65 policy anniversary.

**Evidence of Earned Income.** The Company may require any evidence which is needed to determine the Insured's Net Earned Income prior to disability and during a Residual Benefit Period. From time to time, the Company may require certified audits to verify such evidence and the amounts paid or payable.

**Waiver of Premium.** Premiums which are due for this policy after the 90th day of continuous total and/or residual disability and during a period for which the Residual Monthly Benefit is paid will be waived. The Company will refund all premiums due and paid during such 90 days.

**Accumulation of Elimination Period.** Periods of Total Disability immediately preceding and immediately following residual disability will be deemed to be continuous for purposes of accumulating all Elimination Periods.

**Termination of Residual Monthly Benefit.** Benefits for a period of residual disability will cease at the earliest of:

(1)    the end of the Residual Benefit Period described above;

(2)    the date on which residual disability, as defined above, ceases; or

(3)    the date on which the average of the Insured's Net Earned Income for the preceding six months is equal to or greater than 75% of his Average Net Earned Income.

**Successive Disabilities.** This provision replaces the "Consecutive Disabilities" provision on page 5 of the policy.

Successive periods of total disability will be considered separate periods of total disability if:

(1)    the new period is due to different cause(s); or

(2)    the periods are separated by at least six months during which the Insured is able to perform material and substantial duties of his regular occupation and

(a)    is continuously working on a full-time basis, or

(b)    is earning at least 75% of his Average Net Earned Income.

Any such successive period of total disability will be considered a new period and be subject to its own elimination period and maximum benefit period and residual disability will be subject to a new Qualification Period.

### LIMITATIONS

The combined benefit periods for total disability and residual disability cannot exceed the Maximum Benefit Period for Total Disability specified on page 3 of the policy.

### TERMINATION

On the policy anniversary when the Insured's age is 65, the coverage under and the premium for this rider will cease.

Subject to any modifications contained herein, this rider is subject to the provisions, conditions, and exclusions of this policy and any riders, amendments, or agreements which are a part of the policy.

Signed for the Company at its Home Office on the Policy Date or the Rider Date shown on page 3 of the policy, if later.

Secretary



UNUM Life Insurance Company of America
Portland, Maine 04122-2150

Change in Definition of "Total Disability"

This rider is a part of the policy to which it is attached.

The definition of "Total Disability" is hereby deleted and the following substituted therefor.

"Total Disability" means the inability of the Insured to perform the duties of his regular occupation. However, the total loss by the Insured of the use of both hands, both feet, or one hand and one foot, or the total loss of speech, hearing of both ears, or sight of both eyes shall be deemed to constitute "Total Disability" so long as such total loss of use, speech, hearing, or sight shall continue, irrespective of whether the Insured engages in his or any other gainful occupation.

This rider is subject to all the provisions, conditions and exclusions of the policy as well as any riders, amendments or agreements which are a part thereof.

IN WITNESS WHEREOF, the Company has caused this rider to be executed effective on the policy date.

Secretary



UNUM Life Insurance Company of America
*A STOCK INSURANCE COMPANY*
HOME OFFICE — PORTLAND, MAINE

Special Rider attached to and made a part of Policy No. ........................... ....  ....  ...

### IMPORTANT NOTICE

Please read the copy of the application attached to this policy. Carefully check the application and write to the Company at Portland, Maine, within 10 days, if any information shown on it is not correct and complete, or if any past medical history has been left out of the application. This application is a part of the policy and the policy was issued on the basis that the answers to all questions and the information shown on the application are correct and complete.

IN WITNESS WHEREOF, the Company has caused this Rider to be executed on the Policy Date.

Secretary

(11.86)
10.68.71

# AMENDMENT OF APPLICATION

**UNION MUTUAL LIFE INSURANCE COMPANY**                              **Portland, Maine**

I, ... YN D TAYLOR,                                      , hereby amend my application
as follows

The policy applied for shall contain the following provision.

All rights and benefits under the Policy are reserved to the Insured, except that it is hereby agreed that premiums will be payable by the Insured's Employer, under an employee accident or health plan, and during the continuance of such plan, as certified by the Employer, the Company may deal solely with such Employer, without thereby incurring any liability to the Insured, with respect to: (1) premium billings and payment; (2) voluntary termination by the Employer of premium payments upon the Insured's termination of employment or termination under said plan; (3) refund of unearned premiums, if any, allowed by The Company upon such termination. In the event that the Insured shall continue premium payments following such termination, such premiums shall be billed to him by the Company and may be adjusted by the Company in accordance with its usual rules as to mode and amount.

I hereby agree that this change shall be an amendment to and form part of the original application and of the Policy issued thereunder.

If, by the above amendment, I have agreed to any special restriction in the Policy applied for in my original application, the consideration for such agreement shall be deemed to be the issuance to me of such Policy containing such restriction.

I hereby certify that I have executed a duplicate copy of this Amendment of Application which has been attached to the policy to which it related.

Dated at _____ this _18_ day of _June_ 19___

Witness _____    Signed _____
                                              Applicant
                            ....YN D TAYLOR

h2208

Form 2*3-66

# AMENDMENT OF APPLICATION

**UNION MUTUAL LIFE INSURANCE COMPANY**                                    Portland, Maine

I,    MELVYN D TAYLOR                                    hereby amend my application
as follows

The policy applied for shall contain the following provision:

All rights and benefits under the Policy are reserved to the Insured, except that it is hereby agreed that premiums will be payable by the Insured's Employer, under an employee accident or health plan, and during the continuance of such plan, as certified by the Employer, the Company may deal solely with such Employer, without thereby incurring any liability to the Insured, with respect to: (1) premium billings and payment; (2) voluntary termination by the Employer of premium payments upon the Insured's termination of employment or termination under said plan; (3) refund of unearned premiums, if any, allowed by The Company upon such termination. In the event that the Insured shall continue premium payments following such termination, such premiums shall be billed to him by the Company and may be adjusted by the Company in accordance with its usual rules as to mode and amount.

I hereby agree that this change shall be an amendment to and form part of the original application and of the Policy issued thereunder.

If, by the above amendment, I have agreed to any special restriction in the Policy applied for in my original application, the consideration for such agreement shall be deemed to be the issuance to me of such Policy containing such restriction.

I hereby certify that I have executed a duplicate copy of this Amendment of Application which has been attached to the policy to which it related.

DUPLICATE

Dated at  Ft. Lauderdale, Fla            this  18  day of  June, 19 78

Witness  Ronald Shaker, CLU            Signed  X Melvyn D Taylor
                                                                        (Applicant)

                                                MELVYN D TAYLOR

N2208

Form 273466

**Unionmutual**

**Unionmutual Stock Life Insurance Co. of America**
A STOCK INSURANCE COMPANY
HOME OFFICE – PORTLAND, MAINE

## REQUEST FOR POLICY CHANGE OR REINSTATEMENT (HEALTH)

Print or Type Name of Insured  **Melvyn Taylor**

The undersigned hereby requests that policy number   ~N 505951   be modified as checked below.

1. Add, remove, or change the following coverage(s)

| Add | Remove | Change | Type of Coverage | New Amt. | Old Amt. |
|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | AD&D | $ | $ |
| ☐ | ☐ | ☐ | Hospital/Nurse | | |
| ☐ | ☐ | ☐ | Additional Ins. Option | | |
| ☐ | ☐ | ☐ | Add. Mon. Benefit | | |
| ☐ | ☐ | ☐ | Deferred Mon. Benefit | | |
| ☐ | ☐ | ☐ | Non-Disabling Injury | | |
| ☐ | ☐ | ☐ | Lifetime Accident | | |
| ☐ | ☐ | ☐ | Lifetime Loss of Use | | |
| ☐ | ☐ | ☐ | Lifetime Sickness | | |
| ☐ | ☐ | ☐ | Partial Accident | | |
| ☐ | ☐ | ☐ | Partial Sickness | | |
| ☐ | ☐ | ☐ | Recovery Benefit | | |
| ☐ | ☐ | ☐ | Other (Specify) | | |
| ☒ | ☐ | ☐ | **Residual Disability Benefit Rider** | | |
| ☐ | ☐ | ☐ | | | |
| ☐ | ☐ | ☐ | | | |

2. Make the following change(s):
☐ Change elimination period on policy to _____ days Accident _____ days Sickness.
☐ Change elimination period on Add. Mon. Benefit to _____ days.
☐ Change elimination period on Deferred Mon. Benefit to _____ days.
☐ Change maximum benefit period on policy to _____
☐ Change maximum benefit period on Add. Mon. Benefit to _____
☐ Remove Step Rate Premium Rider (Unless requested otherwise, coverage will continue, with no change, for the level premium rate applicable to the attained age of the Insured.)
☐ Change beneficiary to _____

☐ Add to covered person(s):
Name _____
Relationship _____
Date of Birth _____
Sex _____
☐ Remove from covered person(s):
Name _____
Date of Birth _____
☐ Other (Specify) _____

## APPLICATION TO REINSTATE POLICY

The undersigned hereby applies for reinstatement of policy number _____ and all coverages provided by rider

IT IS UNDERSTOOD AND AGREED THAT: (1) The policy shall be deemed changed, reinstated or delivered, and effective, as the case may be, as of the date this application is executed; subject, however, to approval of this application by the Company at its Home Office, and payment in full of the premium(s) required in conjunction herewith. (2) The policy, if reinstated or changed so as to increase benefits thereunder, shall not become incontestable with respect to the representations made herein, or in a Part II application, or in any other application required in conjunction herewith, until expiration of a period of the same duration following the effective date of change or reinstatement as is provided under the incontestable provision of the policy with respect to the original issue of the policy, except that, if this application is furnished in connection with a requested increase in benefits, this provision (2) shall apply only to such increase in benefits. (3) If this application is not approved, any payment made to the Company in connection herewith shall be refunded by the Company to the Applicant, without interest, and any receipt given therefor will be surrendered upon request.

Signed at _FORT LAUDERDALE, FLORIDA_    Date Signed _8/26_ 19 _76_

Witness _____   Signature of Agent _____   Signature of Applicant _____

If family coverage, answer for all persons covered. Include names of persons to whom "yes" answers apply.

| Underline condition causing "yes" answer: | | | GIVE FULL DETAILS OF EACH "YES" ANSWER (Include date, results, and names and addresses of physicians and hospitals — Identify answer by its number.) |
|---|---|---|---|

**Since you applied for the above numbered policy:**

| | YES | NO | |
|---|---|---|---|
| 1. Have you received or claimed benefits or a pension for any sickness, injury, or impairment? | ☐ | ☑ | |
| 2. Have you applied for insurance that was declined, postponed, rated, or modified in any way? | ☐ | ☑ | |
| 3. Have you been issued new insurance? (Give kind, amount, and name of company) | ☐ | ☑ | |
| 4. Have you done any flying other than as a fare-paying passenger on a regularly scheduled non-chartered airline? | ☐ | ☑ | |
| 5. Have you engaged in underwater diving below forty feet, parachuting or motor vehicle racing, or do you intend to do so? | ☐ | ☑ | |

**During the past five years:**

| | YES | NO | |
|---|---|---|---|
| 6. Have you had or been advised to have a surgical operation? | ☐ | ☑ | |
| 7. Have you received treatment for, or been advised to receive medical treatment for, or had any known indication of: | | | |
| a. high blood pressure, heart trouble, or blood vessel disease? | ☐ | ☑ | |
| b. diabetes, or sugar or albumin in urine? | ☐ | ☑ | |
| c. cyst, polyp, tumor, or cancer? | ☐ | ☑ | |
| d. asthma, tuberculosis, or any disease of the lungs or respiratory system? | ☐ | ☑ | |
| e. kidney, stomach, liver, or other disorder of the digestive system? | ☐ | ☑ | General exam 8/76 |
| f. nervous breakdown, or other mental or nervous disorder? | ☐ | ☑ | |
| g. alcoholism or drug addiction? | ☐ | ☑ | |
| 8. a. Have you consulted a physician for any reason not listed above? | ☑ | ☐ | Dr. Nathan Hollywood Blvd. |
| b. Did any complaints or symptom prompt the consultation? | ☐ | ☑ | Hollywood, Fla. |
| c. Were you given any treatment, prescription, or advice? | ☐ | ☑ | good health |
| 9. Have you had any disease, illness, or injury, not mentioned above? | ☐ | ☑ | |

10. a. Height ____ 5 - 11 1/2 ____ ins.
    b. Weight ____ lbs.
    c. Weight change during past year ____ lbs.
       ☐ Gain  ☐ Loss
    d. Cause ____

11. Complete if female
    a. If pregnant, give expected date of delivery.
    b. During the past 5 years, have you had any disease or disorder of the female generative organs or breasts? (If "yes", give details above.)

IT IS UNDERSTOOD AND AGREED THAT the representations made herein are, to the best of my/our knowledge and belief, true, complete, and correctly recorded

Signed at _Fort Lauderdale, Florida_    Date signed ____ 8/26/76

_____    _____
Witness    Signature of Soliciting Agent    Signature of Insured

Date ____ 8/26/76

I hereby authorize any physician, hospital, clinic, insurance company or other organization, institution, or person that has any records or knowledge of me or my health, to give to the Unionmutual Stock Life Insurance Co. of America any and all information about me with reference to my health and medical history and any hospitalization, advice, diagnosis, treatment, disease, or ailment. A photographic copy of this authorization shall be as valid as the original.

_____    _____
Witness    Signature of Soliciting Agent    Signature of Insured

**COMPLETE ITEMS 16-20 AND 21, IF NECESSARY, WHEN APPLYING FOR DISABILITY INCOME OR OVERHEAD EXPENSE INS.**

| Plan | Monthly Benefit | Optional Benefits: |
|------|----------------|--------------------|
| 3-70 | $ 1500 | ☒ Lifetime Sickness $ 250  ☐ Lifetime Acc. $ |

Maximum Benefit Period
  Sickness  TO 65     Accident  LIFE

Elimination Period
  Sickness  30         Accident  30
Other

☐ Partial:      ☒ Sick. & Acc.     ☐ Acc. only

☐ Additional Mo. Benefit $ _____ for _____ months
   Elimination Period _____

☐ Deferred Mo. Benefit $ _____ after _____

☐ Daily Hospital or Nurse $ _____ per day

☐ First Day Hospital      ☐ A.D.&D. $ _____

☐ Additional Insurance Option Amount $ _____

17  Premiums  ☐ Ann  ☐ S.A.  ☐ Quar.  ☐ PAC  ☐ Sal. Ded
    Payable

18  Amount paid for Health Insurance with this Application
    $  COD

19  Will any Health Insurance be discontinued if this policy is
    issued?   ☒ Yes   ☐ No    If yes give:

    Company        Amount       Date of Termination
    SUN LIFE        1200          10/72

20  Beneficiary(ies): Give full name(s) and relationship(s)
    (for Acc. Death Benefit only)

21  SPECIAL REQUESTS (use with Life or Health Ins.)

    ALTERNATE ISSUE REQUESTED FOR $1000/MONTH. OTHER CRITERIA
    TO BE THE SAME

22. FOR HOME OFFICE USE ONLY

**IT IS UNDERSTOOD AND AGREED** by the undersigned Proposed Insured and Applicant that: (1) The statements and answers given herein together with those in each Part II or Part III hereof are, to the best of my/our knowledge and belief, true and complete and correctly recorded, and are offered to induce the Company to issue the policy(ies) applied for. (2) No agent, broker, medical examiner, or employee except an authorized Company employee at its Home Office has authority to determine insurability or to make or modify any contract of insurance, or to waive any requirement of the Company. (3) Except as provided under the Conditional Receipt numbered identically herewith (if such Receipt has been given to Applicant), no insurance applied for hereunder shall become effective unless the policy shall have been issued by the Company and the first premium paid in full thereon, and then only if the statements and answers referred to in Item (1) above would represent, without material change, to the best of my/our knowledge and belief, true and complete answers to the same questions, on such payment date. (4) If such Receipt has been given to Applicant, EACH AND EVERY CONDITION OF THE RECEIPT MUST BE MET BEFORE ANY INSURANCE BECOMES EFFECTIVE. (5) No corrections, additions, or changes made by the Company shall be effective unless agreed to in writing by the Applicant. (6) The Applicant for any insurance issued hereon shall be the Proposed Insured, unless another person or firm shall execute this application below as Applicant, and, for any insurance policy issued hereon providing for ownership, the Proposed Insured shall be the Owner unless otherwise designated herein.

Signed at  Ft. Lauderdale, Fla.                    Date Signed  9-13-72

Witness  Donald H. Balch                    X _____
                                              Signature of Proposed Insured
Signature of Soliciting Agent

General Agency  Armstrong & Sargent, Inc.       Applicant's Name (if other than Proposed Insured)

№  68513                                          Applicant's Signature (if other than Proposed Insured)

Form No. 917-71(2)                                Printed in U S A

✓ 505952
✓ 505951

Policy not prepaid. And _____ be _____ collected from application at Home Office.

*Insurance Application to*

**Unionmutual Stock Life Insurance Co. of America**
A STOCK LIFE INSUBANCE COMPANY
HOME OFFICE — PORTLAND, MAINE

*be completed by Agent, if non-medical basis; or by Medical Examiner if on medical basis*

| | 1a. Birthdate | FULL DETAILS OF EACH YES ANSWER |
|---|---|---|
| TAYLOR | 5/18/37 | (Include dates, duration, results and names and addresses of physicians and hospitals — identify answer by its number.) |

YES NO

- which was declined, postponed, rated or ☐ ☑
- red, or discharged from military service for ☐ ☑
- residence because of health? ☐ ☑
- lives habitually or been treated for alcoholism ☐ ☑
- s, brothers or sisters had diabetes? ☐ ☑
- amputation or impairment of sight or hearing? ☑ ☐  4. Myopic — Wears Corrective lenses
- sical check-up within 5 years? (Give names of reason for last examination.) ☑ ☐  8a. Life Insurance — July 1972
- r symptoms prompt the examination? ☐ ☑  Srvy want
- treatment, prescription or advice? ☐ ☑
- not yet performed? ☐ ☑  Life Ins. 1971
- tion in a hospital, clinic or sanitorium? ☐ ☑  6a. TIA age 3 yrs.

TREATED FOR OR HAD ANY OF:

- comfort in the chest, palpitation, heart murmur. ☐ ☑
- other disorder of the heart. ☐ ☑
- s or other disorder of the blood or blood vessels? ☐ ☑
- berculosis or other disorder of the lungs or ☐ ☑
- s, recurrent dizziness, fainting spells, paralysis, ☐ ☑
- ous breakdown or other disorder of brain or ☐ ☑
- er disorder of the stomach, gallbladder, liver, ☐ ☑
- other glandular disorder? ☑ ☐  29. Hyperthyroid 1967
- le, gout or other disorder of the skin, bones or ☐ ☑  medical Margaret Clay #131
- cancer? ☐ ☑  — Presently Euthyroid
- lood in your urine? ☐ ☑
- stones, prostatitis or other disorder of the ☐ ☑  Pt. had Disability Ins. ē
- es or ears? ☐ ☑  Unionmutual at Time of
- NTIONED ABOVE, HAVE YOU IN THE LAST 5 YEARS: thyroid problem - They should
- treated by a doctor? ☑ ☐  have Complete Records of Same.
- trocardiogram or other special test? ☐ ☑
- lness, injury or impairment? ☐ ☑

DUPLICATE

| | LIVING HEALTH | AGE | DEAD CAUSE OF DEATH |
|---|---|---|---|
| | Good | | |
| | Good | | |
| a. | Good | | |
| 32 | Good | | |

10. Complete if female
   a. If pregnant, give expected date of delivery. _____
   b. Have you ever had any disease or disorder of the female generative organs or breasts? (if "yes," give details above)

11. Complete if non-medical
   a. Height ___ ft. ___ in.
   b. Weight ___ lbs.
   c. Weight change during past year ___ lbs. GAIN ☐ LOSS ☐
   d. Cause

that all the statements and answers to the above questions are complete and true to the best of my knowledge and
ree that they shall form a part of the contract of insurance applied for, and
ze any physician, hospital, clinic, insurance company or other organization, institution or person, that has any
ledge of me or my health, to give to the Unionmutual Stock Life Insurance Co. of America any and all information
reference to my health and medical history and any hospitalization, advice, diagnosis, treatment, disease or ail-
raphic copy of this authorization shall be as valid as the original.

this 10 Day of 10 19__  N305051

(Medical Examiner)                    Signature of Proposed Insured

Printed in U.S.A.

---

Right column (partial):

nce Application to
Co. of America
SURANCE COMPANY
— PORTLAND, MAINE

2-82-6958

Age Last Birthday  35

married ☐ Widowed
Divorced

How long so Employed?  2

Soc. Sec. No. or
axpayer Ident. No.

ach "Yes" answer

efit Period

Accident
LIFE

RANCE.
$
will be effective unless

nge. Give name(s) and

ge any now in force with
es ☐ No. If yes, give
ount       Plan of Ins.

917-75

CHATTANOOGA, TN 37402
1 FOUNTAIN SQUARE
INSURANCE COMPANY
LIFE AND ACCIDENT
PROVIDENT

# PROVIDENT
# LIFE AND ACCIDENT
## INSURANCE COMPANY

1 FOUNTAIN SQUARE
CHATTANOOGA, TN 37402

(A STOCK COMPANY)

ALL PROVISIONS ON THE
ATTACHED PAGES ARE A
PART OF YOUR POLICY

*Ralph J. Cummiler*
Vice President

*Winston W Walker*
President and
Chief Operating Officer

1825



```
                           IMPORTANT NOTICE


Please  read  the copy of the application attached to this policy.  Omissions or
misstatements in the application could cause an otherwise valid claim to be  de-
nied.  Carefully check the application and write to us within 10 days if any in-
formation  shown  on  it  is  not  correct  and complete, or if any past medical
history has been left out of the application.  This application is a part of the
policy; and the policy was issued on the basis that the answers to all questions
and the information shown on the application are correct and complete.
```

### D I S A B I L I T Y   I N C O M E   P O L I C Y

NON-CANCELLABLE AND GUARANTEED CONTINUABLE TO YOUR 65TH BIRTHDAY
OR FIVE YEARS, WHICHEVER IS LATER
CONDITIONAL RIGHT TO RENEW AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS
WHICHEVER IS LATER; PREMIUMS GUARANTEED TO YOUR 65TH BIRTHDAY

MELVYN D TAYLOR, the Insured
Policy Number 06-337-5031731

**10 day right to examine your policy** – We want you to fully understand and be entirely
satisfied with your policy.  If you are not satisfied for any reason, you may return
the policy to us, or to the agent through whom it was purchased, within 10 days of
its receipt.  We will refund any premiums you have paid within 10 days after we receive
your notice of cancellation and the policy.  It will be considered never to have been
issued.

337

In this pol    , the words "you" and "your" mean you, the Insured named below; "we,"
"our" and "      mean Provident Life and Accident Insurance Company.

We will pay    nefits for covered loss resulting from Injuries or Sickness subject to
all of the     visions of this policy.  Loss must begin while the policy is in force.

This polic     a legal contract between you and us.  It is issued in consideration
of the pay     in advance of the required premium and of your statements and repres-
entations      the application.  A copy of your application is attached and made a part
of the po      .

NON-CANCE      LE AND GUARANTEED CONTINUABLE AT GUARANTEED PREMIUMS TO YOUR 65TH
BIRTHDAY       OR FIVE YEARS, WHICHEVER IS LATER:  You can continue this policy to your
65th birt      or for five years, whichever is later, by paying premiums on time.  The
premiums       n on Page 3 are guaranteed to your 65th birthday or for five years,
whichever      l:ter.

CONDITIO       :IGHT TO RENEW AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS LATER;
PREMIUMS       NOT GUARANTEED:  You can renew this policy as long as you are actively
and gain:      y working full time; there is no age limit.  You must pay premiums on time
at our p       um rates then in effect at time of renewals.  (For further conditions,
see the        e titled "Premiums and Renewals."  See Page 7 for the benefit provisions
that will      e included in the continued policy.)

337

## GUI. TO POLICY PROVISIONS

|  | Page |
|---|---|
| Renewal Conditions | 1 |
| Policy Schedule | 3 |
| UPDATE | 3 |
| Definitions (Injuries, Sickness, Physician, Total Disability, your occupation, period of disability, Elimination Period) | 4 |
| Exclusions | 5 |
| Benefits | |
| Total Disability | 6 |
| Presumptive Total Disability | 6 |
| Transplant Surgery | 6 |
| Cosmetic Surgery | 6 |
| Waiver of Premium | 6 |
| Rehabilitation | 7 |
| Benefits When Policy Renewed After Your 65th Birthday or Five Years, Whichever is Later | 7 |
| Payment for Part of Month | 7 |
| Additional Benefits | |
| Residual Disability (includes revised Waiver of Premium provision) | 8 |
| Cost of Living Adjustment | 12 |
| Premiums and Renewals | |
| Policy Term | 14 |
| Grace Period | 14 |
| Conditional Right to Renew After Your 65th Birthday or Five Years Whichever is Later - Premiums Are Not Guaranteed | 14 |
| Reinstatement | 14 |
| Suspension During Military Service | 15 |
| Premium Adjustment at Death | 15 |
| Claims | |
| Notice of Claim | 15 |
| Claim Forms | 15 |
| Proof of Loss | 15 |
| Time of Payment of Claims | 16 |
| Payment of Claims | 16 |
| Physical Examinations | 16 |
| Misstatement of Age | 16 |
| Legal Actions | 16 |
| General Provisions | |
| Entire Contract | 16 |
| Time Limit on Certain Defenses | 16 |
| Conformity With State Statutes | 16 |
| Assignment | 16 |
| Salary Allotment Premium Payment | 17 |

**READ YOUR POLICY CAREFULLY**

## P O L I C Y   S C H E D U L

Insured – MELVYN D TAYLOR                    Policy Number – 06-337-5031731
Effective Date – October 1, 1990            First Renewal Date – October 1, 1991
Issue Date – October 11, 1990               Renewal Term – Twelve Months

Policy Premium payable from October 1, 1990 until the first UPDATE Increase Date (see Page 3 (cont.)) is at the Annual rate of $2,508.23 on a non smoking premium basis.

Other Premium Paying Methods:
       $1,279.20 Semi-Annually
         $652.14 Quarterly
         $213.21 Monthly (Preauthorized Bank Draft only)

-----------------------MONTHLY BENEFIT FOR TOTAL DISABILITY-----------------------

$1,455.00

--------------------------------ELIMINATION PERIOD--------------------------------

30 days of Total and/or Residual Disability

An Elimination Period starting after your 65th birthday
must consist entirely of days of Total Disability

--------------------MAXIMUM BENEFIT PERIODS FOR TOTAL DISABILITY--------------------

Injuries:
     Total Disability starting before your 65th birthday  ...............   for Life
     Total Disability starting on or after your 65th birthday
       but before your 75th birthday  ...................................  24 months
     Total Disability starting on or after your 75th birthday  ..........  12 months

Sickness:
     Total Disability starting before your 60th birthday  ...............   for Life
     Total Disability starting on or after your 60th birthday
       but before your 61st birthday  ....................... to your 65th birthday
     Total Disability starting on or after your 61st birthday
       but before your 62nd birthday  ...................................  48 months
     Total Disability starting on or after your 62nd birthday
       but before your 63rd birthday  ...................................  42 months
     Total Disability starting on or after your 63rd birthday
       but before your 64th birthday  ...................................  36 months
     Total Disability starting on or after your 64th birthday
       but before your 65th birthday  ...................................  30 months
     Total Disability starting on or after your 65th birthday
       but before your 75th birthday  ...................................  24 months
     Total Disability starting on or after your 75th birthday  ..........  12 months

-----------------------------ADDITIONAL BENEFITS-----------------------------
(The premium shown for each benefit is included in the Policy Premium shown above.)

(Policy Schedule is continued on next page.)

337(L-L60)              MELVYN D TAYLOR 06-337-5031731              Page 3

POLICY SCHEDULE (continued)


Residual Disability .....................................Page 8    Premium $272.37

Maximum Benefit Periods For Residual Disability
Injuries or Sickness:
Residual Disability starting before
   your 61st birthday .................................. To your 65th birthday
Residual Disability starting on or after your 61st birthday
   but before your 62nd birthday .................................... 48 months
Residual Disability starting on or after your 62nd birthday
   but before your 63rd birthday .................................... 42 months
Residual Disability starting on or after your 63rd birthday
   but before your 64th birthday .................................... 36 months
Residual Disability starting on or after your 64th birthday
   but before your 65th birthday .................................... 30 months

Cost of Living Adjustment ...............................Page 12    Premium $380.77


(Policy Schedule is continued on next page.)

POLICY SCHEDULE (continued)

-----------------------------------UPDATE-----------------------------------------

The benefits and premium named below will be automatically increased without evidence
of insurability, as follows:

| UPDATE Increase Date | New Monthly Benefit for Total Disability | New Annual Premium for this Policy |
|---|---|---|
| 10/01/91 | $1,565.00 | $2,703.96 |
| 10/01/92 | $1,675.00 | $2,907.70 |
| 10/01/93 | $1,795.00 | $3,122.41 |
| 10/01/94 | $1,925.00 | $3,346.81 |
| 10/01/95 | $2,065.00 | $3,579.64 |

UPDATE Benefit increases are effective on the UPDATE Increase Dates shown.  If an
UPDATE Increase Date shown does not coincide with a renewal date for this policy, the
increase will be effective on the next renewal date.

An UPDATE Benefit increase will apply only to a period of disability which starts
after the effective date of the increase. It must qualify as a separate period of
disability.  If the premium for the policy is being waived on the effective date of
the increase, the premium for the increase will also be waived. When you resume paying
premiums for the policy, you must also start paying the premium for the increase.

You are entitled to UPDATE Benefit increases on the dates shown above. If you do not
accept an increase, your refusal:

1.  forfeits your right on that UPDATE Increase Date to the UPDATE Benefit increase;
2.  postpones the schedule of benefit increases to the next UPDATE Increase Date, if
    any;
3.  adjusts the premiums for the remaining increases, if any, since such premiums are
    based on your attained age at the time of an UPDATE Benefit increase; and
4.  in no way extends the last UPDATE Increase Date shown above.

Each refusal of an UPDATE Benefit increase reduces the number of UPDATE Benefit in-
creases to which you were entitled by one.

If you have not reached your 60th birthday on the last UPDATE Increase Date, you may
apply for an amendment providing additional UPDATE Benefit increases.  You can do this
by making formal application within the period of 60 days prior to and 31 days after
the last UPDATE Increase Date.  Approval will be subject to our underwriting guide-
lines then in effect.

## DEFINITIONS

**Injuries** means accidental bodily injuries occurring while your policy is in force.

**Sickness** means sickness or disease which is first manifested while your policy is in force.

**Physician** means any person other than you who is licensed by law, and is acting within the scope of the license, to treat Injuries or Sickness which results in covered loss.

**Total Disability or totally disabled** means that due to Injuries or Sickness:

1. you are not able to perform the substantial and material duties of your occupation; and

2. you are receiving care by a Physician which is appropriate for the condition causing the disability.  We will waive this requirement when continued care would be of no benefit to you.

**your occupation** means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled. If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation.

**period of disability** means a period of disability starting while this policy is in force.  Successive periods will be deemed to be the same period unless the later period:

1. is due to a different or unrelated cause, or

2. starts more than six months after the end of the previous period;

in which event, the later period will be a new or separate period of disability.  A new Elimination Period must then be met. And, a new Maximum Benefit Period will apply.

**Elimination Period** means the number of days of disability that must elapse in a period of disability before benefits become payable.  The number of days is shown on Page 3.  These days need not be consecutive; they can be accumulated during a period of disability to satisfy an Elimination Period.  Benefits are not payable, nor do they accrue, during an Elimination Period.

## EXCLUSIONS

We will not pay benefits for loss caused by:

1. war or any act of war, whether war is declared or not; or
2. normal pregnancy or childbirth, except we will pay benefits for loss caused by:
   a. complications of pregnancy; and
   b. normal pregnancy or childbirth on the later of the 91st day of disability or the day of disability following the Elimination Period.

   Complications are physical conditions physicians consider distinct from pregnancy even though caused or worsened by pregnancy. Examples of conditions that are not complications include false labor and morning sickness.

We will not pay benefits for loss we have excluded by name or specific description; any such exclusion will appear in the Policy Schedule.

BENEFITS

## TOTAL DISABILITY
We will pay the Monthly Benefit for Total Disability shown on Page 3 as follows:

1. Benefits start on the day of Total Disability following the Elimination Period.
2. Benefits will continue while you are totally disabled during the period of disability but not beyond the Maximum Benefit Period.

In no event will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness or from both will not matter. We will pay benefits for the disability which provides the greater benefit.

## PRESUMPTIVE TOTAL DISABILITY - LOSS OF SPEECH, HEARING, SIGHT OR THE USE OF TWO LIMBS
You will be presumed totally disabled if Injuries or Sickness results in the entire and permanent loss of:

1. speech;
2. hearing in both ears;
3. the sight of both eyes; or
4. the use of both hands, or of both feet or of one hand and one foot.

You must present satisfactory proof of your loss.  Your ability to work will not matter.  Further medical care will not be required.  Benefits will be paid according to the Total Disability provisions of this policy.  But, benefits will start on the date of loss if earlier than the day benefits start as shown on Page 3.  If loss occurs before your 65th birthday, the Monthly Benefit for Total Disability will be paid as long as you live regardless of the Maximum Benefit Period shown on Page 3.

## TRANSPLANT SURGERY
You might be disabled from the transplant of part of your body to another person. If so, we will consider it to be the result of a Sickness.

## COSMETIC SURGERY
You might be disabled from surgery to improve your appearance or to correct disfigurement.  If so, we will consider it to be the result of a Sickness.

## WAIVER OF PREMIUM
After you have been totally disabled for 90 days during a period of disability, we will:

1. refund any premiums which became due and were paid while you were totally disabled; and
2. waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts.  After it ends, to keep this policy in force, you must again pay any premiums which become due.

For premiums to be waived, you must give us satisfactory proof of disability.

REHABILITATION
Total Disability - Your participation in a program of occupational rehabilitation will
not of itself be considered a recovery from Total Disability.

Expense - If, during a period of Total Disability, you notify us in writing that you
want to participate in a program of occupational rehabilitation, we will consider
paying for certain expenses you incur.  The extent of our role will be determined by
written agreement with you.   Generally, we will pay for the reasonable cost of
training and education which is not otherwise covered under health care insurance,
workers' compensation or any public fund or program.

A program of occupational rehabilitation must be designed to help you return to work
and be:

1.  a formal program of rehabilitation at an accredited graduate school, college
    or business school, or at a licensed vocational school;
2.  a recognized program operated by the federal or a state government; or
3.  any other professionally planned rehabilitation program of training or educa-
    tion.

BENEFITS WHEN POLICY RENEWED AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS
LATER
If this policy is continued in accordance with the "Conditional Right to Renew After
Your 65th Birthday or Five Years, Whichever is Later" on Page 1, all of the benefit
provisions on Pages 6 and 7 will be included in the continued policy. (If a Treatment
of Injuries Benefit and/or a Preliminary Term Benefit is contained in this policy,
it can be included in the continued policy.  No other "Additional Benefits", if any,
named on Page 3 will be included in the continued policy.)  The Maximum Benefit Period
starting while this policy is so continued is shown on Page 3.  The Monthly Benefit
for Total Disability will not change unless you choose to renew with a lesser amount.

PAYMENT FOR PART OF MONTH
If any payment under this policy is for part of a month, the daily rate will be 1/30th
of the payment which would have been made if disability had continued for the whole
month.

RESIDUAL DISABILITY/RECOVERY BENEFITS with Cost of Living Indexing of Prior Monthly Income
(Nothing in this provision limits the policy definition of "Total Disability.")

## DEFINITIONS

Monthly Income means your monthly income from salary, wages, bonuses, commissions, fees or other payments for services which you render or your business provides. Normal and usual business expenses are to be deducted; income taxes are not. Monthly Income must be earned. It does not include dividends, interest, rents, royalties, annuities, sick pay or benefits received for disability under a formal wage or salary continuation plan or other forms of unearned income.

Monthly Income can be credited to the period in which it is actually received or to the period in which it is earned. We allow either the cash or accrual accounting method. But, the same method must be used to determine the Prior Monthly Income and the Current Monthly Income during a period of disability. If you elect the cash accounting method we will not include income received for services rendered prior to the start of the period of disability in your current monthly income.

Prior Monthly Income means the greatest of:

   1.  your average Monthly Income for the 12 months just prior to the start of the period of disability for which claim is made;
   2.  your average Monthly Income for the year with the highest earnings of the last two years prior to the start of such period of disability; or
   3.  your highest average Monthly Income for any two successive years of the last five years prior to the start of such period of disability.

Current Monthly Income means your Monthly Income in your occupation for each month of Residual Disability being claimed.

Loss of Monthly Income means the difference between Prior Monthly Income and Current Monthly Income. Loss of Monthly Income must be caused by the Residual Disability for which claim is made. The amount of the loss must be at least 20% of Prior Monthly Income to be deemed Loss of Monthly Income. If your loss is more than 75% of Prior Monthly Income, we will deem the loss to be 100%.

Residual Disability or residually disabled, during the Elimination Period, means that due to Injuries or Sickness:

   1.  you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usual daily business duties for as much time as it would normally take you to do them;
   2.  you have a Loss of Monthly Income in your occupation of at least 20%; and
   3.  you are receiving care by a Physician which is appropriate for the condition causing disability. We will waive this requirement when continued care would be of no benefit to you.

After the Elimination Period has been satisfied, you are no longer required to have a loss of duties or time. Residual Disability or residually disabled then means that as a result of the same Injuries or Sickness:

   1.  you have a Loss of Monthly Income in your occupation of at least 20%; and
   2.  you are receiving care by a Physician which is appropriate for the condition causing the Loss of Monthly Income. We will waive this requirement when continued care would be of no benefit to you.

Monthly Benefit for Total Disability is shown on Page 3. (It can be increased by certain other benefit provisions if they are included in your policy and are applicable. If included, they are titled "Cost of Living Adjustments" and "Social Insurance Substitute Benefit.")

Residual Disability Monthly Benefit is the benefit payable under this provision. It is determined monthly by this formula. Each month, it equals:

$$\frac{\text{Loss of Monthly Income}}{\text{Prior Monthly Income}} \times \text{Monthly Benefit for Total Disability}$$

### RESIDUAL DISABILITY/RECOVERY BENEFITS

We will pay Residual Disability Monthly Benefits as follows:

1. Benefits start on the day of Residual Disability following the Elimination Period or, if later, after the end of compensable Total Disability during the same period of disability.
2. Benefits will continue while you are residually disabled during a period of disability but the combined period for which benefits for Total and Residual Disability are payable can not exceed the Maximum Benefit Period shown on Page 3.
3. The first six monthly payments for Residual Disability will be the greater of:
   a. 50% of the Monthly Benefit for Total Disability; or
   b. the Residual Disability Monthly Benefit determined for each month.

Residual Disability benefits will not be paid for any days for which Total Disability benefits are paid.

In no event will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness or from both will not matter. We will pay benefits for the disability which provides the greater benefit.

We can require any proof which we consider necessary to determine your Current Monthly Income and Prior Monthly Income. Also, we or an independent accountant retained by us shall have the right to examine your financial records as often as we may reasonably require.

### COST OF LIVING INDEXING OF PRIOR MONTHLY INCOME
(Applicable to benefits paid after the 12th month of a period of disability)

#### Definitions

CPI-U means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If the CPI-U is discontinued or if its method of computation is changed, we may use another nationally published index. We will choose an index which is similar in scope and purpose to the CPI-U. The CPI-U will then mean the index which is chosen.

Review Date means each anniversary date of the start of a period of disability.

Review Period means a one year period ending on a Review Date.

Index Month means the calendar month three months prior to a Review Date. But, the first Index Month means the calendar month three months prior to the start of a period of disability. We will measure all changes in the CPI-U from the first Index Month.

Index Factor is used by us to determine your adjusted Prior Monthly Income for each Review Period. We will compute this factor by dividing the CPI-U for the latest Index Month by the CPI-U for the first Index Month. We will compute it on each Review Date during a period of disability.

#### Adjusted Prior Monthly Income

If Injuries or Sickness results in a period of disability that lasts at least 12 months, we will compute Cost of Living Adjustments on each Review Date for Residual Disability Benefits. Monthly benefits which thereafter accrue during that period of disability will be adjusted by indexing your Prior Monthly Income as follows:

1. On each Review Date, your Prior Monthly Income will be multiplied by your Index Factor. The result is your adjusted Prior Monthly Income. It will be used to figure your Loss of Monthly Income during the Review Period that follows. It will also be used in the formula to compute each Residual Disability Monthly Benefit payable during that Review Period.

   An increase in your Prior Monthly Income can cause your Loss of Monthly Income to be greater. This in turn can result in an increase in your Residual Disability Monthly Benefit. Other than your Index Factor (which is computed by using actual CPI-U values), there is no limit on the percent of increase in your Prior Monthly Income for a Review Period. If the CPI-U should go down, your adjusted Prior Monthly Income can decrease. But, it can never reduce below your Prior Monthly Income at the start of the period of disability.

2. Indexing of your Prior Monthly Income will end on the earliest of:

    a. the end of the period of disability (see Page 4);
    b. the end of a benefit period; or
    c. your 65th birthday.

If the computations end because of a or b above, disability benefits which can be paid for the first 12 months of a new period of disability will not include a Cost of Living Adjustment. A new first Index Month and Review Date will apply to each new period of disability that lasts more than 12 months.

## WAIVER OF PREMIUM

For periods of disability which start before your 65th birthday, the Waiver of Premium provision on Page 6 is replaced by the following:

### "WAIVER OF PREMIUM – TOTAL DISABILITY AND RESIDUAL DISABILITY

If, during a period of disability, Injuries or Sickness results in more than 90 days of Total and/or Residual Disability, we will:

1. refund any premiums which became due and were paid while you were so disabled; and
2. waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts. After it ends, to keep your policy in force, you must again pay any premiums which become due.

For premiums to be waived, you must give us satisfactory proof of disability."

NOTE: All portions of this Residual Disability/Recovery Benefit expire on your 65th birthday, and no further premiums for it will be due, even though the policy may be renewed after that date and benefits may continue to be payable past your 65th birthday, as shown on Page 3.

COST OF LIVING ADJUSTMENTS
(Applies to benefits payable after the 12th month of a period of disability)

### DEFINITIONS

CPI-U means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If the CPI-U is discontinued or if its method of computation is changed, we may use another nationally published index. We will choose an index which is similar in scope and purpose to the CPI-U. The CPI-U will then mean the index which is chosen.

Review Date means each anniversary date of the start of a period of disability.

Review Period means a one year period ending on a Review Date.

Index Month means the calendar month three months prior to a Review Date. But, the first Index Month means the calendar month three months prior to the start of a period of disability. We will measure all changes in the CPI-U from the first Index Month.

Benefit Factor is determined by dividing the CPI-U for the latest Index Month by the CPI-U for the first Index Month. We will compute it on each Review Date during a period of disability. It will apply to the Review Period that follows.

Monthly Benefit for Total Disability is shown on Page 3. (It can be increased by a "Social Insurance Substitute (SIS) Benefit" if it is included in your policy and when it is applicable).

Adjusted Monthly Benefit for Total Disability is the Monthly Benefit for Total Disability multiplied by the Benefit Factor for a Review Period. But, an Adjusted Monthly Benefit for Total Disability can not:

1. exceed the Monthly Benefit for Total Disability increased at 7% compounded annually from the first to the latest Index Month;
2. exceed two times the Monthly Benefit for Total Disability; or
3. be reduced below the amount of the Monthly Benefit for Total Disability.

### BENEFITS

If Injuries or Sickness results in a period of disability that lasts at least 12 months, we will compute Cost of Living Adjustments on each Review Date. Monthly benefits which thereafter accrue during that period of disability will be adjusted as follows:

1. On each Review Date, we will compute the Benefit Factor and the Adjusted Monthly Benefit for Total Disability for the Review Period that follows.

2. For any Monthly Benefit for Total Disability that accrues during a Review Period, we will pay instead the Adjusted Monthly Benefit for Total Disability.

3. We will adjust any Residual Disability Monthly Benefit which accrues during a Review Period. To do this, we will use the Adjusted Monthly Benefit for Total Disability in the formula to determine each Residual Disability Monthly Benefit that is to be paid during that Review Period. It will be used in the formula instead of the Monthly Benefit for Total Disability.

4.  Computations of Cost of Living Adjustments will end on the earliest of:

    a.  the end of the period of disability (see Page 4);
    b.  the end of a benefit period; or
    c.  your 65th birthday.

If the computations end because of (a) or (b) above, benefit amounts will revert to those shown on Page 3.  Benefits payable for the first 12 months of a new period of disability will not include a Cost of Living Adjustment.  A new first Index Month and Review Date will apply to each new period of disability that lasts more than 12 months.

If the computations end because of (c) above and if any benefits continue to be payable after that date for a period of disability that started before your 64th birthday, we will apply to those benefits the Benefit Factor that last applied before your 65th birthday.

We will compute a Benefit Factor on the first Review Date for a period of disability that starts between your 64th and 65th birthdays.  This factor will continue to apply to any benefits paid during that period of disability.

### QUALIFIED RIGHT TO INCREASE MONTHLY BENEFIT TO ADJUSTED AMOUNT

When you return to active and gainful full-time work after the end of a period of disability during which Cost of Living Adjustments were made, you may elect to increase the amount of the Monthly Benefit for Total Disability shown on Page 3.  You may increase it to the amount of the Adjusted Monthly Benefit for Total Disability (less any SIS Benefit if included) which was used to determine the last monthly claim payment, if:

1.  you have not reached your 60th birthday on the date you elect the increase; and
2.  within 90 days after the period of disability ends, you make application to us on a form which we will furnish you upon request.  On this form, you must confirm that you are actively and gainfully employed full time.  Other evidence of insurability will not be required.

The effective date of the increase will be the first of the month after we approve your application for the increase.  The required additional premium must be paid within 31 days of that date.  Later premiums for the increase must be paid as part of the renewal premiums for the policy.

The premium for the increase will be based on your attained age at the time of the increase.  It will also be based on our table of premium rates then in effect.

The increase in benefit will apply to new periods of disability which start after the effective date of the increase.

If you do not elect and obtain this increase, the Monthly Benefit for Total Disability will revert to the amount shown on Page 3 for new periods of disability.

NOTE:  All portions of this COLA benefit expire on your 65th birthday, and no further premiums for it will be due, even though the policy may be renewed after that date; except that if any disability benefits continue to be payable after your 65th birthday for a period of disability that started before your 64th birthday we will apply to those benefits the Benefit Factor that last applied before your 65th birthday.

PREMIUMS AND RENEWALS

**POLICY TERM**
The first term of this policy starts on the Effective Date shown on Page 3.  It ends
on the First Renewal Date also shown.  Later terms will be the periods for which you
pay renewal premiums when due.  All terms will begin and end at 12:01 A.M., Standard
Time, at your home.  The renewal premium for each term will be due on the day the
preceding term ends, subject to the grace period.

**GRACE PERIOD**
This policy has a 31 day grace period.  This means that if a renewal premium is not
paid on or before the date it is due, it may be paid during the next 31 days.  During
the grace period, the policy will stay in force.

**CONDITIONAL RIGHT TO RENEW AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS LATER;
PREMIUMS ARE NOT GUARANTEED**
(Continued from Page 1)
You can renew this policy as long as you are actively and gainfully working full time.
From time to time, we can require proof that you are actively and gainfully working
full time.  If you stop working, (except by reason of Total Disability), this policy
will terminate; except that coverage will continue to the end of any period for which
premium has been accepted.

Premiums must be paid on time.  They will be based on our table of rates by attained
age in effect at time of renewals for persons in your same rate class who are insured
under policies of this form.  Other than your attained age, the factors used to de-
termine your rate class will be the same as those that applied to you on the Effective
Date of this policy.

The benefit provisions which will be included in the continued policy are described
on Page 7.

**REINSTATEMENT**
If a renewal premium is not paid before the grace period ends, the policy will lapse.
Later acceptance of the premium by us or by our agent authorized to accept payment
without requiring an application for reinstatement will reinstate this policy.

If we or our agent require an application, you will be given a conditional receipt
for the premium tendered.  If the application is approved, the policy will be rein-
stated as of the approval date.  Lacking such approval, the policy will be reinstated
on the 45th day after the date of the conditional receipt unless we have previously
written you of our disapproval.

The reinstated policy will cover only loss that results from Injuries which occur
after the date of reinstatement or Sickness which is first manifested more than 10
days after such date.  In all other respects, your rights and ours will remain the
same, subject to any provisions noted on or attached to the reinstated policy.

## SUSPENSION DURING MILITARY SERVICE

If you enter full-time active duty in the military (land, sea or air) service of any nation or international authority, you may suspend your policy. But, you may not suspend the policy during active duty for training lasting 3 months or less. The policy will not be in force while it is suspended, and you will not be required to pay premiums. Upon receipt of your written request to suspend the policy, we will refund the pro-rata portion of any premium paid for a period beyond the date we receive your request.

If your full-time active duty in military service ends before your 65th birthday, you may place this policy back in force without evidence of insurability. Your coverage will start again when:

1. we have received your written request to place the policy back in force; and
2. you have paid the required pro-rata premium for coverage until the next premium due date.

However, your request and premium payment must be received by us within 90 days after the date your active duty in the military service ends. Premiums will be at the same rate that they would have been had your policy remained in force. The policy will not cover any loss due to Injuries which occur or Sickness which is first manifested while the policy is suspended. In all other respects you and we will have the same rights under the policy as before it was suspended.

## PREMIUM ADJUSTMENT AT DEATH

Any premium paid for a period beyond the date of your death will be refunded to your estate.


## CLAIMS

### NOTICE OF CLAIM

Written notice of claim must be given within 20 days after a covered loss starts or as soon as reasonably possible. The notice can be given to us at our home office, Chattanooga, Tennessee, or to our agent. Notice should include your name and the policy number.

### CLAIM FORMS

When we receive your notice of claim, we will send you claim forms for filing proof of loss. If these forms are not given to you within 15 days, you will meet the proof of loss requirements by giving us a written statement of the nature and extent of your loss. You must give us this proof within the time set forth in the Proof of Loss section.

### PROOF OF LOSS

If the policy provides for periodic payment for a continuing loss, you must give us written proof of loss within 90 days after the end of each period for which we are liable. For any other loss, written proof must be given within 90 days after such loss.

If it was not reasonably possible for you to give written proof in the time required, we will not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be furnished no later than one year after the 90 days unless you are legally unable to do so.

## TIME OF PAYMENT OF CLAIMS
After we receive written proof of loss, we will pay monthly all benefits then due you for disability.  Benefits for any other loss covered by this policy will be paid as soon as we receive proper written proof.

## PAYMENT OF CLAIMS
Benefits will be paid to you.  Any benefits unpaid at death will be paid to your estate.

If benefits are payable to your estate, we can pay benefits up to $3000 to someone related to you by blood or marriage whom we consider to be entitled to the benefits. We will be discharged to the extent of any such payment made in good faith.

## PHYSICAL EXAMINATIONS
We, at our expense, have the right to have you examined as often as is reasonable while a claim is pending.

## MISSTATEMENT OF AGE
If your age has been misstated, the benefits will be those the premium paid would have bought at the correct age.

## LEGAL ACTIONS
You may not start a legal action to recover on this policy within 60 days after you give us required proof of loss.  You may not start such action after the expiration of the applicable statue of limitations from the time proof of loss is required.


## GENERAL PROVISIONS

## ENTIRE CONTRACT
This policy with the application and attached papers is the entire contract between you and us.  No change in this policy will be effective until approved by one of our officers.  This approval must be noted on or attached to this policy.  No agent may change this policy or waive any of its provisions.

## TIME LIMIT ON CERTAIN DEFENSES

1.  After two years from the Effective Date of this policy no misstatements, except fraudulent misstatements, made by you in the application for this policy will be used to void the policy or to deny a claim for loss incurred or disability that starts after the end of such two year period.

2.  No claim for loss incurred or disability that starts after two years from the Effective Date of this policy will be reduced or denied on the ground that a sickness or physical condition not excluded by name or specific description had existed before the Effective Date of this policy.

## CONFORMITY WITH STATE STATUTES
Any provision of this policy which, on its effective date, is in conflict with the laws of the state in which you reside on that date is changed to conform to the minimum requirements of those laws.

## ASSIGNMENT
No assignment of interest in this policy will be binding on us until a copy is on file with us.  It must be approved by one of our officers.  We are not responsible for the validity of any assignment.

## SALARY ALLOTMENT PREMIUM PAYMENT

In consideration of the Salary Allotment Agreement between your employer and us, we agree to accept Policy Premiums as billed to your employer.

The conditions of this rider are:

1. The policy will not continue in force beyond the time for which the premium is paid, subject to the grace period.

2. If your employer fails to pay premiums when due because of clerical error or negligence, your insurance under the policy will not be prejudiced.

3. This rider will be void if:

   a. your employment with your employer ends;

   b. the Salary Allotment Agreement is terminated; or

   c. for any reason, your employer fails to pay premiums.

4. If this rider is voided, premiums will be due and payable as required in the policy.

IN CON... ...IATION O... ...ND FORMING PART OF APPLICA... ...T FOR INSURANCE TO

PROVIDEN... ...FE AND ACCIDENT INSURANCE COMPANY, Chattanooga, Tennessee 37402.

| Full Name of Person Examined (Last) | | (First) | (Middle) | Date of Birth | Occupation |
|---|---|---|---|---|---|
| TAYLOR, | | MELVYN | D. | 05-18-37 | DDS |

1. a. Name and address of your personal physician (If none, ☐ Check) .... (NONE)

   b. Date and reason last consulted? _____

   c. What treatment was given or medication prescribed? _____

| 2. Have you ever been treated for or ever had any known indication of: | Yes | No |
|---|---|---|
| a. Disorder of eyes, ears, nose, or throat? ..................... | ☒ | ☐ |
| b. Dizziness, fainting, convulsions, headache; speech defect, paralysis or stroke; mental or nervous disorder? ..................... | ☐ | ☒ |
| c. Shortness of breath, persistent hoarseness or cough, blood spitting; bronchitis, pleurisy, asthma, emphysema, tuberculosis or chronic respiratory disorder? | ☐ | ☒ |
| d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels? ........... | ☐ | ☒ |
| e. Jaundice, intestinal bleeding, ulcer, hernia, appendicitis, colitis, diverticulitis, hemorrhoids; recurrent indigestion, or other disorder of the stomach, intestines, liver or gallbladder? ..................... | ☐ | ☒ |
| f. Sugar, albumin, blood or pus in urine; sexually transmitted disease; stone or other disorder of kidney, bladder, prostate or reproductive organs? ......... | ☐ | ☒ |
| g. Diabetes; thyroid or other endocrine disorders? ..................... | ☒ | ☒ |
| h. Neuritis, sciatica, rheumatism, arthritis, gout, or disorder of the muscles or bones, including the spine, back, or joints? ..................... | ☐ | ☒ |
| i. Deformity, lameness or amputation? ..................... | ☐ | ☒ |
| j. Disorder of skin, lymph glands, cyst, tumor, or cancer? ........... | ☐ | ☒ |
| k. Allergies; anemia, hemophilia or leukemia? ..................... | ☐ | ☒ |
| 3. Are you now under observation or taking treatment? ..................... | ☒ | ☐ |
| 4. Have you had any change in weight in the past year? ..................... | ☐ | ☒ |
| 5. Other than above, have you within the past 5 years: | | |
| a. Had any mental or physical disorder not listed above? ........... | ☐ | ☒ |
| b. Had a checkup, consultation, illness, injury, surgery? ........... | ☒ | ☐ |
| c. Been a patient in a hospital, clinic, sanatorium, or other medical facility? .. | ☐ | ☒ |
| d. Had electrocardiogram, X-ray, other diagnostic test? ........... | ☒ | ☐ |
| e. Been advised to have any diagnostic test, hospitalization, or surgery which was not completed? ..................... | ☐ | ☒ |
| 6. Have you ever used barbiturates, narcotics, excitants or hallucinogens or ever sought treatment or been arrested for their use? ..................... | ☐ | ☒ |
| 7. Have you ever sought help or treatment for alcohol use? ........... | ☐ | ☒ |
| 8. a. Have you ever had any disorder of menstruation, pregnancy or of the reproductive organs or breasts? ..................... | ☐ | ☐ |
| b. To the best of your knowledge and belief, are you now pregnant? ....... | ☐ | ☐ |
| 9. Have you ever had military service deferment, rejection or discharge because of a physical or mental condition? ..................... | ☐ | ☒ |
| 10. Have you ever requested or received a pension, benefits, or payment because of an injury, sickness or disability? ..................... | ☐ | ☒ |
| 11. Family History: (Father, Mother, Brothers, Sisters) Tuberculosis, diabetes, cancer, high blood pressure, heart or kidney disease, mental illness or suicide? . | ☐ | ☒ |

DETAILS of "Yes" answers. (IDENTI... QUESTION NUMBER, CIRCLE APPLIC... BLE ITEMS: Include diagnoses, dates, du... tion and names and addresses of all attend... physicians and medical facilities.)

#2A) TONSILECTOMY Age 5

#2A) CORRECTIVE lenses

# 2g.) 1978. THYROIDECTOMY
# 3) (SUB-TOTAL)
MEMORIAL HOSPIT...
HOLLYWOOD, FL
DR NORMAL TACPI...
2699 STILLING LD
SYNTHROID (.02) FT Lau...
1 TABLET DAILY.

#5B) COLONOSCOPY, BU...
#5D) 1989-DEC, phy...
(RECTAL ITCHING (?...
PROMPTED CONSULTAT...
DR. JACK LEISER, M.D.
201... ...E 48TH CT
FT LAUDERDALE, FL
DR TOM LESCHER, M.D
1960 NE 47th STREET
FT LAUDERDALE, FL

(For additional comments, use back side...)

| a. | Age if Living? | Age at Death? | Cause of Death? | b. | Number Living? | Dead? | Age if Living? | Age at Death? | Cause of Death? |
|---|---|---|---|---|---|---|---|---|---|
| Father | 84 | | | Brothers | 1 | 0 | 49 | | |
| Mother | 72 | | | Sisters | 0 | 0 | | | |

The foregoing statements are full, complete, and true to the best of my knowledge and belief. Dated at FT LAUDERDALE, ...

————PARAMEDICAL ORGANIZATION———— this 06 day of FEBRUARY 19 9...

(Please stamp or type below):
ASB/Bro...
2001 Stirling Road, ...
...

Signature of person examined

Witness ... ...Muggli, paramed...

I hereby apply to Provident Life and Accident Insurance Company for insurance based on the following representations

**1. (a)** Full name? (Print) *MELVYN D. TAYLOR*      **(b)** Sex? M ☒ F ☐

**(c)** Height? ft. *5* in. *8*  **(d)** Weight? lbs. *155*  **(e)** Date of Birth? *05-18-37*  **(f)** Birthplace? *PA*

**2. (a)** Occupation: *ENDODONTIST*
**(c)** Employer *ROSENBAUM & TAYLOR, DDS, PA*  **(b)** Exact duties: *DUTIES USUAL TO OCC*
**(d)** Are you actively at work fulltime in the above occupation? Yes ☒ No ☐  **(e)** Length of Employment: *18 YR*

**3. (a)** Annual Earned Income From Your Occupation for Federal Tax Purposes (After Business Expenses, if any):

|  | Current Annual Rate of Earned Income | Actual Prior Calendar Year | Actual Year Prior to Last Calendar Year |
|---|---|---|---|
| Salary | $ *200,000* | $ *150,000* | $ *150,000* |
| Other (Describe) | $ | $ | $ |

**(b)** Unearned Income Prior 2 Years (Interest, Dividends, etc.) . . . . . . . . . . . . $ *-0-*    $ *-0-*

**4. (a)** Do you have or are you applying for other: (1) Individual, (2) Association, (3) Group, or (4) Employer Sick Pay disability income coverage; or (5) Overhead Expense disability coverage? Yes ☒ No☐  (If "Yes" give details below)

| Company or Source | Type (1, 2, 3, 4 or 5) | Monthly Disability Amount | Benefit Period Accident | Benefit Period Sickness |
|---|---|---|---|---|
| *PLA* | *1* | *1000* | *L* | |
| *UNUM* | *1* | *1500* | *L* | *L* |
| *PLA* | *5* | *3000* | *12 mos* | *12 mos* |
| *PLA* | | *3625* | | |

**(b)** Do you have Social Security substitute coverage? Yes ☐ No ☒ Amount $_____ Company_____
**(c)** Is any coverage to be replaced by the coverage applied for? Yes ☐ No ☒ If "Yes", complete Form 1336-Q4.
**(d)** Does your net worth exceed $4,000,000? Yes ☐ No ☒ If "Yes" complete Form 1336-NW.
**(e)** Have you smoked cigarettes within the last 12 months? Yes ☐ No ☒

**5.** Have you ever been treated for or ever had any known indication of:

|  | Yes | No |
|---|---|---|
| (a) High blood pressure, diabetes, cancer, arthritis, asthma, emphysema, or emotional, nervous or mental disorder, or disease or disorder of the eyes, ears or speech? . . . . . . . . . . . . . . . . | ☐ | ☑ |
| (b) Disease or disorder of the neck, back, spine, heart, lungs, breasts, or the circulatory, digestive, urinary or reproductive systems? . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☐ | ☑ |
| **6.** Have you ever been diagnosed by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS) or Aids Related Complex (ARC)? . . . . . . . . . . . . . . . | ☐ | ☑ |
| **7.** Have you ever used barbiturates, narcotics, excitants or hallucinogens, or ever sought help or treatment for their use or alcohol use? . . . . . . . . . . . . . . . . . . . . . . . | ☐ | ☑ |
| **8.** Other than above, have you, within the past 5 years, had medical or surgical advice or treatment, had a physical examination, or been under observation for any disease or disorder? . . . . . . . . . | ☑ | ☐ |
| **9.** Have you ever made application for Disability, Health or Life Insurance which has been declined, modified or rated? (If "Yes", give names of organization, kinds of insurance, dates and reasons.). . . . . . | ☐ | ☑ |
| **10.** Do you have a physical impairment or deformity, or take any type of prescribed medication? . . . . . . | ☑ | ☑ |

(Give details of "Yes" answers to Q5-10. Include diagnoses, dates, physicians and addresses)

*5) COLONOSCOPY, 12/89, DR. JACK LEISER, MD, FT. LAUDERDALE, FL*
*BLOOD PROFILE, ALL NEGATIVE*

*10) SYNTHROID, DAILY DUE TO THYROIDECTOMY 1978*

**11. (a)** Will your employer pay for all disability coverage to be carried by you with no portion of the premium to be included in your taxable income? Yes ☒ No ☐  **(b)** How much premium is paid with this application? *-0-*

To the best of my knowledge and belief, all of the foregoing statements and all of those in Part II, if any, of this Application are true, complete, and correctly stated. They are offered to Provident Life and Accident Insurance Company as the basis for any insurance issued on this Application. I have received a disclosure concerning: (1) the Medical Information Bureau; and (2) an investigative consumer report which may be made for use with this Application.

I authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organizations, institution or person that has any records or knowledge of me or my health, to give to Provident Life and Accident Insurance Company and/or its reinsurers any such information.

I authorize all said sources, except the Medical Information Bureau, to give such records or knowledge to Equifax, Inc. This agency is employed by Provident Life and Accident Insurance Company to collect and send such information.

A copy of this authorization shall be as valid as the original.

Signed at *Ft. Lauderdale FL*
  City       State
this *6* day of *February*  19 *90*
Field Office: _____

Signature of
Proposed Insured X *Melvyn A Taylor*
I certify that I have truly and accurately recorded on this application the information supplied by the Proposed Insured.

*James L. Unruhe*
(Licensed Agent's or Broker's Signature)

## AMENDMENT DELETING SECOND PARAGRAPH OF TIME LIMIT ON CERTAIN DEFENSES PROVISION

**Insured - MELVYN D TAYLOR**                                          **Policy Number - 5031731**

This amendment is a part of the above policy. The effective date of this amendment is retroactive to the effective date of the above policy.

It is understood and agreed that in accordance with the provision in your policy entitled either "Conformity with State Laws" or "Conformity with State Statutes" that the "Time Limit on Certain Defenses" provision of your policy is changed as follows:

The second paragraph of the "Time Limit on Certain Defenses" provision is deleted.

Except as changed herein, the policy remains subject to all of its definitions, exclusions and other provisions.

Provident Life and Accident Insurance Company

Robert E. Nash
Vice President, Individual Underwriting
Risk Management

**AMD-TLCD**

# PROVIDENT
# LIFE AND ACCIDENT
### INSURANCE COMPANY

1 FOUNTAIN SQUARE
CHATTANOOGA TN 37402

January 9, 1995

MELVYN D TAYLOR
9621 CONCH SHELL MANOR
PLANTATION, FL 33324

Dear Florida Insured:

Your policy is being amended by revising the Time Limit on Certain Defenses provision found in the General Provisions section of your policy.  The amendment on the reverse side of this letter should be placed with your policy.  The amendment becomes a part of your policy.

Although the Time Limit on Certain Defenses provision in the policy issued to you was originally approved by the Florida Insurance Department, the Department later found that it does not identically match the provision in Florida insurance law.

The Insurance Department is requiring the amendment of your policy under the Conformity with State Statute provision, also found in the General Provisions section, which states that "any provision of this policy which, on its effective date, is in conflict with the laws of the state in which the Insured then resides is changed to conform to the minimum requirements of those laws."

Sincerely,

Harriette M. Stokes
Assistant Vice President, Disability Compliance

CACE

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY,
FLORIDA.

CASE NO.:        00   00445

**12**

MELVYN D. TAYLOR,

        Plaintiff,

v.

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY and UNUM
LIFE INSURANCE COMPANY OF
AMERICA,

        Defendants.
_____/

A TRUE COPY
ROBERT E. LOCKWOOD

JAN 1 0 2000

## INTERROGATORIES TO DEFENDANT

        COMES NOW the Plaintiff, MELVYN D. TAYLOR, by and through the

undersigned attorneys, and propounds the attached Interrogatories unto the Defendant,

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY**, requesting and requiring

that the said Defendant shall answer the same under oath, and in writing, within thirty (30)

days from the date hereof, in accordance with the applicable Rule of Civil Procedure.

        I HEREBY CERTIFY that a true and correct copy of the foregoing was served

along with the Summons and Complaint upon the Defendant, **PROVIDENT LIFE AND**

**ACCIDENT INSURANCE COMPANY**.

KRUPNICK, CAMPBELL, MALONE, ROSELLI,
 BUSER, SLAMA, HANCOCK, McNELIS
 LIBERMAN & McKEE, P.A.
Attorney for Plaintiff
700 Southeast Third Avenue
Courthouse Law Plaza, Suite 100
Fort Lauderdale, Florida 33316
(954) 763-8181

BY: _____
    WALTER G. CAMPBELL, JR., ESQUIRE
    Florida Bar No.: 161009

1/10

## INTERROGATORIES TO DEFENDANT
## PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY

1.       Please state the name and capacity of the person answering these interrogatories.

2.       Please set forth the names, present and/or last known addresses and telephone numbers, of all individuals who worked on the policy and/or claim of the plaintiff or who have knowledge concerning any of the issues raised by the pleadings.

3.    Please state whether you entered into a contract for insurance with the plaintiff. If so, please state:

a) the date on which you entered into a contract for insurance;

b) the name and address of all persons, employees, agents who handled, serviced, had knowledge or were responsible for the plaintiff's account; and,

c) the name and address of all persons, employees, agents who are in custody of any contracts, notes, memoranda, or writings concerning the plaintiff's account.

4.    Please state whether or not your company received a claim by the plaintiff concerning the issue(s) alleged in the complaint.

5. If so, please state:

a) the date the claim was made and claim number;

b) the name and address of all persons, employees and/or agents who handled, serviced or had knowledge of the claim;

c) the name and address of all persons, employees and/or agents who are in custody of any memos, notes and writings concerning the claim filed by the plaintiff.

6. Is it your contention that the insurance contract between the plaintiff and defendant insurer was not in effect at the time of the issue(s)/incident(s) alleged in the complaint?

7.      If your answer to the preceding interrogatory is in the affirmative, please state the facts supporting that contention.

8.      Is it your contention that the insurance contract between the plaintiff and defendant insurer did not or would not cover the claim submitted by the plaintiff?

9.       If your answer to the preceding interrogatory is in the affirmative, please state the facts upon which you base your contention that the claim was properly rejected or not covered by or under the contract for insurance.

10.      Is it your contention that the plaintiff failed to comply with all conditions and/or failed to perform all acts necessary to collect the benefits due plaintiff pursuant to the contract of insurance between the parties?

11.     If your answer to the preceding interrogatory is in the affirmative, please state with specificity the conditions precedent or necessary acts which you allege the plaintiff failed to comply with.

12.     Please state whether or not any person, employee and/or agent notified the plaintiff and/or any insured under the contract of insurance that said policy and/or claim was not covered by or under said policy.

13.      If your answer to the preceding interrogatory is in the affirmative, please state:

         a)  the date notice was given to the insured(s);

         b)  the names and addresses of all persons, employees and/or agents who
         handled, serviced or had knowledge of the notice; and,

         c)  the names and addresses of all persons, employees and/or agents who are
         in custody of any memos, notes and writings concerning the notice given.

14.      Please describe fully and completely the circumstances surrounding the
         alleged contract of insurance and/or claim of the plaintiff and/or insured(s),
         stating in your answer all of the events relating thereto and in sequential order.

t the name, residence address, business address and telephone number of
ch person believed or known by you, your agents or attorneys to have heard
who was purported to have heard the plaintiff make any statement, remark,
 comment concerning the issues described in the complaint and the
bstance of each statement, remark or comment.

o this action
 the plaintiff
 name(s) of
support your
esses of all
ntention that
images, and
ual basis for

ease state whether or not you or any agent, representative or employee of
e defendant ever made or gave any statement, remark or comment, whether
al or in writing, to anyone regarding the issues described in the complaint,
d if so, set forth the names and address of the person giving such statement,
mark or comment, the date said statement, remark or comment was given,
d the name and present or last known address of the person to whom the
atement, remark or comment was given.

_____

_____

STATE OF                )

                            ) SS

COUNTY OF        )

The foregoing instrument was acknowledged before me this \_\_\_\_ day of _____, 2000, by _____, who is personally known to me or who has produced _____ as identification and who did/did not take an oath.

S
E
A
L

_____

Signature of person taking acknowledgment

_____

Name of officer taking acknowledgment

_____

Title or rank

_____

Serial number

10

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY,
FLORIDA.

CASE NO.:    00  00445



MELVYN D. TAYLOR,

        Plaintiff,

v.

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY and UNUM
LIFE INSURANCE COMPANY OF
AMERICA,

        Defendants.

A TRUE COPY
ROBERT E. LOCKWOOD

JAN 1 0 2000

_____/

### REQUEST TO PRODUCE

**TO:**    **DEFENDANT, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY
To Be Served Along With The Summons And Complaint**

Pursuant to Rule 1.350 of the Florida Rules of Civil Procedure, you are hereby

requested to produce to the Plaintiff, within forty-five (45) days from the date of service, at

the Law Offices of KRUPNICK, CAMPBELL, MALONE, ROSELLI, BUSER, SLAMA &

HANCOCK, P.A., 700 Southeast Third Avenue, Suite 100, Fort Lauderdale, Florida,

33316, the following:

      1.     Copies of any and all memos, notes and writings concerning the contract

of insurance and/or claim involved in this case.

      2.     Copies of any and all claims submitted and/or filed by the Plaintiff and/or

insured under the involved contract of insurance.

1/10

3.      Copies of any and all notifications or other writings sent to Plaintiff and/or insured regarding the involved contract of insurance.

4.      Copies of any and all statements, bills or premium slips sent to the Plaintiff and/or insured regarding the involved contract for insurance and/or claim.

5.      Copies of any written statements, comments or remarks made by the Plaintiff and/or insured regarding the involved contract for insurance and/or claim.

6.      Copies of any written statements, comments or remarks made by the defendant, its agents, employees and representatives regarding the involved contract for insurance and/or claim.

7.      Copies of the application(s) for insurance filed, submitted and/or taken from the Plaintiff and/or insured regarding the involved contract for insurance.

8.      Copies of any and all medical records and/or notes regarding the claim(s) filed or submitted by the Plaintiff and/or insured.

9.      A copy of the original contract of insurance involved in the complaint, along with any subsequent additions, amendments and/or deletions of or on same.

I HEREBY CERTIFY that a true and correct copy of the foregoing Request to Produce was served along with the Summons and Complaint upon the Defendant, **PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY**.

KRUPNICK, CAMPBELL, MALONE, ROSELLI,
BUSER, SLAMA, HANCOCK, McNELIS
LIBERMAN & McKEE, P.A.
Attorney for Plaintiff
700 Southeast Third Avenue
Courthouse Law Plaza, Suite 100
Fort Lauderdale, Florida 33316
(954) 763-8181

BY: _____
    WALTER G. CAMPBELL, JR., ESQUIRE
    Florida Bar No.: 161009

2

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

MELVYN D. TAYLOR,                    CASE NO. 00-00445 CACE 12

       Plaintiff,

vs.

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY, and UNUM
LIFE INSURANCE COMPANY OF
AMERICA,

       Defendants.

_____/

## PROVIDENT'S MOTION FOR ENLARGEMENT OF TIME

Defendant, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY ("Provident"),
by and through undersigned counsel, moves, pursuant to Rule 1.090(b), Florida Rules of Civil
Procedure, for an enlargement of time in which to respond to the Complaint filed by plaintiff
MELVYN D. TAYLOR ("Taylor"). The grounds for this motion are:

1.      Provident was served with process by mail through the Insurance Commissioner of
the State of Florida on or about January 14, 2000.

2.      Provident's response to the Complaint is due on or about February 3, 2000.

3.      Undersigned counsel has only recently been retained to represent Provident in this
matter. Due to the press of other litigation, together with the need to obtain and review files and
consult with Provident, undersigned counsel will not have sufficient time to adequately prepare a
response to the Complaint within the time set forth in the rules.

4.    Accordingly, defendant Provident seeks an enlargement of twenty (20) days to respond, by motion or otherwise, to the Complaint.

5.    This motion is not made for the purpose of delay and plaintiff will not be prejudiced by this brief enlargement of time.

WHEREFORE, Defendant, Provident Life and Accident Insurance Company respectfully requests that this Court grant it an enlargement of time of an additional twenty days, up to and including February 23, 2000, in which to serve a response to plaintiff's Complaint, and for such other and further relief as this Court deems proper.

Respectfully submitted,

**SHUTTS & BOWEN LLP**
Attorneys for Defendant Provident
201 South Biscayne Boulevard
1500 Miami Center
Miami, Florida 33131
Telephone:(305) 358-6300
Telecopier: (305) 381-9982

By: _____
John B. Meagher
Florida Bar No. 511099
Jeffrey M. Landau
Florida Bar No. 863777

-2-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 2ⁿᵈ

day of February, 2000 to Walter Campbell, Esq., Krupnick, Campbell, et al., 700 S.E. 3rd Avenue,

Suite 100, Ft. Lauderdale, FL 33316.

Of Counsel

MIADOCS 315331.1 TDW

# CIVIL COVER SHEET

00-06208

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| MELVYN D. TAYLOR | PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY and UNUM LIFE INSURANCE COMPANY OF AMERICA |

MAGISTRATE JUDGE

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   BROWARD
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

A. Brown  00-CV-06208

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Walter G. Campbell, Esq./Krupnick, Campbell, et al.
700 S.E. 3rd Ave., Suite 100
Ft. Lauderdale, FL 33316    (954) 763-8181

ATTORNEYS (IF KNOWN)
John E. Meagher, Esq.Jeffrey M. Landau, Esq.,Shutts & Bowen LLP
201 South Biscayne Blvd., #1500
Miami, FL 33131    (305) 358-6300

(d) CIRCLE COUNTY WHERE ACTION AROSE:
DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (Place an x in one box only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)
(Place an X in one box FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of this State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Prinicipal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE

DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY

IVa.  4  days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| A CONTRACT | A TORTS | A FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Products Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 157 | B ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | A PROPERTY RIGHTS | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Products Liability | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| B ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | ☐ 840 Trademarks | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholder's Suits | ☐ 355 Motor Vehicle Products Liability | A LABOR | B SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contracts | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | PERSONAL INJURY | B ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | ☐ 362 Personal Injury - Med Malpractice | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| A REAL PROPERTY | ☐ 365 Personal Injury - Product Liability | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | PERSONAL PROPERTY | ☒ 791 Empl. Ret. Inc. Security Act | A FEDERAL TAX SUITS | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 370 Other Fraud | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | ☐ 371 Truth in Lending | | | * A or B |
| ☐ 245 Tort Product Liability | ☐ 380 Other Personal Property Damage | | ☐ 871 IRS - Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 385 Property Damage Product Liability | | | |

| A CIVIL RIGHTS | A PRISONER PETITIONS |
|---|---|
| ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus |
| ☐ 442 Employment | * ☐ 530 General |
| ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty |
| ☐ 444 Welfare | * ☐ 540 Mandamus & Other |
| ☐ 440 Other Civil Rights | ☐ 550 Civil Rights |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4. Refiled
☐ 5 Transferred from Another District Specify:
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23
DEMAND $ _____
Check YES only if demanded on Complaint
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See: instructions):

JUDGE _____    DOCKET NUMBER _____

DATE  2/11/2000
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
Receipt No. 816886    Amount: 150.00
Date Paid: 02/11/00    M/ifp:

UNITED STATES DISTRIICT COURT
S/F I-2
REV. 6/90    MIADOCS 104074_1