# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO.  00-06208-CIV-DAVIS

MELVYN D. TAYLOR

        Plaintiff,

vs.

PROVIDENT LIFE AND ACCIDENT
INSURANCE CO., and UNUM LIFE
INSURANCE COMPANY OF
AMERICA

        Defendants.

_____/



## DEFENDANTS' MEMORANDUM
## IN OPPOSITION TO MOTION FOR REMAND

Defendants, Provident Life and Accident Insurance Co. ("Provident"), and UNUM Life Insurance Company of America ("UNUM") (collectively, "Defendants"), hereby jointly file their memorandum in opposition to the Motion for Remand filed by Plaintiff Melvyn Taylor ("Taylor"). As explained herein, the Motion should be denied, and jurisdiction retained in this Court.

Taylor initiated suit against Provident and UNUM in the Circuit Court of the Seventeenth Judicial Circuit of the State of Florida, in and for Broward County. Defendants timely removed the action to this Court on the ground that the Provident and UNUM insurance policies at issue in this case are regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1001, et seq. Accordingly, because the Complaint involves an ERISA claim, removal is proper under 28 U.S.C. § 1441, even though ERISA does not appear on the face of the Complaint. See Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

Taylor has now moved for remand. At the outset, Taylor does not contest that if the policies at issue in this case are governed by ERISA, then jurisdiction properly rests in this Court. Instead, he argues that these policies are not governed by ERISA.[1] Instead, relying on his carefully worded affidavit and Slamen v. Paul Revere Life Insurance Company, 166 F.3d 1102 (11th Cir. 1999), Taylor argues that these policies are not governed by ERISA. To be clear, other than the issues raised by Slamen, Taylor does not dispute, and therefore effectively concedes that all other elements of an ERISA plan are present. See Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1214 (11th Cir. 1999) (citing Donovan v. Dillingham, 688 F.2d 1367, 1371 (11th Cir. 1982)).

In Slamen, the United States Court of Appeals for the Eleventh Circuit held that when an insurance plan provides certain benefits to only one employee of a professional practice, and that employee also is the sole owner of the practice, those particular benefits are not governed by ERISA. If, however, other employees are covered, then the policy and the plan will be governed by ERISA.[2] As explained and demonstrated herein, each of Taylor's disability policies remains covered by ERISA because he was not the only employee of Rosenbaum & Taylor, DDS, P.A. covered by disability insurance as provided for by the plan.

_____

[1]    To be clear, although Provident and UNUM maintain that all of the policies are governed by ERISA, the entire action would be properly removable to this Court even if only one of the policies was governed by ERISA. In such an instance, the remaining policies would be subject to state common law causes of action for breach of contract, and jurisdiction would be proper here pursuant to this Court's supplemental jurisdiction, 28 U.S.C. §1367.

[2]    Slamen only addressed the issue of whether a disability policy issued only to Dr. Slamen was covered by ERISA. Although the Court did not reach the issue, it is clear that Slamen's life and health insurance coverage would be governed by ERISA because additional employees other than Dr. Slamen also had such coverage. Cf., Engelhardt v. Paul Revere Life Insurance Company, 139 F.3d 1346 (11th Cir. 1998) (shareholder of professional corporation's claims under disability plan governed by ERISA).

SHUTTS & BOWEN LLP / 1500 MIAMI CENTER / 201 SOUTH BISCAYNE BOULEVARD / MIAMI, FLORIDA 33131 / (305) 358-6300

With respect to the four Provident policies at issue here, Taylor asserts in his apparently carefully tailored to Slamen affidavit that he was the sole employee of "my professional association" covered by each policy. Moreover, because the policies at issue are individual policies, rather than a group policy, Taylor's assertion in his affidavit that he was the "sole employee" covered by each policy begs the question as to whether the disability insurance policies are covered by ERISA. Certainly, individual disability policies issued to multiple employees can constitute an ERISA plan. Massachusetts Casualty Insurance Co. v. Reynolds, 113 F.3d 1450 (6th Cir. 1997). In Reynolds, individual disability policies were obtained for several employees of a company. There was a common billing invoice and a discount for the group billing. The court found the policies as issued were covered by ERISA. See also Morris v. Paul Revere Insurance Group, 986 F. Supp. 872 (D. N.J. 1997) (individual policies subject to ERISA when paid for by company). In any event, Taylor's assertions in his affidavit that no one else was covered by disability insurance and that he paid the premiums are contradicted by the policies themselves, and the other documents presented herein.

First, Taylor's applications to three of the Provident policies contain "yes" answers to the question: "Will your employer pay for all disability coverage to be carried by you with no portion of the premium to be included in your taxable income?" The fourth Provident policy contains a "yes" answer by Taylor to the question: "Will your employer pay for all Accident and Sickness disability coverage to be carried by you?"[1] Copies of the four Provident policies containing those applications are attached hereto as Exhibits A, B, C, D. The applications, all of which were signed

_____

[1]    Aside from ERISA, the fact that an employer would pay premiums, rather than the employee, is also important from an underwriting perspective. When an employer pays premiums, disability benefits are taxable. If an employee pays, benefits are not taxable. Thus, all other things being equal, an applicant is entitled to issuance of a policy providing for more benefits when the premiums are paid by the employer, rather than by the employee, to allow for the eventual taxation of those "employer paid" benefits if the insured subsequently becomes disabled.

- 3 -

by Taylor, list his employer as Rosenbaum & Taylor, DDS, P.A. Moreover, a Salary Allotment Agreement was entered into between Provident and Taylor's employer, Rosenbaum & Taylor, P.A., that provided that Provident would bill premiums to Taylor's employer for his policies. That agreement was incorporated into each of the Provident policies. See Exhibit A, at 17; Exhibit B, at 17; Exhibit C, at 17; Exhibit D, at 14. Indeed the Salary Allotment Agreement itself was signed on behalf of Rosenbaum & Taylor, DDS, P.A., by Taylor himself, as Secretary-Treasurer of the employer. See Exhibit E. The agreement specifically states that the "employer," Rosenbaum & Taylor, DDS, P.A., would "pay in full the required premiums for such policies . . . ."[4] At the time that the Salary Allotment Agreement was entered into by Rosenbaum & Taylor, DDS, P.A., in addition to Taylor, there were three other employees covered by Provident disability insurance, Dr. Jerry Rosenbaum, Angelin M. Leistner, and Kathleen H. Underwood. See Exhibit F.

As does Exhibit F, Provident's billing records also confirm that other employees of Rosenbaum & Taylor, DDS, P.A. were provided with disability insurance, contrary to Taylor's affidavit. See Composite Exhibit G (examples of billing records to Rosenbaum & Taylor, DDS, P.A. reflecting coverage for other employees other than Taylor, including for Ms. Leistner and Dr. Rosenbaum). Those records reflect that Rosenbaum & Taylor, DDS, P.A. was billed for Taylor's premiums from the day the policies were issued until Taylor made his claim for disability benefits and was eventually placed on waiver of premium. To be clear, then, billing records, the applications, the Salary Allotment Agreement in the policy, and the existence of coverage for other employees of Rosenbaum & Taylor, DDS, P.A., confirm that other employees of Rosenbaum & Taylor were

---

[4] The other options on that Salary Allotment Agreement not selected by the P.A. were for the P.A. to make salary deductions from the employees for the premiums or to pay a portion of the premiums and make salary deductions for the balance of the premiums. See Exhibit E.

- 4 -

covered by disability insurance and that Taylor's four Provident policies are regulated by ERISA. As this Court has recently recognized in Jaffe v. Provident Life and Accident Insurance Company, Case No. 99-6302-CIV-DAVIS, Order March 21, 2000 (S.D. Fla. March 21, 2000), if other employees other than an "owner-employee" were covered by the disability insurance, then the "owner-employee's" policy also would be governed by ERISA.[5] Here, Taylor simply does not fit into the narrow exception set forth in Slamen, and therefore, his Motion for Remand must be denied.[6]

Taylor's unsubstantiated assertions in his motion and affidavit that he paid the premiums for three of the Provident policies are contradicted by the billing documents and the policy applications. Moreover, even if he had at some point contributed to his premiums (of which there is no evidence), the plan would still not be excluded from ERISA. See Jaffe, Order, March 21, 2000, at 8 n.8. Nor would the reimbursement of the P.A. by Taylor for premiums paid for one of the Provident policies, as Taylor also asserts in his affidavit, remove the policies from regulation by ERISA. This is seen clearly in Morris v. Paul Revere Insurance Group, 986 F. Supp. 872 (D. N.J. 1997). In Morris, the insured had individual disability policies. Although he allegedly intended to pay the premiums himself, because of an accountant's error the premiums were paid by the employer. Indeed, even after the mistake was discovered, three years later, amended personal and business tax returns were filed charging the premiums to the insured. Nonetheless, the Court found the insured's intent not pertinent, and the policies to be governed by ERISA:

---

[5]     A copy of this Court's March 21, 2000 Order in Jaffe is attached hereto as Exhibit "H."

[6]     Because there were other employees also covered by the Provident policies in addition to Taylor, the other cases cited by Taylor (Motion, at 4) are as inapposite as Slamen, and do not control here.

SHUTTS & BOWEN LLP / 1500 MIAMI CENTER / 201 SOUTH BISCAYNE BOULEVARD / MIAMI, FLORIDA 33131 / (305) 358-6300

Morris has added a twist to this analysis by amending his income tax returns to operate as if he had personally paid the premiums in the first place. <u>To permit such a retroactive restructuring of the premium payments to remove the Individual Policies from the scope of ERISA, however, would allow an insured to elect enrollment in an ERISA insurance plan and then, when ERISA threatened to preclude recovery of benefits, retrospectively reverse the nature of the plan to come within the Safe Harbor Provision.</u> Such a rule would permit a party to avoid, or take advantage of, various dispositive ERISA provisions, the applicability or inapplicability of which other parties may have relied upon.

Paul Revere is thus entitled to summary judgment on the issue of ERISA's applicability to the Individual Policies.

986 F. Supp. at 880-881 (citations omitted) (emphasis added). Here, even if Taylor eventually paid some premiums (which is disputed) or reimbursed the P.A., as he claims, that payment cannot be permitted to remove the policy, obtained as part of an ERISA plan, from the scope of ERISA.

As to Taylor's UNUM policy, Taylor amended his application to state that "All rights and benefits under the Policy are reserved to the Insured, except that it is hereby agreed that premiums will be payable by the Insured's Employer, under an employee accident or health plan . . . ." <u>See</u> Exhibit I (UNUM policy with attached amendment signed by Taylor). Given the clear language of that amendment, providing both that the employer will pay and expressly stating that the UNUM policy is part of an employee accident or health plan, it is clear that the UNUM policy also is governed by ERISA. Accordingly, the Motion for Remand should be denied.

## CONCLUSION

For the foregoing reasons, defendants, Provident Life and Accident Insurance Company and UNUM Life Insurance Company of America, respectfully request that the Court deny the Motion for Remand, retain jurisdiction over this matter, and grant Defendants such other and further relief as the Court deems equitable and just.

- 6 -

Respectfully submitted,

**SHUTTS & BOWEN LLP**
Attorneys for Defendants
201 South Biscayne Boulevard
1500 Miami Center
Miami, Florida 33131
(305) 358-6300
Telecopier: (305) 381-9982

By: _____
    John P. Meagher
    Florida Bar No. 511099
    Jeffrey M. Landau
    Florida Bar No. 863777

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed on this 24TH day of March, 2000, to: Walter G. Campbell, Esq., Krupnick, Campbell, Malone et al., 700 S. E. Third Avenue, Courthouse Law Plaza, Suite 100, Fort Lauderdale, FL 33316.

_____
Of Counsel

MIADOCS 328515.1

- 7 -

Countersigned by _____
                          Licensed Resident Agent

**IMPORTANT NOTICE**

Please read the copy of the application attached to this policy. Omissions or mis-
statements in the application could cause an otherwise valid claim to be denied.
Carefully check the application and write to us within 10 days if any information
shown on it is not correct and complete, or if any past medical history has been left
out of the application. This application is a part of the policy; and the policy was
issued on the basis that the answers to all questions and the information shown on
the application are correct and complete.

**D I S A B I L I T Y   I N C O M E   P O L I C Y**

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE TO AGE 65**
**CONDITIONAL RIGHT TO RENEW AFTER AGE 65; PREMIUMS GUARANTEED TO AGE 65**

**MELVYN D TAYLOR, the Insured**
**Policy Number 6-335-836766**

**10 day right to examine your policy** – We want you to fully understand and be entirely
satisfied with your policy. If you are not satisfied for any reason, you may return
the policy to us, or to the agent through whom it was purchased, within 10 days of
its receipt. We will refund any premiums you have paid within 10 days after we receive
your notice of cancellation and the policy. It will be considered never to have been
issued.

335

DUPLICATE

EXHIBIT A

In this policy, the words "you" and "your" mean you, the Insured named in the Policy Schedule on Page 3; "we," "our" and "us" mean Provident Life and Accident Insurance Company.

We will pay benefits for covered loss resulting from Injuries or Sickness subject to the definitions, exclusions and other provisions of this policy.  Loss must begin while the policy is in force.

This policy is a legal contract between you and us.  It is issued in consideration of the payment in advance of the required premium and of your statements and representations in the application.  A copy of your application is attached and made a part of the policy.

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE TO AGE 65 AT GUARANTEED PREMIUMS:**  You can continue this policy to age 65 by paying premiums on time.  The premiums shown on Page 3 are guaranteed to age 65.

**CONDITIONAL RIGHT TO RENEW AFTER AGE 65; PREMIUMS ARE NOT GUARANTEED:**  You can renew this policy as long as you are actively and gainfully working full time; there is no age limit.  You must pay premiums on time at our premium rates then in effect at time of renewals.  (For further conditions, see the page titled "Premiums and Renewals." See Page 7 for the benefit provisions that will be included in the continued policy.)

## GUIDE TO POLICY PROVISIONS

|  | Page |
|---|---|
| Renewal Conditions | 1 |
| Policy Schedule | 3 |
| UPDATE | 3 |
| Definitions (Injuries, Sickness, age, Physician, Total Disability, your occupation, period of disability, Elimination Period) | 4 |
| Exclusion | 5 |
| Pre-Existing Condition Limitation | 5 |
| Benefits | |
|   Total Disability | 5 |
|   Presumptive Total Disability | 5 |
|   Transplant Surgery | 6 |
|   Cosmetic Surgery | 6 |
|   Pregnancy | 6 |
|   Waiver of Premium | 6 |
|   Rehabilitation | 6 |
|   Treatment of Injuries (Payable if disability benefits not paid) | 7 |
|   Benefits When Policy Renewed After Age 65 | 7 |
|   Payment for Part of Month | 7 |
| Additional Benefits | |
|   Residual Disability (includes revised Waiver of Premium provision) | 8 |
|   Cost of Living Adjustment | 12 |
| Premiums and Renewals | |
|   Policy Term | 14 |
|   Grace Period | 14 |
|   Conditional Right To Renew After Age 65 - Premiums Are Not Guaranteed | 14 |
|   Reinstatement | 14 |
|   Suspension During Military Service | 15 |
|   Premium Adjustment At Death | 15 |
| Claims | |
|   Notice of Claim | 15 |
|   Claim Forms | 15 |
|   Proof of Loss | 15 |
|   Time of Payment of Claims | 16 |
|   Payment of Claims | 16 |
|   Physical Examinations | 16 |
|   Misstatement of Age | 16 |
|   Legal Actions | 16 |
| General Provisions | |
|   Entire Contract | 16 |
|   Incontestable | 16 |
|   Conformity With State Statutes | 16 |
|   Assignment | 16 |
| Salary Allotment Premium Payment | 17 |

**READ YOUR POLICY CAREFULLY**

# P O L I C Y   S C H E D U L E

Insured – MELVYN D TAYLOR          Policy Number – 6-335-836766
Effective Date – April 1, 1988     First Renewal Date – April 1, 1989
Issue Date – March 21, 1988        Renewal Term – Twelve Months

Policy Premium payable from April 1, 1988 until the first UPDATE Increase Date (see
Page 3 (cont.)) is at the Annual rate of $1,334.20 on a non smoking premium basis.

Other Premium Paying Methods:
        $680.44 Semi-Annually
         346.89 Quarterly
         113.41 Monthly (Preauthorized Bank Draft Only)

-----------------------MONTHLY BENEFIT FOR TOTAL DISABILITY-----------------------

$1,000.00

--------------------------------ELIMINATION PERIOD--------------------------------

30 days of Total and/or Residual Disability

An Elimination Period starting after age 65
must consist entirely of days of Total Disability

----------------------------MAXIMUM BENEFIT PERIODS-------------------------------

Injuries:
    Total Disability starting before age 65 ........................... for Life
    Total Disability starting at age 65 but before age 75 ............. 24 months
    Total Disability starting at or after age 75 ...................... 12 months

Sickness:
    Total Disability starting before age 60 ........................... for Life
    Total Disability starting at age 60 but before age 61 ............. to age 65
    Total Disability starting at age 61 but before age 62 ............. 48 months
    Total Disability starting at age 62 but before age 63 ............. 42 months
    Total Disability starting at age 63 but before age 64 ............. 36 months
    Total Disability starting at age 64 but before age 65 ............. 30 months
    Total Disability starting at age 65 but before age 75 ............. 24 months
    Total Disability starting at or after age 75 ...................... 12 months

---------------------------------------------------------------------------------

Rehabilitation Expense ................................ $3,000.00 Maximum Amount

Treatment of Injuries (Payable if disability
    benefits not paid) ................................ $500.00 Maximum Amount

-------------------------------ADDITIONAL BENEFITS-------------------------------
(The premium shown for each benefit is included in the Policy Premium shown above.)

Residual Disability Benefit ...........................Page 8    Premium $160.10

### (Policy Schedule is continued on next page.)

## POLICY SCHEDULE (continued)

Cost of Living Adjustment ...............................Page 12    Premium $248.10

--------------------------------------------------------------------------------

(Policy Schedule is continued on next page.)

POLICY SCHEDULE (Continued)

------------------------------------UPDATE------------------------------------

The benefits and premium named below will be automatically increased without evidence of insurability, as follows:

| UPDATE Increase Date | New Monthly Benefit for Total Disability | New Maximum Amount for Rehabilitation Expense | New Maximum Amount for Treatment of Injuries | New Annual Premium for this Policy |
|---|---|---|---|---|
| 04/01/89 | $1,070.00 | $3,210.00 | $535.00 | $1,430.36 |
| 04/01/90 | $1,150.00 | $3,450.00 | $575.00 | $1,545.01 |
| 04/01/91 | $1,240.00 | $3,720.00 | $620.00 | $1,679.35 |
| 04/01/92 | $1,330.00 | $3,990.00 | $665.00 | $1,819.03 |
| 04/01/93 | $1,430.00 | $4,290.00 | $715.00 | $1,980.18 |

UPDATE Benefit increases are effective on the UPDATE Increase Dates shown. If an UPDATE Increase Date shown does not coincide with a renewal date for this policy, the increase will be effective on the next renewal date.

An UPDATE Benefit increase will apply only to a period of disability which starts after the effective date of the increase. It must qualify as a separate period of disability. If the premium for the policy is being waived on the effective date of the increase, the premium for the increase will also be waived. When you resume paying premiums for the policy, you must also start paying the premium for the increase.

You are entitled to UPDATE Benefit increases on the dates shown above. If you do not accept an increase, your refusal:

1. forfeits your right on that UPDATE Increase Date to the UPDATE Benefit increase;
2. postpones the schedule of benefit increases to the next UPDATE Increase Date, if any;
3. adjusts the premiums for the remaining increases, if any, since such premiums are based on your attained age at the time of an UPDATE Benefit increase; and
4. in no way extends the last UPDATE Increase Date shown above.

Each refusal of an UPDATE Benefit increase reduces the number of UPDATE Benefit increases to which you were entitled by one.

If you are under age 59 on the last UPDATE Increase Date, you may apply for an amendment providing additional UPDATE Benefit increases. You can do this by making formal application within the period of 60 days prior to and 31 days after the last UPDATE Increase Date. Approval will be subject to our underwriting guidelines then in effect.

## DEFINITIONS

**Injuries** means accidental bodily injuries occurring while your policy is in force.

**Sickness** means sickness or disease which is first manifested while your policy is in force.

**age,** when used before a number, such as in "age 65", means the ending date of the policy term in which you attain that age. A policy term is described on the page titled "Premiums and Renewals."

**Physician** means any person other than you who is licensed by law, and is acting within the scope of the license, to treat Injuries or Sickness which results in covered loss.

**Total Disability** or **totally disabled** means that due to Injuries or Sickness:

1. you are not able to perform the substantial and material duties of your occupation; and

2. you are receiving care by a Physician which is appropriate for the condition causing the disability.

**your occupation** means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled. If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation.

**period of disability** means a period of disability starting while this policy is in force. Successive periods will be deemed to be the same period unless the later period:

1. is due to a different or unrelated cause, or

2. starts more than twelve months after the end of the previous period;

in which event, the later period will be a new or separate period of disability. A new Elimination Period must then be met. And, a new Maximum Benefit Period will apply.

**Elimination Period** means the number of days of disability that must elapse in a period of disability before benefits become payable. The number of days is shown on Page 3. These days need not be consecutive; they can be accumulated during a period of disability to satisfy an Elimination Period. Benefits are not payable, nor do they accrue, during an Elimination Period.

## EXCLUSION

We will not pay benefits for loss caused by war or any act of war, whether war is declared or not.

Additional exclusions, if any, appear in the Policy Schedule.

## PRE-EXISTING CONDITION LIMITATION

We will not pay benefits for loss starting within two years of the Effective Date of this policy which is caused by a Pre-existing Condition. A claim for benefits for loss starting thereafter will not be reduced or denied on the ground it is caused by a Pre-existing Condition unless the condition is excluded by name or specific description. Pre-existing Condition means an impairment, deformity or a physical condition that was not disclosed, or that was misrepresented, in answer to a question in the application for this policy. A physical condition means an accidental bodily injury which occurred before the Effective Date of the policy, or a sickness or disease which manifested itself before the Effective Date of the policy.

## BENEFITS

**TOTAL DISABILITY**
We will pay the Monthly Benefit for Total Disability shown on Page 3 as follows:

1. Benefits start on the day of Total Disability following the Elimination Period.
2. Benefits will continue while you are totally disabled during the period of disability but not beyond the Maximum Benefit Period.

In no event will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness or from both will not matter. We will pay benefits for the disability which provides the greater benefit.

**PRESUMPTIVE TOTAL DISABILITY - LOSS OF SPEECH, HEARING, SIGHT OR THE USE OF TWO LIMBS**
You will be presumed totally disabled if Injuries or Sickness results in the entire and permanent loss of:

1. speech;
2. hearing in both ears;
3. the sight of both eyes; or
4. the use of both hands, or of both feet or of one hand and one foot.

You must present satisfactory proof of your loss. Your ability to work will not matter. Further medical care will not be required. Benefits will be paid according to the Total Disability provisions of this policy. But, benefits will start on the date of loss if earlier than the day benefits start as shown on Page 3. If loss occurs before you attain age 65, the Monthly Benefit for Total Disability will be paid as long as you live regardless of the Maximum Benefit Period shown on Page 3.

**TRANSPLANT SURGERY**
You might be disabled from the transplant of part of your body to another person. If so, we will consider it to be the result of a Sickness.

**COSMETIC SURGERY**
You might be disabled from surgery to improve your appearance or to correct disfigurement. If so, we will consider it to be the result of a Sickness.

**PREGNANCY**
You might be disabled from pregnancy or childbirth. If so, we will consider it to be the result of a Sickness.

**WAIVER OF PREMIUM**
After you have been totally disabled for 90 days during a period of disability, we will:

    1. refund any premiums which became due and were paid while you were totally dis-
       abled; and
    2. waive the payment of each premium which thereafter becomes due for as long as
       the period of disability lasts. After it ends, to keep this policy in force,
       you must again pay any premiums which become due.

For premiums to be waived, you must give us satisfactory proof of disability.

**REHABILITATION**
Total Disability - Your participation in a program of occupational rehabilitation will not of itself be considered a recovery from Total Disability.

Expense - If, during a period of Total Disability, you participate in a program of occupational rehabilitation which we approve, we will pay for certain expenses you incur. That is, we will pay for the reasonable cost of training and education which is not otherwise covered under health care insurance, workers' compensation or any public fund or program. But, we will not pay more than the Maximum Amount for Reha-bilitation Expense shown on Page 3.

A program of occupational rehabilitation must be designed to help you return to work and be:

    1. a formal program of rehabilitation at an accredited graduate school, college
       or business school, or at a licensed vocational school;
    2. a recognized program operated by the federal or a state government; or
    3. any other professionally planned rehabilitation program of training or educa-
       tion.

**TREATMENT OF INJURIES (PAYABLE IF DISABILITY BENEFITS NOT PAID.)**
If Injuries require medical treatment prescribed by a Physician, we will pay your expenses for the treatment. But, we will not pay more than the Maximum Amount for Treatment of Injuries shown on Page 3 as a result of any one accident.

If you qualify for payment under this provision and also under a disability provision of this policy because of the same accident, payment will be made under the provision which provides the greater benefit.

**BENEFITS WHEN POLICY RENEWED AFTER AGE 65**
If this policy is continued in accordance with the "Conditional Right to Renew After Age 65" on Page 1, all of the benefit provisions on Pages 5, 6 and 7 will be included in the continued policy. (Any additional benefit provision contained in this policy will not be included unless it is named on Page 3 as one that will be included in the continued policy.) The Maximum Benefit Period starting while this policy is so continued is shown on Page 3. The Monthly Benefit for Total Disability will not change unless you choose to renew with a lesser amount.

**PAYMENT FOR PART OF MONTH**
If any payment under this policy is for part of a month, the daily rate will be 1/30th of the payment which would have been made if disability had continued for the whole month.

**RESIDUAL DISABILITY BENEFITS**
with Recovery Benefits and with Cost of Living Indexing of Prior Monthly Income
(Nothing in this provision limits the policy definition of "Total Disability.")

### DEFINITIONS

**Monthly Income** means your monthly income from salary, wages, bonuses, commissions, fees or other payments for services which you render or your business provides. Normal and usual business expenses are to be deducted; income taxes are not. Monthly Income must be earned. It does not include dividends, interest, rents, royalties, annuities, sick pay or benefits received for disability under a formal wage or salary continuation plan or other forms of unearned income.

Monthly Income can be credited to the period in which it is actually received or to the period in which it is earned. We allow either the cash or accrual accounting method. But, the same method must be used to determine the Prior Monthly Income and the Current Monthly Income during a period of disability. If you elect the cash accounting method, we will not include income received for services rendered prior to the start of a period of disability in your Current Monthly Income.

**Prior Monthly Income** means the greatest of:

1. your average Monthly Income for the 12 months just prior to the start of the period of disability for which claim is made;
2. your average Monthly Income for the year with the highest earnings of the last two years prior to the start of such period of disability; or
3. your highest average Monthly Income for any two successive years of the last five years prior to the start of such period of disability.

**Current Monthly Income** means your Monthly Income in your occupation for each month of Residual Disability being claimed.

**Loss of Monthly Income** means the difference between Prior Monthly Income and Current Monthly Income. Loss of Monthly Income must be caused by the Residual Disability for which claim is made. The amount of the loss must be at least 20% of Prior Monthly Income to be deemed Loss of Monthly Income. If your loss is more than 75% of Prior Monthly Income, we will deem the loss to be 100%.

**Residual Disability or residually disabled,** during the Elimination Period, means that due to Injuries or Sickness:

1. you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usual daily business duties for as much time as it would normally take you to do them;
2. you have a Loss of Monthly Income in your occupation of at least 20%; and
3. you are receiving care by a Physician which is appropriate for the condition causing disability.

After the Elimination Period has been satisfied, you are no longer required to have a loss of duties or time. **Residual Disability or residually disabled** then means that as a result of the same Injuries or Sickness:

1. you have a Loss of Monthly Income in your occupation of at least 20%; and
2. you are receiving care by a Physician which is appropriate for the condition causing the Loss of Monthly Income.

335-RS                    MELVYN D TAYLOR    6-335-836766                    Page 8

**Monthly Benefit for Total Disability** is shown on Page 3. (It can be increased by certain other benefit provisions if they are included in your policy and are applicable. If included, they are titled "Cost of Living Adjustments of Monthly Benefits" and "Social Insurance Substitute Benefit.")

**Residual Disability Monthly Benefit** is the benefit payable under this provision. It is determined monthly by this formula. Each month, it equals:

$$\frac{\text{Loss of Monthly Income}}{\text{Prior Monthly Income}} \times \text{Monthly Benefit for Total Disability}$$

### RESIDUAL DISABILITY BENEFITS

We will pay Residual Disability Monthly Benefits as follows:

1. Benefits start on the day of Residual Disability following the Elimination Period or, if later, after the end of compensable Total Disability during the same period of disability.
2. Benefits will continue while you are residually disabled during a period of disability but the combined period for which benefits for Total and Residual Disability are payable can not exceed the Maximum Benefit Period. And, benefits will not be payable after you attain age 65.
3. The first six monthly payments for Residual Disability will be the greater of:
   a. 50% of the Monthly Benefit for Total Disability; or
   b. the Residual Disability Monthly Benefit determined for each month.

Residual Disability benefits will not be paid for any days for which Total Disability benefits are paid.

In no event will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness or from both will not matter. We will pay benefits for the disability which provides the greater benefit.

We can require any proof which we consider necessary to determine your Current Monthly Income and Prior Monthly Income. Also, we or an independent accountant retained by us shall have the right to examine your financial records as often as we may reasonably require.

### RECOVERY BENEFITS

(Nothing in this provision limits the policy definition of "Residual Disability.")

If you are under age 65 and return to gainful full-time work at the end of a period for which we have paid Total and/or Residual Disability benefits, we will:

1. while you are so engaged in gainful full-time work; and
2. while you are having a Loss of Monthly Income in your occupation of at least 20% due to the same Injuries or Sickness;

pay benefits under this back to work provision as though the same period of disability is continuing. You do not have to be receiving care by a Physician while Recovery Benefits are being paid. Payments will be made for each month, up to 3 months, in which (1) and (2) exist. For the first such month, we will pay a benefit based on the greater of:

    a. the monthly rate computed by the Residual Disability Benefit formula for that month; or

    b. 100% of the actual claim payment made for the 30 days preceding your return to work full time.

The monthly benefit for the second and third months will be computed as in (a) and (b) above; except that, instead of using 100% in (b), 75% will apply for the second month. And, 50% will apply for the third month.

These recovery benefits will not be paid for any days for which Total and/or Residual Disability benefits are paid. And, they will not be paid for more than 3 months in connection with a period of disability.


### COST OF LIVING INDEXING OF PRIOR MONTHLY INCOME
### (Applicable to benefits paid after the 12th month of a period of disability)

#### Definitions

CPI-U means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If the CPI-U is discontinued or if its method of computation is changed, we may use another nationally published index. We will choose an index which is similar in scope and purpose to the CPI-U. The CPI-U will then mean the index which is chosen.

Review Date means each anniversary date of the start of a period of disability.

Review Period means a one year period ending on a Review Date.

Index Month means the calendar month three months prior to a Review Date. But, the first Index Month means the calendar month three months prior to the start of a period of disability. We will measure all changes in the CPI-U from the first Index Month.

Index Factor is used by us to determine your adjusted Prior Monthly Income for each Review Period. We will compute this factor by dividing the CPI-U for the latest Index Month by the CPI-U for the first Index Month. We will compute it on each Review Date during a period of disability.


#### Adjusted Prior Monthly Income

If Injuries or Sickness results in a period of disability that lasts at least 12 months, we will compute Cost of Living Adjustments on each Review Date for Residual Disability Benefits. Monthly benefits which thereafter accrue during that period of disability will be adjusted by indexing your Prior Monthly Income as follows:

1. On each Review Date, your Prior Monthly Income will be multiplied by your Index Factor. The result is your adjusted Prior Monthly Income. It will be used to figure your Loss of Monthly Income during the Review Period that follows. It will also be used in the formula to compute each Residual Disability Monthly Benefit payable during that Review Period.

   An increase in your Prior Monthly Income can cause your Loss of Monthly Income to be greater. This in turn can result in an increase in your Residual Disability Monthly Benefit. Other than your Index Factor (which is computed by using actual CPI-U values), there is no limit on the percent of increase in your Prior Monthly Income for a Review Period. If the CPI-U should go down, your adjusted Prior Monthly Income can decrease. But, it can never reduce below your Prior Monthly Income at the start of the period of disability.

2. Indexing of your Prior Monthly Income will end on the earliest of:

   a. the end of the period of disability (see Page 4);
   b. the end of a benefit period; or
   c. the date you attain age 65.

If the computations end because of a or b above, disability benefits which can be paid for the first 12 months of a new period of disability will not include a Cost of Living Adjustment. A new first Index Month and Review Date will apply to each new period of disability that lasts more than 12 months.

### WAIVER OF PREMIUM

For periods of disability which start before age 65, the Waiver of Premium provision on Page 6 is replaced by the following:

#### "WAIVER OF PREMIUM - TOTAL DISABILITY AND RESIDUAL DISABILITY

If, during a period of disability, Injuries or Sickness results in more than 90 days of Total and/or Residual Disability, we will:

1. refund any premiums which became due and were paid while you were so disabled; and
2. waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts. After it ends, to keep your policy in force, you must again pay any premiums which become due.

For premiums to be waived, you must give us satisfactory proof of disability except as respects Recovery Benefits."

NOTE: All portions of this Residual Disability Benefit expire when you attain age 65 even though the policy may be renewed after you attain age 65. No further premiums for it will be due.

COST OF LIVING ADJUSTMENTS
(Applies to benefits payable after the 12th month of a period of disability)

### DEFINITIONS

CPI-U means the Consumer Price Index for All Urban Consumers.  It is published by the United States Department of Labor.  If the CPI-U is discontinued or if its method of computation is changed, we may use another nationally published index.  We will choose an index which is similar in scope and purpose to the CPI-U.  The CPI-U will then mean the index which is chosen.

**Review Date** means each anniversary date of the start of a period of disability.

**Review Period** means a one year period ending on a Review Date.

**Index Month** means the calendar month three months prior to a Review Date.  But, the first Index Month means the calendar month three months prior to the start of a period of disability.  We will measure all changes in the CPI-U from the first Index Month.

**Benefit Factor** is determined by dividing the CPI-U for the latest Index Month by the CPI-U for the first Index Month.  We will compute it on each Review Date during a period of disability.  It will apply to the Review Period that follows.

**Monthly Benefit for Total Disability** is shown on Page 3.  (It can be increased by a "Social Insurance Substitute (SIS) Benefit" if it is included in your policy and when it is applicable).

**Adjusted Monthly Benefit for Total Disability** is the Monthly Benefit for Total Disability multiplied by the Benefit Factor for a Review Period.  But, an Adjusted Monthly Benefit for Total Disability can not:

1. exceed the Monthly Benefit for Total Disability increased at 7% compounded annually from the first to the latest Index Month;
2. exceed two times the Monthly Benefit for Total Disability; or
3. be reduced below the amount of the Monthly Benefit for Total Disability.

### BENEFITS

If Injuries or Sickness results in a period of disability that lasts at least 12 months, we will compute Cost of Living Adjustments on each Review Date.  Monthly benefits which thereafter accrue during that period of disability will be adjusted as follows:

1. On each Review Date, we will compute the Benefit Factor and the Adjusted Monthly Benefit for Total Disability for the Review Period that follows.

2. For any Monthly Benefit for Total Disability that accrues during a Review Period, we will pay instead the Adjusted Monthly Benefit for Total Disability.

3. We will adjust any Residual Disability Monthly Benefit which accrues during a Review Period.  To do this, we will use the Adjusted Monthly Benefit for Total Disability in the formula to determine each Residual Disability Monthly Benefit that is to be paid during that Review Period.  It will be used in the formula instead of the Monthly Benefit for Total Disability.

4.  Computations of Cost of Living Adjustments will end on the earliest of:

    a.  the end of the period of disability (see Page 4);
    b.  the end of a benefit period; or
    c.  the date you attain age 65.

If the computations end because of (a) or (b) above, benefit amounts will revert to those shown on Page 3.  Benefits payable for the first 12 months of a new period of disability will not include a Cost of Living Adjustment.  A new first Index Month and Review Date will apply to each new period of disability that lasts more than 12 months.

If the computations end because of (c) above and if any benefits continue to be payable after you attain age 65 for a period of disability that started before you became age 64, we will apply to those benefits the Benefit Factor that last applied before you became age 65.

We will compute a Benefit Factor on the first Review Date for a period of disability that starts between your 64th and 65th birthdays.  This factor will continue to apply to any benefits paid during that period of disability.

### QUALIFIED RIGHT TO INCREASE MONTHLY BENEFIT TO ADJUSTED AMOUNT

When you return to active and gainful full-time work after the end of a period of disability during which Cost of Living Adjustments were made, you may elect to in-crease the amount of the Monthly Benefit for Total Disability shown on Page 3.  You may increase it to the amount of the Adjusted Monthly Benefit for Total Disability (less any SIS Benefit if included) which was used to determine the last monthly claim payment, if:

1.  you have not reached your 60th birthday on the date you elect the increase; and
2.  within 90 days after the period of disability ends, you make application to us on a form which we will furnish you upon request.  On this form, you must confirm that you are actively and gainfully employed full time.  Other evidence of insurability will not be required.

The effective date of the increase will be the first of the month after we approve your application for the increase.  The required additional premium must be paid within 31 days of that date.  Later premiums for the increase must be paid as part of the renewal premiums for the policy.

The premium for the increase will be based on your attained age at the time of the increase.  It will also be based on our table of premium rates then in effect.

The increase in benefit will apply to new periods of disability which start after the effective date of the increase.

If you do not elect and obtain this increase, the Monthly Benefit for Total Disability will revert to the amount shown on Page 3 for new periods of disability.

NOTE:  All portions of this COLA benefit expire when you attain age 65 even though the policy may be renewed after you attain age 65.  No further premiums for it will be due.

## PREMIUMS AND RENEWALS

### POLICY TERM
The first term of this policy starts on the Effective Date shown on Page 3. It ends on the First Renewal Date also shown. Later terms will be the periods for which you pay renewal premiums when due. All terms will begin and end at 12:01 A.M., Standard Time, at your home. The renewal premium for each term will be due on the day the preceding term ends, subject to the grace period.

### GRACE PERIOD
This policy has a 31 day grace period. This means that if a renewal premium is not paid on or before the date it is due, it may be paid during the next 31 days. During the grace period, the policy will stay in force.

### CONDITIONAL RIGHT TO RENEW AFTER AGE 65; PREMIUMS ARE NOT GUARANTEED
(Continued from Page 1)
You can renew this policy as long as you are actively and gainfully working full time. From time to time, we can require proof that you are actively and gainfully working full time. If you stop working, (except by reason of Total Disability), this policy will terminate; except that coverage will continue to the end of any period for which premium has been accepted.

Premiums must be paid on time. They will be based on our table of rates by attained age in effect at time of renewals for persons in your same rate class who are insured under policies of this form. Other than your attained age, the factors used to determine your rate class will be the same as those that applied to you on the Effective Date of this policy.

The benefit provisions which will be included in this policy, if it is continued after you attain age 65, are described on Page 7.

### REINSTATEMENT
If a renewal premium is not paid before the grace period ends, the policy will lapse. Later acceptance of the premium by us or by our agent authorized to accept payment without requiring an application for reinstatement will reinstate this policy.

If we or our agent require an application, you will be given a conditional receipt for the premium tendered. If the application is approved, the policy will be reinstated as of the approval date. Lacking such approval, the policy will be reinstated on the 45th day after the date of the conditional receipt unless we have previously written you of our disapproval.

The reinstated policy will cover only loss that results from Injuries which occur after the date of reinstatement or Sickness which is first manifested more than 10 days after such date. In all other respects, your rights and ours will remain the same, subject to any provisions noted on or attached to the reinstated policy.

## SUSPENSION DURING MILITARY SERVICE

If you enter full-time active duty in the military (land, sea or air) service of any nation or international authority, you may suspend your policy. But, you may not suspend the policy during active duty for training lasting 3 months or less. The policy will not be in force while it is suspended, and you will not be required to pay premiums. Upon receipt of your written request to suspend the policy, we will refund the pro-rata portion of any premium paid for a period beyond the date we receive your request.

If your full-time active duty in military service ends before age 65, you may place this policy back in force without evidence of insurability. Your coverage will start again when:

1. we have received your written request to place the policy back in force; and
2. you have paid the required pro-rata premium for coverage until the next premium due date.

However, your request and premium payment must be received by us within 90 days after the date your active duty in the military service ends. Premiums will be at the same rate that they would have been had your policy remained in force. The policy will not cover any loss due to Injuries which occur or Sickness which is first manifested while the policy is suspended. In all other respects you and we will have the same rights under the policy as before it was suspended.

## PREMIUM ADJUSTMENT AT DEATH

Any premium paid for a period beyond the date of your death will be refunded to your estate.

### CLAIMS

## NOTICE OF CLAIM

Written notice of claim must be given within 20 days after a covered loss starts or as soon as reasonably possible. The notice can be given to us at our home office, Chattanooga, Tennessee, or to our agent. Notice should include your name and the policy number.

## CLAIM FORMS

When we receive your notice of claim, we will send you claim forms for filing proof of loss. If these forms are not given to you within 15 days, you will meet the proof of loss requirements by giving us a written statement of the nature and extent of your loss. You must give us this proof within the time set forth in the Proof of Loss section.

## PROOF OF LOSS

If the policy provides for periodic payment for a continuing loss, you must give us written proof of loss within 90 days after the end of each period for which we are liable. For any other loss, written proof must be given within 90 days after such loss.

If it was not reasonably possible for you to give written proof in the time required, we will not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be furnished no later than one year after the 90 days unless you are legally unable to do so.

**TIME OF PAYMENT OF CLAIMS**
After we receive written proof of loss, we will pay monthly all benefits then due you
for disability.  Benefits for any other loss covered by this policy will be paid as
soon as we receive proper written proof.

**PAYMENT OF CLAIMS**
Benefits will be paid to you.  Any benefits unpaid at death will be paid to your es-
tate.

If benefits are payable to your estate, we can pay benefits up to $3000 to someone
related to you by blood or marriage whom we consider to be entitled to the benefits.
We will be discharged to the extent of any such payment made in good faith.

**PHYSICAL EXAMINATIONS**
We, at our expense, have the right to have you examined as often as is reasonable while
a claim is pending.

**MISSTATEMENT OF AGE**
If your age has been misstated, the benefits will be those the premium paid would have
bought at the correct age.

**LEGAL ACTIONS**
You may not start a legal action to recover on this policy within 60 days after you
give us required proof of loss.  You may not start such action after the expiration
of the applicable statute of limitations from the time proof of loss is required.

## GENERAL PROVISIONS

**ENTIRE CONTRACT**
This policy with the application and attached papers is the entire contract between
you and us.  No change in this policy will be effective until approved by one of our
officers.  This approval must be noted on or attached to this policy.  No agent may
change this policy or waive any of its provisions.

**INCONTESTABLE**

1.  After this policy has been in force for two years during your lifetime, we
    cannot contest the statements in the application.

2.  No claim for loss incurred or disability that starts after two years from the
    Effective Date of this policy will be reduced or denied on the ground that a
    sickness or physical condition not excluded by name or specific description had
    existed before the Effective Date of this policy.

**CONFORMITY WITH STATE STATUTES**
Any provision of this policy which, on its effective date, is in conflict with the
laws of the state in which you reside on that date is changed to conform to the minimum
requirements of those laws.

**ASSIGNMENT**
No assignment of interest in this policy will be binding on us until a copy is on file
with us.  It must be approved by one of our officers.  We are not responsible for the
validity of any assignment.

335-GP-FL              MELVYN D TAYLOR    6-335-836766                Page 16

## SALARY ALLOTMENT PREMIUM PAYMENT

In consideration of the Salary Allotment Agreement between your employer and us, we agree to accept Policy Premiums as billed to your employer.

The conditions of this rider are:

1. The policy will not continue in force beyond the time for which the premium is paid, subject to the grace period.

2. If your employer fails to pay premiums when due because of clerical error or negligence, your insurance under the policy will not be prejudiced.

3. This rider will be void if:

   a. your employment with your employer ends;

   b. the Salary Allotment Agreement is terminated; or

   c. for any reason, your employer fails to pay premiums.

4. If this rider is voided, premiums will be due and payable as required in the policy.

Nº 396820

I hereby apply to Provident Life and Accident Insurance Company for insurance based on the following representations:

1. (a) Full name? (Print) *MELVYN D. TAYLOR*    (b) Sex? M ☒ F ☐
   (c) Height? ft. *5* in. *8* (d) Weight? lbs. *155* (e) Date of Birth? *05-18-37* (f) Birthplace? *PA*

2. (a) Residence Address? *9621 CONCH SHELL MANOR, PLANTATION, FL 33324*    Send Notices: ☐ Residence
      (Print)        Street and No. (or P.O. Box No.)    City,    State,    Zip Code
   (b) Business Address? *3037 E. COMMERCIAL BLVD, Ft. LAUDERDALE, FL 33308*    ☒ Business

3. (a) Occupation: *ENDODONTIST / D.D.S.* (b) Employer: *ROSENBAUM & TAYLOR, DDS, P.A.*
   (c) Exact duties: *DUTIES OF ABOVE* (d) Social Security No. *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*
   (e) Are you actively at work fulltime in the above occupation? Yes ☒ No. ☐ (f) Length of Employment: *16½ YES*

4. (a) Annual Earned Income From Your Occupation for Fed- | Current Annual Rate | Actual Prior Calendar Year | Actual Year Prior to Last Calendar Year
   eral Tax Purposes (After Business Expenses, if any):
   Salary .................................................. $ *150,000* $ *133,000* $ *125,000*
   Other (Describe) ........................................ $ _____ $ _____ $ _____
   (b) Unearned Income Prior 2 Years (Interest, Dividends, etc.) ....... $ *0* $ *0*

5. (a) Do you have or are you applying for other: (1) Individual, (2) Association, (3) Group, or (4) Employer Sick Pay disability income coverage; or (5) Overhead Expense disability coverage? Yes ☒ No☐ (If "Yes" give details below)

| Company or Source | Type (1, 2, 3, 4 or 5) | Monthly Disability Amount | Benefit Period Accident | - Sickness |
|---|---|---|---|---|
| PROVIDENT | 1 | 3625 | L | L |
| PROVIDENT | 5 | 3000 | 12 | 12 |
| UNUM | 1 | 1000 | L | L |

   (b) Do you have Social Security substitute coverage? Yes ☐ No ☒ Amount $_____ Company_____
   (c) Is any coverage to be replaced by the coverage applied for? Yes ☐ No ☒ If "Yes", complete Form 1335-Q5.
   (d) What is the total personal non-group life insurance in force or applied for on your life? *1,000,000*
   (e) Does your net worth exceed $4,000,000? Yes ☐ No. ☐ If "Yes" complete Form 1335-NW.
   (f) Have you smoked cigarettes within the last 12 months? Yes ☐ No ☒

(Q6-8 need not be answered if a Provident Medical Exam, dated on or after the date of this application, is being furnished)

6. Have you ever been treated for or ever had any known indication of:    Yes    No
   (a) High blood pressure, diabetes, cancer, arthritis, asthma, emphysema, or emotional, nervous or mental disorder, or disease or disorder of the eyes, ears or speech? ........................... ☐ ☒
   (b) Disease or disorder of the neck, back, spine, heart, lungs, breasts, or the circulatory, digestive, urinary or reproductive systems? ........................... ☐ ☒
7. Other than above, have you, within the past 5 years, had medical or surgical advice or treatment, had a physical examination, or been under observation for any disease or disorder? ........................... ☒ ☒
8. Do you have a physical impairment or deformity, or take any type of prescribed medication? ........................... ☐ ☒
   (Give details of "Yes" answers to Q6-8. Include diagnoses, dates, physicians and addresses)

*7) MEDICAL FOR LIFE INSURANCE WITH PROVIDENT APRIL 15, 1987*
*COVERAGE ISSUED FINE.*

9. (a) Will your employer pay for all disability coverage to be carried by you with no portion of the premium to be included in your taxable income? Yes ☒ No ☐ (b) How much premium is paid with this application? *0*

To the best of my knowledge and belief, all of the foregoing statements and all of those in Part II, if any, of this Application are true, complete, and correctly stated. They are offered to Provident Life and Accident Insurance Company as the basis for any insurance issued on this Application. I have received a disclosure concerning: (1) the Medical Information Bureau; and (2) an investigative consumer report which may be made for use with this Application.

I authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organizations, institution or person that has any records or knowledge of me or my health, to give to Provident Life and Accident Insurance Company and/or its reinsurers any such information.

I authorize all said sources, except the Medical Information Bureau, to give such records or knowledge to Equifax, Inc. This agency is employed by Provident Life and Accident Insurance Company to collect and send such information.

A copy of this authorization shall be as valid as the original. Signature of

Signed at *Ft. Lauderdale, FL*    Proposed Insured X *Melvyn D. Taylor*
            City    State    I certify that I have truly and accurately recorded on this appli-
this *1* day of *March* 19 *88*    cation the information supplied by the Proposed Insured.
Field Office: Miami (FLDO)–    *[signature]*    *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*
                                (Licensed Agent's or Broker's Signature)
Form 1335  *09785    002    KGC*    Taxpayer I.D. Number *591565277*
            AGENCY NO.    BROKER CODE    ALPHA SUFFIX

---

**IMPORTANT NOTICE**

Please read the copy of the application attached to this policy. Omissions or misstatements in the application could cause an otherwise valid claim to be denied. Carefully check the application and write to us within 10 days if any information shown on it is not correct and complete, or if any past medical history has been left out of the application. This application is a part of the policy; and the policy was issued on the basis that the answers to all questions and the information shown on the application are correct and complete.

---

# D I S A B I L I T Y   I N C O M E   P O L I C Y

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE TO YOUR 65TH BIRTHDAY
OR FIVE YEARS, WHICHEVER IS LATER
CONDITIONAL RIGHT TO RENEW AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS
WHICHEVER IS LATER; PREMIUMS GUARANTEED TO YOUR 65TH BIRTHDAY**

**MELVYN D TAYLOR, the Insured
Policy Number 06-337-5023645**

**10 day right to examine your policy** - We want you to fully understand and be entirely satisfied with your policy. If you are not satisfied for any reason, you may return the policy to us, or to the agent through whom it was purchased, within 10 days of its receipt. We will refund any premiums you have paid within 10 days after we receive your notice of cancellation and the policy. It will be considered never to have been issued.

DUPLICATE

EXHIBIT 

In this policy, the words "you" and "your" mean you, the Insured named below; "we," "our" and "us" mean Provident Life and Accident Insurance Company.

We will pay benefits for covered loss resulting from Injuries or Sickness subject to all of the provisions of this policy. Loss must begin while the policy is in force.

This policy is a legal contract between you and us. It is issued in consideration of the payment in advance of the required premium and of your statements and representations in the application. A copy of your application is attached and made a part of the policy.

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE AT GUARANTEED PREMIUMS TO YOUR 65TH BIRTHDAY OR FOR FIVE YEARS, WHICHEVER IS LATER:** You can continue this policy to your 65th birthday or for five years, whichever is later, by paying premiums on time. The premiums shown on Page 3 are guaranteed to your 65th birthday or for five years, whichever is later.

**CONDITIONAL RIGHT TO RENEW AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS LATER; PREMIUMS ARE NOT GUARANTEED:** You can renew this policy as long as you are actively and gainfully working full time; there is no age limit. You must pay premiums on time at our premium rates then in effect at time of renewals. (For further conditions, see the page titled "Premiums and Renewals." See Page 7 for the benefit provisions that will be included in the continued policy.)

## GUIDE TO POLICY PROVISIONS

|                                                                                      | Page |
|--------------------------------------------------------------------------------------|------|
| Renewal Conditions                                                                   | 1    |
| Policy Schedule                                                                      | 3    |
| UPDATE                                                                               | 3    |
| Definitions (Injuries, Sickness, Physician, Total Disability, your occupation, period of disability, Elimination Period) | 4 |
| Exclusions                                                                           | 5    |
| Benefits                                                                             |      |
| Total Disability                                                                    | 6    |
| Presumptive Total Disability                                                        | 6    |
| Transplant Surgery                                                                  | 6    |
| Cosmetic Surgery                                                                    | 6    |
| Waiver of Premium                                                                   | 6    |
| Rehabilitation                                                                      | 7    |
| Benefits When Policy Renewed After Your 65th Birthday or Five Years, Whichever is Later | 7 |
| Payment for Part of Month                                                           | 7    |
| Additional Benefits                                                                 |      |
| Residual Disability/Recovery (includes revised Waiver of Premium provision)         | 8    |
| Cost of Living Adjustment                                                           | 12   |
| Premiums and Renewals                                                               |      |
| Policy Term                                                                         | 14   |
| Grace Period                                                                        | 14   |
| Conditional Right to Renew After Your 65th Birthday or Five Years Whichever is Later - Premiums Are Not Guaranteed | 14 |
| Reinstatement                                                                       | 14   |
| Suspension During Military Service                                                  | 15   |
| Premium Adjustment at Death                                                         | 15   |
| Claims                                                                              |      |
| Notice of Claim                                                                     | 15   |
| Claim Forms                                                                         | 15   |
| Proof of Loss                                                                       | 15   |
| Time of Payment of Claims                                                           | 16   |
| Payment of Claims                                                                   | 16   |
| Physical Examinations                                                               | 16   |
| Misstatement of Age                                                                 | 16   |
| Legal Actions                                                                       | 16   |
| General Provisions                                                                  |      |
| Entire Contract                                                                     | 16   |
| Time Limit on Certain Defenses                                                      | 16   |
| Conformity With State Statutes                                                      | 16   |
| Assignment                                                                          | 16   |
| Salary Allotment Premium Payment                                                    | 17   |

### READ YOUR POLICY CAREFULLY

# P O L I C Y   S C H E D U L E

Insured – MELVYN D TAYLOR          Policy Number – 06-337-5023645
Effective Date – March 1, 1990      First Renewal Date – March 1, 1991
Issue Date – March 9, 1990         Renewal Term – Twelve Months

Policy Premium payable from March 1, 1990 until the first UPDATE Increase Date (see
Page 3 (cont.)) is at the Annual rate of $3,949.36 on a non smoking premium basis.

Other Premium Paying Methods:
       $2,014.17 Semi-Annually
       $1,026.84 Quarterly
         $335.70 Monthly (Preauthorized Bank Draft only)

-----------------------MONTHLY BENEFIT FOR TOTAL DISABILITY-----------------------

$3,250.00

-------------------------------ELIMINATION PERIOD-------------------------------

90 days of Total and/or Residual Disability

An Elimination Period starting after your 65th birthday
must consist entirely of days of Total Disability

--------------------MAXIMUM BENEFIT PERIODS FOR TOTAL DISABILITY--------------------

**Injuries:**
     Total Disability starting before your 65th birthday  ................   for Life
     Total Disability starting on or after your 65th birthday
       but before your 75th birthday  ..................................... 24 months
     Total Disability starting on or after your 75th birthday  .......... 12 months

**Sickness:**
     Total Disability starting before your 60th birthday  ................   for Life
     Total Disability starting on or after your 60th birthday
       but before your 61st birthday  ...................... to your 65th birthday
     Total Disability starting on or after your 61st birthday
       but before your 62nd birthday  ..................................... 48 months
     Total Disability starting on or after your 62nd birthday
       but before your 63rd birthday  ..................................... 42 months
     Total Disability starting on or after your 63rd birthday
       but before your 64th birthday  ..................................... 36 months
     Total Disability starting on or after your 64th birthday
       but before your 65th birthday  ..................................... 30 months
     Total Disability starting on or after your 65th birthday
       but before your 75th birthday  ..................................... 24 months
     Total Disability starting on or after your 75th birthday  .......... 12 months

------------------------------ADDITIONAL BENEFITS------------------------------
(The premium shown for each benefit is included in the Policy Premium shown above.)

**(Policy Schedule is continued on next page.)**

## POLICY SCHEDULE (continued)

Residual Disability/Recovery ...........................Page 8    Premium $532.02

### Maximum Benefit Periods For Residual Disability

**Injuries or Sickness:**
Residual Disability starting before
   your 61st birthday  .................................... To your 65th birthday
Residual Disability starting on or after your 61st birthday
   but before your 62nd birthday  ....................................  48 months
Residual Disability starting on or after your 62nd birthday
   but before your 63rd birthday  ....................................  42 months
Residual Disability starting on or after your 63rd birthday
   but before your 64th birthday  ....................................  36 months
Residual Disability starting on or after your 64th birthday
   but before your 65th birthday  ....................................  30 months

Cost of Living Adjustment ...........................Page 12    Premium $835.57

**(Policy Schedule is continued on next page.)**

## POLICY SCHEDULE (continued)

-------------------------------------UPDATE-------------------------------------

The benefits and premium named below will be automatically increased without evidence of insurability, as follows:

| UPDATE Increase Date | New Monthly Benefit for Total Disability | New Annual Premium for this Policy |
|---|---|---|
| 3/01/91 | $3,480.00 | $4,240.15 |
| 3/01/92 | $3,730.00 | $4,570.38 |
| 3/01/93 | $4,000.00 | $4,942.33 |
| 3/01/94 | $4,280.00 | $5,309.53 |
| 3/01/95 | $4,580.00 | $5,683.11 |

UPDATE Benefit increases are effective on the UPDATE Increase Dates shown.  If an UPDATE Increase Date shown does not coincide with a renewal date for this policy, the increase will be effective on the next renewal date.

An UPDATE Benefit increase will apply only to a period of disability which starts after the effective date of the increase. It must qualify as a separate period of disability.  If the premium for the policy is being waived on the effective date of the increase, the premium for the increase will also be waived. When you resume paying premiums for the policy, you must also start paying the premium for the increase.

You are entitled to UPDATE Benefit increases on the dates shown above. If you do not accept an increase, your refusal:

1.  forfeits your right on that UPDATE Increase Date to the UPDATE Benefit increase;
2.  postpones the schedule of benefit increases to the next UPDATE Increase Date, if any;
3.  adjusts the premiums for the remaining increases, if any, since such premiums are based on your attained age at the time of an UPDATE Benefit increase; and
4.  in no way extends the last UPDATE Increase Date shown above.

Each refusal of an UPDATE Benefit increase reduces the number of UPDATE Benefit increases to which you were entitled by one.

If you have not reached your 60th birthday on the last UPDATE Increase Date, you may apply for an amendment providing additional UPDATE Benefit increases.  You can do this by making formal application within the period of 60 days prior to and 31 days after the last UPDATE Increase Date.  Approval will be subject to our underwriting guidelines then in effect.

## DEFINITIONS

**Injuries** means accidental bodily injuries occurring while your policy is in force.

**Sickness** means sickness or disease which is first manifested while your policy is in force.

**Physician** means any person other than you who is licensed by law, and is acting within the scope of the license, to treat Injuries or Sickness which results in covered loss.

**Total Disability** or **totally disabled** means that due to Injuries or Sickness:

  1.  you are not able to perform the substantial and material duties of your occupation; and

  2.  you are receiving care by a Physician which is appropriate for the condition causing the disability.  We will waive this requirement when continued care would be of no benefit to you.

**your occupation** means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled.

**period of disability** means a period of disability starting while this policy is in force.  Successive periods will be deemed to be the same period unless the later period:

  1.  is due to a different or unrelated cause, or

  2.  starts more than six months after the end of the previous period;

in which event, the later period will be a new or separate period of disability.  A new Elimination Period must then be met.  And, a new Maximum Benefit Period will apply.

**Elimination Period** means the number of days of disability that must elapse in a period of disability before benefits become payable.  The number of days is shown on Page 3.  These days need not be consecutive; they can be accumulated during a period of disability to satisfy an Elimination Period.  Benefits are not payable, nor do they accrue, during an Elimination Period.

If the Elimination Period is fulfilled during a period of disability, the first sub-
sequent disability due to a different or unrelated cause will not require an Elimi-
nation Period, provided the first subsequent disability occurs within the twelve month
period from the end of the prior disability, during which the Elimination Period was
satisfied.

## EXCLUSIONS

We will not pay benefits for loss caused by:

1. war or any act of war, whether war is declared or not; or
2. normal pregnancy or childbirth, except we will pay benefits for loss caused by:
   a. complications of pregnancy; and
   b. normal pregnancy or childbirth on the later of the 91st day of disability
      or the day of disability following the Elimination Period.

   Complications are physical conditions physicians consider distinct from preg-
   nancy even though caused or worsened by pregnancy.  Examples of conditions that
   are not complications include false labor and morning sickness.

We will not pay benefits for loss we have excluded by name or specific description;
any such exclusion will appear in the Policy Schedule.

BENEFITS

## TOTAL DISABILITY
We will pay the Monthly Benefit for Total Disability shown on Page 3 as follows:

1. Benefits start on the day of Total Disability following the Elimination Period.
2. Benefits will continue while you are totally disabled during the period of disability but not beyond the Maximum Benefit Period.

In no event will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness or from both will not matter. We will pay benefits for the disability which provides the greater benefit.

## PRESUMPTIVE TOTAL DISABILITY — LOSS OF SPEECH, HEARING, SIGHT OR THE USE OF TWO LIMBS
You will be presumed totally disabled if Injuries or Sickness results in the entire and permanent loss of:

1. speech;
2. hearing in both ears;
3. the sight of both eyes; or
4. the use of both hands, or of both feet or of one hand and one foot.

You must present satisfactory proof of your loss. Your ability to work will not matter. Further medical care will not be required. Benefits will be paid according to the Total Disability provisions of this policy. But, benefits will start on the date of loss if earlier than the day benefits start as shown on Page 3. If loss occurs before your 65th birthday, the Monthly Benefit for Total Disability will be paid as long as you live regardless of the Maximum Benefit Period shown on Page 3.

## TRANSPLANT SURGERY
You might be disabled from the transplant of part of your body to another person. If so, we will consider it to be the result of a Sickness.

## COSMETIC SURGERY
You might be disabled from surgery to improve your appearance or to correct disfigurement. If so, we will consider it to be the result of a Sickness.

## WAIVER OF PREMIUM
After you have been totally disabled for 90 days during a period of disability, we will:

1. refund any premiums which became due and were paid while you were totally disabled; and
2. waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts. After it ends, to keep this policy in force, you must again pay any premiums which become due.

For premiums to be waived, you must give us satisfactory proof of disability.

**REHABILITATION**
Total Disability — Your participation in a program of occupational rehabilitation will not of itself be considered a recovery from Total Disability.

Expense — If, during a period of Total Disability, you notify us in writing that you want to participate in a program of occupational rehabilitation, we will consider paying for certain expenses you incur. The extent of our role will be determined by written agreement with you. Generally, we will pay for the reasonable cost of training and education which is not otherwise covered under health care insurance, workers' compensation or any public fund or program.

A program of occupational rehabilitation must be designed to help you return to work and be:

1. a formal program of rehabilitation at an accredited graduate school, college or business school, or at a licensed vocational school;
2. a recognized program operated by the federal or a state government; or
3. any other professionally planned rehabilitation program of training or educa- tion.

**BENEFITS WHEN POLICY RENEWED AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS LATER**
If this policy is continued in accordance with the "Conditional Right to Renew After Your 65th Birthday or Five Years, Whichever is Later" on Page 1, all of the benefit provisions on Pages 6 and 7 will be included in the continued policy. (If a Treatment of Injuries Benefit and/or a Preliminary Term Benefit is contained in this policy, it can be included in the continued policy. No other "Additional Benefits", if any, named on Page 3 will be included in the continued policy.) The Maximum Benefit Period starting while this policy is so continued is shown on Page 3. The Monthly Benefit for Total Disability will not change unless you choose to renew with a lesser amount.

**PAYMENT FOR PART OF MONTH**
If any payment under this policy is for part of a month, the daily rate will be 1/30th of the payment which would have been made if disability had continued for the whole month.

**RESIDUAL DISABILITY/RECOVERY BENEFITS** with Cost of Living Indexing of Prior Monthly Income
(Nothing in this provision limits the policy definition of "Total Disability.")

### DEFINITIONS

**Monthly Income** means your monthly income from salary, wages, bonuses, commissions, fees or other payments for services which you render or your business provides. Normal and usual business expenses are to be deducted; income taxes are not. Monthly Income must be earned. It does not include dividends, interest, rents, royalties, annuities, sick pay or benefits received for disability under a formal wage or salary continuation plan or other forms of unearned income.

Monthly Income can be credited to the period in which it is actually received or to the period in which it is earned. We allow either the cash or accrual accounting method. But, the same method must be used to determine the Prior Monthly Income and the Current Monthly Income during a period of disability. If you elect the cash accounting method we will not include income received for services rendered prior to the start of the period of disability in your current monthly income.

**Prior Monthly Income** means the greatest of:

1.  your average Monthly Income for the 12 months just prior to the start of the period of disability for which claim is made;
2.  your average Monthly Income for the year with the highest earnings of the last two years prior to the start of such period of disability; or
3.  your highest average Monthly Income for any two successive years of the last five years prior to the start of such period of disability.

**Current Monthly Income** means your Monthly Income in your occupation for each month of Residual Disability being claimed.

**Loss of Monthly Income** means the difference between Prior Monthly Income and Current Monthly Income. Loss of Monthly Income must be caused by the Residual Disability for which claim is made. The amount of the loss must be at least 20% of Prior Monthly Income to be deemed Loss of Monthly Income. If your loss is more than 75% of Prior Monthly Income, we will deem the loss to be 100%.

**Residual Disability** or **residually disabled,** during the Elimination Period, means that due to Injuries or Sickness:

1.  you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usual daily business duties for as much time as it would normally take you to do them;
2.  you have a Loss of Monthly Income in your occupation of at least 20%; and
3.  you are receiving care by a Physician which is appropriate for the condition causing disability. We will waive this requirement when continued care would be of no benefit to you.

After the Elimination Period has been satisfied, you are no longer required to have a loss of duties or time. **Residual Disability** or **residually disabled** then means that as a result of the same Injuries or Sickness:

1.  you have a Loss of Monthly Income in your occupation of at least 20%; and
2.  you are receiving care by a Physician which is appropriate for the condition causing the Loss of Monthly Income. We will waive this requirement when continued care would be of no benefit to you.

**Monthly Benefit for Total Disability** is shown on Page 3.  (It can be increased by certain other benefit provisions if they are included in your policy and are applicable.  If included, they are titled "Cost of Living Adjustments" and "Social Insurance Substitute Benefit.")

**Residual Disability Monthly Benefit** is the benefit payable under this provision.  It is determined monthly by this formula.  Each month, it equals:

$$\frac{\text{Loss of Monthly Income}}{\text{Prior Monthly Income}} \times \text{Monthly Benefit for Total Disability}$$

## RESIDUAL DISABILITY/RECOVERY BENEFITS

We will pay Residual Disability Monthly Benefits as follows:

1. Benefits start on the day of Residual Disability following the Elimination Period or, if later, after the end of compensable Total Disability during the same period of disability.
2. Benefits will continue while you are residually disabled during a period of disability but the combined period for which benefits for Total and Residual Disability are payable can not exceed the Maximum Benefit Period shown on Page 3.
3. The first six monthly payments for Residual Disability will be the greater of:
   a. 50% of the Monthly Benefit for Total Disability; or
   b. the Residual Disability Monthly Benefit determined for each month.

Residual Disability benefits will not be paid for any days for which Total Disability benefits are paid.

In no event will you be considered to have more than one disability at the same time.  The fact that a disability is caused by more than one Injury or Sickness or from both will not matter.  We will pay benefits for the disability which provides the greater benefit.

We can require any proof which we consider necessary to determine your Current Monthly Income and Prior Monthly Income.  Also, we or an independent accountant retained by us shall have the right to examine your financial records as often as we may reasonably require.

## COST OF LIVING INDEXING OF PRIOR MONTHLY INCOME
### (Applicable to benefits paid after the 12th month of a period of disability)

### Definitions

CPI-U means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If the CPI-U is discontinued or if its method of computation is changed, we may use another nationally published index. We will choose an index which is similar in scope and purpose to the CPI-U. The CPI-U will then mean the index which is chosen.

Review Date means each anniversary date of the start of a period of disability.

Review Period means a one year period ending on a Review Date.

Index Month means the calendar month three months prior to a Review Date. But, the first Index Month means the calendar month three months prior to the start of a period of disability. We will measure all changes in the CPI-U from the first Index Month.

Index Factor is used by us to determine your adjusted Prior Monthly Income for each Review Period. We will compute this factor by dividing the CPI-U for the latest Index Month by the CPI-U for the first Index Month. We will compute it on each Review Date during a period of disability.

### Adjusted Prior Monthly Income

If Injuries or Sickness results in a period of disability that lasts at least 12 months, we will compute Cost of Living Adjustments on each Review Date for Residual Disability Benefits. Monthly benefits which thereafter accrue during that period of disability will be adjusted by indexing your Prior Monthly Income as follows:

1.  On each Review Date, your Prior Monthly Income will be multiplied by your Index Factor. The result is your adjusted Prior Monthly Income. It will be used to figure your Loss of Monthly Income during the Review Period that follows. It will also be used in the formula to compute each Residual Disability Monthly Benefit payable during that Review Period.

    An increase in your Prior Monthly Income can cause your Loss of Monthly Income to be greater. This in turn can result in an increase in your Residual Disability Monthly Benefit. Other than your Index Factor (which is computed by using actual CPI-U values), there is no limit on the percent of increase in your Prior Monthly Income for a Review Period. If the CPI-U should go down, your adjusted Prior Monthly Income can decrease. But, it can never reduce below your Prior Monthly Income at the start of the period of disability.

2.  Indexing of your Prior Monthly Income will end on the earliest of:

    a.  the end of the period of disability (see Page 4);
    b.  the end of a benefit period; or
    c.  your 65th birthday.

If the computations end because of a or b above, disability benefits which can be paid for the first 12 months of a new period of disability will not include a Cost of Living Adjustment.  A new first Index Month and Review Date will apply to each new period of disability that lasts more than 12 months.

## WAIVER OF PREMIUM

For periods of disability which start before your 65th birthday, the Waiver of Premium provision on Page 6 is replaced by the following:

### "WAIVER OF PREMIUM – TOTAL DISABILITY AND RESIDUAL DISABILITY

If, during a period of disability, Injuries or Sickness results in more than 90 days of Total and/or Residual Disability, we will:

1.  refund any premiums which became due and were paid while you were so disabled; and
2.  waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts.  After it ends, to keep your policy in force, you must again pay any premiums which become due.

For premiums to be waived, you must give us satisfactory proof of disability."

NOTE:  All portions of this Residual Disability/Recovery Benefit expire on your 65th birthday, and no further premiums for it will be due, even though the policy may be renewed after that date and benefits may continue to be payable past your 65th birthday, as shown on Page 3.

**COST OF LIVING ADJUSTMENTS**
**(Applies to benefits payable after the 12th month of a period of disability)**

### DEFINITIONS

**CPI-U** means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If the CPI-U is discontinued or if its method of computation is changed, we may use another nationally published index. We will choose an index which is similar in scope and purpose to the CPI-U. The CPI-U will then mean the index which is chosen.

**Review Date** means each anniversary date of the start of a period of disability.

**Review Period** means a one year period ending on a Review Date.

**Index Month** means the calendar month three months prior to a Review Date. But, the first Index Month means the calendar month three months prior to the start of a period of disability. We will measure all changes in the CPI-U from the first Index Month.

**Benefit Factor** is determined by dividing the CPI-U for the latest Index Month by the CPI-U for the first Index Month. We will compute it on each Review Date during a period of disability. It will apply to the Review Period that follows.

**Monthly Benefit for Total Disability** is shown on Page 3. (It can be increased by a "Social Insurance Substitute (SIS) Benefit" if it is included in your policy and when it is applicable).

**Adjusted Monthly Benefit for Total Disability** is the Monthly Benefit for Total Disability multiplied by the Benefit Factor for a Review Period. But, an Adjusted Monthly Benefit for Total Disability can not:

   1. exceed the Monthly Benefit for Total Disability increased at 7% compounded annually from the first to the latest Index Month;
   2. exceed two times the Monthly Benefit for Total Disability; or
   3. be reduced below the amount of the Monthly Benefit for Total Disability.

### BENEFITS

If Injuries or Sickness results in a period of disability that lasts at least 12 months, we will compute Cost of Living Adjustments on each Review Date. Monthly benefits which thereafter accrue during that period of disability will be adjusted as follows:

   1. On each Review Date, we will compute the Benefit Factor and the Adjusted Monthly Benefit for Total Disability for the Review Period that follows.

   2. For any Monthly Benefit for Total Disability that accrues during a Review Period, we will pay instead the Adjusted Monthly Benefit for Total Disability.

   3. We will adjust any Residual Disability Monthly Benefit which accrues during a Review Period. To do this, we will use the Adjusted Monthly Benefit for Total Disability in the formula to determine each Residual Disability Monthly Benefit that is to be paid during that Review Period. It will be used in the formula instead of the Monthly Benefit for Total Disability.

4. Computations of Cost of Living Adjustments will end on the earliest of:

    a. the end of the period of disability (see Page 4);
    b. the end of a benefit period; or
    c. your 65th birthday.

If the computations end because of (a) or (b) above, benefit amounts will revert to those shown on Page 3. Benefits payable for the first 12 months of a new period of disability will not include a Cost of Living Adjustment. A new first Index Month and Review Date will apply to each new period of disability that lasts more than 12 months.

If the computations end because of (c) above and if any benefits continue to be payable after that date for a period of disability that started before your 64th birthday, we will apply to those benefits the Benefit Factor that last applied before your 65th birthday.

We will compute a Benefit Factor on the first Review Date for a period of disability that starts between your 64th and 65th birthdays. This factor will continue to apply to any benefits paid during that period of disability.

### QUALIFIED RIGHT TO INCREASE MONTHLY BENEFIT TO ADJUSTED AMOUNT

When you return to active and gainful full-time work after the end of a period of disability during which Cost of Living Adjustments were made, you may elect to increase the amount of the Monthly Benefit for Total Disability shown on Page 3. You may increase it to the amount of the Adjusted Monthly Benefit for Total Disability (less any SIS Benefit if included) which was used to determine the last monthly claim payment, if:

1. you have not reached your 60th birthday on the date you elect the increase; and
2. within 90 days after the period of disability ends, you make application to us on a form which we will furnish you upon request. On this form, you must confirm that you are actively and gainfully employed full time. Other evidence of insurability will not be required.

The effective date of the increase will be the first of the month after we approve your application for the increase. The required additional premium must be paid within 31 days of that date. Later premiums for the increase must be paid as part of the renewal premiums for the policy.

The premium for the increase will be based on your attained age at the time of the increase. It will also be based on our table of premium rates then in effect.

The increase in benefit will apply to new periods of disability which start after the effective date of the increase.

If you do not elect and obtain this increase, the Monthly Benefit for Total Disability will revert to the amount shown on Page 3 for new periods of disability.

NOTE: All portions of this COLA benefit expire on your 65th birthday, and no further premiums for it will be due, even though the policy may be renewed after that date; except that if any disability benefits continue to be payable after your 65th birthday for a period of disability that started before your 64th birthday we will apply to those benefits the Benefit Factor that last applied before your 65th birthday.

## PREMIUMS AND RENEWALS

**POLICY TERM**
The first term of this policy starts on the Effective Date shown on Page 3. It ends
on the First Renewal Date also shown. Later terms will be the periods for which you
pay renewal premiums when due. All terms will begin and end at 12:01 A.M., Standard
Time, at your home. The renewal premium for each term will be due on the day the
preceding term ends, subject to the grace period.

**GRACE PERIOD**
This policy has a 31 day grace period. This means that if a renewal premium is not
paid on or before the date it is due, it may be paid during the next 31 days. During
the grace period, the policy will stay in force.

**CONDITIONAL RIGHT TO RENEW AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS LATER;
PREMIUMS ARE NOT GUARANTEED**
(Continued from Page 1)
You can renew this policy as long as you are actively and gainfully working full time.
From time to time, we can require proof that you are actively and gainfully working
full time. If you stop working, (except by reason of Total Disability), this policy
will terminate; except that coverage will continue to the end of any period for which
premium has been accepted.

Premiums must be paid on time. They will be based on our table of rates by attained
age in effect at time of renewals for persons in your same rate class who are insured
under policies of this form. Other than your attained age, the factors used to de-
termine your rate class will be the same as those that applied to you on the Effective
Date of this policy.

The benefit provisions which will be included in the continued policy are described
on Page 7.

**REINSTATEMENT**
If a renewal premium is not paid before the grace period ends, the policy will lapse.
Later acceptance of the premium by us or by our agent authorized to accept payment
without requiring an application for reinstatement will reinstate this policy.

If we or our agent require an application, you will be given a conditional receipt
for the premium tendered. If the application is approved, the policy will be rein-
stated as of the approval date. Lacking such approval, the policy will be reinstated
on the 45th day after the date of the conditional receipt unless we have previously
written you of our disapproval.

The reinstated policy will cover only loss that results from Injuries which occur
after the date of reinstatement or Sickness which is first manifested more than 10
days after such date. In all other respects, your rights and ours will remain the
same, subject to any provisions noted on or attached to the reinstated policy.

## SUSPENSION DURING MILITARY SERVICE

If you enter full-time active duty in the military (land, sea or air) service of any nation or international authority, you may suspend your policy. But, you may not suspend the policy during active duty for training lasting 3 months or less. The policy will not be in force while it is suspended, and you will not be required to pay premiums. Upon receipt of your written request to suspend the policy, we will refund the pro-rata portion of any premium paid for a period beyond the date we receive your request.

If your full-time active duty in military service ends before your 65th birthday, you may place this policy back in force without evidence of insurability. Your coverage will start again when:

1. we have received your written request to place the policy back in force; and
2. you have paid the required pro-rata premium for coverage until the next premium due date.

However, your request and premium payment must be received by us within 90 days after the date your active duty in the military service ends. Premiums will be at the same rate that they would have been had your policy remained in force. The policy will not cover any loss due to Injuries which occur or Sickness which is first manifested while the policy is suspended. In all other respects you and we will have the same rights under the policy as before it was suspended.

## PREMIUM ADJUSTMENT AT DEATH

Any premium paid for a period beyond the date of your death will be refunded to your estate.


### CLAIMS

## NOTICE OF CLAIM

Written notice of claim must be given within 20 days after a covered loss starts or as soon as reasonably possible. The notice can be given to us at our home office, Chattanooga, Tennessee, or to our agent. Notice should include your name and the policy number.

## CLAIM FORMS

When we receive your notice of claim, we will send you claim forms for filing proof of loss. If these forms are not given to you within 15 days, you will meet the proof of loss requirements by giving us a written statement of the nature and extent of your loss. You must give us this proof within the time set forth in the Proof of Loss section.

## PROOF OF LOSS

If the policy provides for periodic payment for a continuing loss, you must give us written proof of loss within 90 days after the end of each period for which we are liable. For any other loss, written proof must be given within 90 days after such loss.

If it was not reasonably possible for you to give written proof in the time required, we will not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be furnished no later than one year after the 90 days unless you are legally unable to do so.

**TIME OF PAYMENT OF CLAIMS**
After we receive written proof of loss, we will pay monthly all benefits then due you for disability.  Benefits for any other loss covered by this policy will be paid as soon as we receive proper written proof.

**PAYMENT OF CLAIMS**
Benefits will be paid to you.  Any benefits unpaid at death will be paid to your estate.

If benefits are payable to your estate, we can pay benefits up to $3000 to someone related to you by blood or marriage whom we consider to be entitled to the benefits. We will be discharged to the extent of any such payment made in good faith.

**PHYSICAL EXAMINATIONS**
We, at our expense, have the right to have you examined as often as is reasonable while a claim is pending.

**MISSTATEMENT OF AGE**
If your age has been misstated, the benefits will be those the premium paid would have bought at the correct age.

**LEGAL ACTIONS**
You may not start a legal action to recover on this policy within 60 days after you give us required proof of loss.  You may not start such action after the expiration of the applicable statue of limitations from the time proof of loss is required.


GENERAL PROVISIONS

**ENTIRE CONTRACT**
This policy with the application and attached papers is the entire contract between you and us.  No change in this policy will be effective until approved by one of our officers.  This approval must be noted on or attached to this policy.  No agent may change this policy or waive any of its provisions.

**TIME LIMIT ON CERTAIN DEFENSES**

1.  After two years from the Effective Date of this policy no misstatements, except fraudulent misstatements, made by you in the application for this policy will be used to void the policy or to deny a claim for loss incurred or disability that starts after the end of such two year period.

2.  No claim for loss incurred or disability that starts after two years from the Effective Date of this policy will be reduced or denied on the ground that a sickness or physical condition not excluded by name or specific description had existed before the Effective Date of this policy.

**CONFORMITY WITH STATE STATUTES**
Any provision of this policy which, on its effective date, is in conflict with the laws of the state in which you reside on that date is changed to conform to the minimum requirements of those laws.

**ASSIGNMENT**
No assignment of interest in this policy will be binding on us until a copy is on file with us.  It must be approved by one of our officers.  We are not responsible for the validity of any assignment.

## SALARY ALLOTMENT PREMIUM PAYMENT

In consideration of the Salary Allotment Agreement between your employer and us, we agree to accept Policy Premiums as billed to your employer.

The conditions of this rider are:

1.  The policy will not continue in force beyond the time for which the premium is paid, subject to the grace period.

2.  If your employer fails to pay premiums when due because of clerical error or negligence, your insurance under the policy will not be prejudiced.

3.  This rider will be void if:

    a.  your employment with your employer ends;

    b.  the Salary Allotment Agreement is terminated; or

    c.  for any reason, your employer fails to pay premiums.

4.  If this rider is voided, premiums will be due and payable as required in the policy.

I hereby apply to Provident Life and Accident Insurance Company for insurance based on the following representations:

1. (a) Full name? (Print) *MELVYN D. TAYLOR*  (b) Sex? M ☒ F ☐
(c) Height? ft. *5* in. *8* (d) Weight? lbs. *155* (e) Date of Birth? *05-18-37* (f) Birthplace? *PA*

2. (a) Occupation: *ENDODONTIST*
(c) Employer *ROSENBAUM & TAYLOR, DDS, PA* (b) Exact duties: *DUTIES USUAL TO OCC.*
(d) Are you actively at work fulltime in the above occupation? Yes ☒ No ☐ (e) Length of Employment: *18 YEARS*

3. (a) Annual Earned Income From Your Occupation for Federal Tax Purposes (After Business Expenses, if any):

|  | Current Annual Rate of Earned Income | Actual Prior Calendar Year | Actual Year Prior to Last Calendar Year |
|---|---|---|---|
| Salary | $ *200,000* | $ *150,000* | $ *150,000* |
| Other (Describe) | $ | $ | $ |

(b) Unearned Income Prior 2 Years (Interest, Dividends, etc.)........$ *-0-* $ *-0-*

4. (a) Do you have or are you applying for other: (1) Individual, (2) Association, (3) Group, or (4) Employer Sick Pay disability income coverage; or (5) Overhead Expense disability coverage? Yes ☒ No ☐ (If "Yes" give details below)

| Company or Source | Type (1, 2, 3, 4 or 5) | Monthly Disability Amount | Benefit Period Accident | Sickness |
|---|---|---|---|---|
| *PLA* | *1* | *1000* | *L* | *L* |
| *UNUM* | *1* | *1500* | *L* | *L* |
| *PLA* | *5* | *3000* | *12 MOS* | *12 MOS* |
| | | *3625* | | |

(b) Do you have Social Security substitute coverage? Yes ☐ No ☒ Amount $_____ Company_____
(c) Is any coverage to be replaced by the coverage applied for? Yes ☐ No ☒ If "Yes", complete Form 1336-Q4.
(d) Does your net worth exceed $4,000,000? Yes ☐ No ☒ If "Yes" complete Form 1336-NW.
(e) Have you smoked cigarettes within the last 12 months? Yes ☐ No ☒

5. Have you ever been treated for or ever had any known indication of:

|  | | Yes | No |
|---|---|---|---|
| (a) High blood pressure, diabetes, cancer, arthritis, asthma, emphysema, or emotional, nervous or mental disorder, or disease or disorder of the eyes, ears or speech?................ | | ☐ | ☒ |
| (b) Disease or disorder of the neck, back, spine, heart, lungs, breasts, or the circulatory, digestive, urinary or reproductive systems?................ | | ☐ | ☒ |
| 6. Have you ever been diagnosed by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS) or Aids Related Complex (ARC)?................ | | ☐ | ☒ |
| 7. Have you ever used barbiturates, narcotics, excitants or hallucinogens, or ever sought help or treatment for their use or alcohol use?................ | | ☐ | ☒ |
| 8. Other than above, have you, within the past 5 years, had medical or surgical advice or treatment, had a physical examination, or been under observation for any disease or disorder?................ | | ☒ | ☐ |
| 9. Have you ever made application for Disability, Health or Life Insurance which has been declined, modified or rated? (If "Yes", give names of organization, kinds of insurance, dates and reasons.)................ | | ☐ | ☒ |
| 10. Do you have a physical impairment or deformity, or take any type of prescribed medication?................ | | ☒ | ☐ |

(Give details of "Yes" answers to Q5-10. Include diagnoses, dates, physicians and addresses)

*8) COLONOSCOPY, 12/89, DR. JACK LEISER, MD, FT. LAUDERDALE, FL*
*BLOOD PROFILE, ALL NEGATIVE*

*10) SYNTHROID, DAILY DUE TO THYROIDECTOMY 1978*

11. (a) Will your employer pay for all disability coverage to be carried by you with no portion of the premium to be included in your taxable income? Yes ☒ No ☐ (b) How much premium is paid with this application? *-0-*

To the best of my knowledge and belief, all of the foregoing statements and all of those in Part II, if any, of this Application are true, complete, and correctly stated. They are offered to Provident Life and Accident Insurance Company as the basis for any insurance issued on this Application. I have received a disclosure concerning: (1) the Medical Information Bureau; and (2) an investigative consumer report which may be made for use with this Application.

I authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organizations, institution or person that has any records or knowledge of me or my health, to give to Provident Life and Accident Insurance Company and/or its reinsurers any such information.

I authorize all seid sources, except the Medical Information Bureau, to give such records or knowledge to Equifax, Inc. This agency is employed by Provident Life and Accident Insurance Company to collect and send such information.

A copy of this authorization shall be as valid as the original. Signature of

Signed at *Ft. Lauderdale FL*  Proposed Insured X *Melvyn D. Taylor*
City    State
this *20* day of *February* 19 *90*  I certify that I have truly and accurately recorded on this application the information supplied by the Proposed Insured.

Field Office: *Miami (FLDG)*  *James L. Uliophe*
(Licensed Agent's or Broker's Signature)

Form 1336 *09785 0006 KSC*
AGENCY NO.

**LIFE AND ACCIDENT**     **ANSWERS MADE TO EXAMINER**

IN CONTINUATION OF AND FORMING PART OF APPLICATION F... INSURANCE TO
PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Chattanooga, Tennessee 37402

| Full Name of Person Examined | | | | Date of Birth | Occupation |
|---|---|---|---|---|---|
| (Last) TAYLOR, | (First) MELVYN | (Middle) D. | | 05-18-37 | DDS |

**1. a.** Name and address
of your personal physician (If none, ☐ Check)   (NONE)

**b.** Date and reason last consulted?

**c.** What treatment was given or medication prescribed?

**2.** Have you ever been treated for or ever had any known indication of:     Yes / No

a. Disorder of eyes, ears, nose, or throat? ........................... ☒ ☐

b. Dizziness, fainting, convulsions, headache; speech defect, paralysis or stroke; mental or nervous disorder? ........................... ☐ ☒

c. Shortness of breath, persistent hoarseness or cough, blood spitting; bronchitis, pleurisy, asthma, emphysema, tuberculosis or chronic respiratory disorder? .. ☐ ☒

d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels? ................ ☐ ☒

e. Jaundice, intestinal bleeding, ulcer, hernia, appendicitis, colitis, diverticulitis, hemorrhoids, recurrent indigestion, or other disorder of the stomach, intestines, liver or gallbladder? ........................... ☐ ☒

f. Sugar, albumin, blood or pus in urine; sexually transmitted disease; stone or other disorder of kidney, bladder, prostate or reproductive organs? ........ ☐ ☒

g. Diabetes; thyroid or other endocrine disorders? ...................... ☒ ☐

h. Neuritis, sciatica, rheumatism, arthritis, gout, or disorder of the muscles or bones, including the spine, back, or joints? ........................... ☐ ☒

i. Deformity, lameness or amputation? ........................... ☐ ☒

j. Disorder of skin, lymph glands, cyst, tumor, or cancer? ................ ☐ ☒

k. Allergies; anemia, hemophilia or leukemia? ........................... ☐ ☒

**3.** Are you now under observation or taking treatment? ................ ☒ ☐

**4.** Have you had any change in weight in the past year? ................ ☐ ☒

**5.** Other than above, have you within the past 5 years:

a. Had any mental or physical disorder not listed above? ................ ☐ ☒

b. Had a checkup, consultation, illness, injury, surgery? ................ ☒ ☐

c. Been a patient in a hospital, clinic, sanatorium, or other medical facility? .. ☐ ☒

d. Had electrocardiogram, X-ray, other diagnostic test? ................ ☒ ☐

e. Been advised to have any diagnostic test, hospitalization, or surgery which was not completed? ........................... ☐ ☒

**6.** Have you ever used barbiturates, narcotics, excitants or hallucinogens or ever sought treatment or been arrested for their use? ........................... ☐ ☒

**7.** Have you ever sought help or treatment for alcohol use? ................ ☐ ☒

**8. a.** Have you ever had any disorder of menstruation, pregnancy or of the reproductive organs or breasts? ........................... ☐ ☐

**b.** To the best of your knowledge and belief, are you now pregnant? .../..... ☐ ☐

**9.** Have you ever had military service deferment, rejection or discharge because of a physical or mental condition? ........................... ☐ ☒

**10.** Have you ever requested or received a pension, benefits, or payment because of an injury, sickness or disability? ........................... ☐ ☒

**11.** Family History: (Father, Mother, Brothers, Sisters) Tuberculosis, diabetes, cancer, high blood pressure, heart or kidney disease, mental illness or suicide? . ☐ ☒

**DETAILS of "Yes" answers. (IDENTIFY QUESTION NUMBER, CIRCLE APPLICABLE ITEMS:** Include diagnoses, dates, duration and names and addresses of all attending physicians and medical facilities.)

#2A) TONSILLECTOMY Age 5

#2A) CORRECTIVE lenses

#2g) 1978 THYROIDECTOMY
#3 (SUB-TOTAL)
MEMORIAL HOSPITAL
HOLLYWOOD, FL
DR NORMAL TALPINS, M.
2699 STIRLING RD
SYNTHROID (.02) FT Laude
1 TABLET DAILY. FL

#5B) COLONOSCOPY, BLOOD
#5B) 1989 - Dec profile
(RECTAL ITCHING (ALL N)
PROMPTED CONSULTATION)

DR. JACK LEISER, M.D.
2010 NE 48TH CT
FT LAUDERDALE, FL
DR TOM LESCHEK, M.D
1960 NE 47TH STREET
FT LAUDERDALE, FL

(For additional comments, use back side)

| a. | Age if Living? | Age at Death? | Cause of Death? | b. | Number Living? | Dead? | Age if Living? | Age at Death? | Cause of Death? |
|---|---|---|---|---|---|---|---|---|---|
| Father | 84 | | | Brothers | 1 | 0 | 49 | | |
| Mother | 72 | | | Sisters | 0 | 0 | | | |

The foregoing statements are full, complete, and true to the best of my knowledge and belief. Dated at FT Lauderdale, FL this One day of February 19 90

PARAMEDICAL ORGANIZATION
ASB/Biodimetric Profiles
2901 Stirling Road, #309
Fort Lauderdale, Florida 33312

Signature of person examined   William R. Vlyt

Witness _____ DiMuzio, paramedic

Signature of Examiner    Degree

L-20547 (Rev. 1-86)

---

**IMPORTANT NOTICE**

Please read the copy of the application attached to this policy. Omissions or misstatements in the application could cause an otherwise valid claim to be denied. Carefully check the application and write to us within 10 days if any information shown on it is not correct and complete, or if any past medical history has been left out of the application. This application is a part of the policy; and the policy was issued on the basis that the answers to all questions and the information shown on the application are correct and complete.

---

# D I S A B I L I T Y   I N C O M E   P O L I C Y

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE TO YOUR 65TH BIRTHDAY
OR FIVE YEARS, WHICHEVER IS LATER
CONDITIONAL RIGHT TO RENEW AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS
WHICHEVER IS LATER; PREMIUMS GUARANTEED TO YOUR 65TH BIRTHDAY**

**MELVYN D TAYLOR, the Insured
Policy Number 06-337-5031731**

**10 day right to examine your policy** - We want you to fully understand and be entirely satisfied with your policy. If you are not satisfied for any reason, you may return the policy to us, or to the agent through whom it was purchased, within 10 days of its receipt. We will refund any premiums you have paid within 10 days after we receive your notice of cancellation and the policy. It will be considered never to have been issued.

*DUPLICATE*

**EXHIBIT C**

337

In this policy, the words "you" and "your" mean you, the Insured named below; "we," "our" and "us" mean Provident Life and Accident Insurance Company.

We will pay benefits for covered loss resulting from Injuries or Sickness subject to all of the provisions of this policy. Loss must begin while the policy is in force.

This policy is a legal contract between you and us. It is issued in consideration of the payment in advance of the required premium and of your statements and representations in the application. A copy of your application is attached and made a part of the policy.

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE AT GUARANTEED PREMIUMS TO YOUR 65TH BIRTHDAY OR FOR FIVE YEARS, WHICHEVER IS LATER:** You can continue this policy to your 65th birthday or for five years, whichever is later, by paying premiums on time. The premiums shown on Page 3 are guaranteed to your 65th birthday or for five years, whichever is later.

**CONDITIONAL RIGHT TO RENEW AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS LATER; PREMIUMS ARE NOT GUARANTEED:** You can renew this policy as long as you are actively and gainfully working full time; there is no age limit. You must pay premiums on time at our premium rates then in effect at time of renewals. (For further conditions, see the page titled "Premiums and Renewals." See Page 7 for the benefit provisions that will be included in the continued policy.)

## GUIDE TO POLICY PROVISIONS

Page

Renewal Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Policy Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
UPDATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Definitions (Injuries, Sickness, Physician, Total Disability,
   your occupation, period of disability, Elimination Period) . . . . . . . . . 4
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Benefits
   Total Disability . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   Presumptive Total Disability . . . . . . . . . . . . . . . . . . . . . . 6
   Transplant Surgery . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   Cosmetic Surgery . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   Waiver of Premium . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   Rehabilitation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   Benefits When Policy Renewed After Your 65th Birthday
      or Five Years, Whichever is Later . . . . . . . . . . . . . . . . . . 7
   Payment for Part of Month . . . . . . . . . . . . . . . . . . . . . . . 7
Additional Benefits
   Residual Disability/Recovery (includes revised Waiver
      of Premium provision) . . . . . . . . . . . . . . . . . . . . . . . . 8
   Cost of Living Adjustment . . . . . . . . . . . . . . . . . . . . . . . 12
Premiums and Renewals
   Policy Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
   Grace Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
   Conditional Right to Renew After Your 65th Birthday or Five Years
      Whichever is Later - Premiums Are Not Guaranteed . . . . . . . . . . . 14
   Reinstatement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
   Suspension During Military Service . . . . . . . . . . . . . . . . . . . 15
   Premium Adjustment at Death . . . . . . . . . . . . . . . . . . . . . . 15
Claims
   Notice of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
   Claim Forms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
   Proof of Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
   Time of Payment of Claims . . . . . . . . . . . . . . . . . . . . . . . 16
   Payment of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
   Physical Examinations . . . . . . . . . . . . . . . . . . . . . . . . . 16
   Misstatement of Age . . . . . . . . . . . . . . . . . . . . . . . . . . 16
   Legal Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
General Provisions
   Entire Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
   Time Limit on Certain Defenses . . . . . . . . . . . . . . . . . . . . . 16
   Conformity With State Statutes . . . . . . . . . . . . . . . . . . . . . 16
   Assignment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Salary Allotment Premium Payment . . . . . . . . . . . . . . . . . . . . . 17

## READ YOUR POLICY CAREFULLY

### P O L I C Y   S C H E D U L E

Insured – MELVYN D TAYLOR                    Policy Number – 06-337-5031731
Effective Date – October 1, 1990             First Renewal Date – October 1, 1991
Issue Date – October 11, 1990                Renewal Term – Twelve Months

Policy Premium payable from October 1, 1990 until the first UPDATE Increase Date (see Page 3 (cont.)) is at the Annual rate of $2,508.23 on a non smoking premium basis.


Other Premium Paying Methods:
        $1,279.20 Semi-Annually
         $652.14 Quarterly
         $213.21 Monthly (Preauthorized Bank Draft only)

------------------------MONTHLY BENEFIT FOR TOTAL DISABILITY------------------------

$1,455.00

------------------------------ELIMINATION PERIOD------------------------------

30 days of Total and/or Residual Disability

An Elimination Period starting after your 65th birthday
must consist entirely of days of Total Disability

--------------------MAXIMUM BENEFIT PERIODS FOR TOTAL DISABILITY--------------------

**Injuries:**
    Total Disability starting before your 65th birthday ................    for Life
    Total Disability starting on or after your 65th birthday
     but before your 75th birthday ..................................   24 months
    Total Disability starting on or after your 75th birthday ..........   12 months

**Sickness:**
    Total Disability starting before your 60th birthday ................    for Life
    Total Disability starting on or after your 60th birthday
     but before your 61st birthday ........................  to your 65th birthday
    Total Disability starting on or after your 61st birthday
     but before your 62nd birthday ..................................   48 months
    Total Disability starting on or after your 62nd birthday
     but before your 63rd birthday ..................................   42 months
    Total Disability starting on or after your 63rd birthday
     but before your 64th birthday ..................................   36 months
    Total Disability starting on or after your 64th birthday
     but before your 65th birthday ..................................   30 months
    Total Disability starting on or after your 65th birthday
     but before your 75th birthday ..................................   24 months
    Total Disability starting on or after your 75th birthday ..........   12 months

------------------------------ADDITIONAL BENEFITS------------------------------
(The premium shown for each benefit is included in the Policy Premium shown above.)

**(Policy Schedule is continued on next page.)**

## POLICY SCHEDULE (continued)

Residual Disability/Recovery ...........................Page 8     Premium $272.37

### Maximum Benefit Periods For Residual Disability
Injuries or Sickness:
Residual Disability starting before
  your 61st birthday ................................... To your 65th birthday
Residual Disability starting on or after your 61st birthday
  but before your 62nd birthday ................................... 48 months
Residual Disability starting on or after your 62nd birthday
  but before your 63rd birthday ................................... 42 months
Residual Disability starting on or after your 63rd birthday
  but before your 64th birthday ................................... 36 months
Residual Disability starting on or after your 64th birthday
  but before your 65th birthday ................................... 30 months

Cost of Living Adjustment ...........................Page 12    Premium $380.77

(Policy Schedule is continued on next page.)

POLICY SCHEDULE (continued)

---------------------------------------UPDATE---------------------------------------

The benefits and premium named below will be automatically increased without evidence
of insurability, as follows:

| UPDATE<br>Increase<br>Date | New Monthly<br>Benefit for<br>Total Disability | New Annual<br>Premium for<br>this Policy |
|---|---|---|
| 10/01/91 | $1,565.00 | $2,703.96 |
| 10/01/92 | $1,675.00 | $2,907.70 |
| 10/01/93 | $1,795.00 | $3,122.41 |
| 10/01/94 | $1,925.00 | $3,346.81 |
| 10/01/95 | $2,065.00 | $3,579.64 |

UPDATE Benefit increases are effective on the UPDATE Increase Dates shown.  If an
UPDATE Increase Date shown does not coincide with a renewal date for this policy, the
increase will be effective on the next renewal date.

An UPDATE Benefit increase will apply only to a period of disability which starts
after the effective date of the increase. It must qualify as a separate period of
disability.  If the premium for the policy is being waived on the effective date of
the increase, the premium for the increase will also be waived.  When you resume paying
premiums for the policy, you must also start paying the premium for the increase.

You are entitled to UPDATE Benefit increases on the dates shown above. If you do not
accept an increase, your refusal:

1.  forfeits your right on that UPDATE Increase Date to the UPDATE Benefit increase;
2.  postpones the schedule of benefit increases to the next UPDATE Increase Date, if
    any;
3.  adjusts the premiums for the remaining increases, if any, since such premiums are
    based on your attained age at the time of an UPDATE Benefit increase; and
4.  in no way extends the last UPDATE Increase Date shown above.

Each refusal of an UPDATE Benefit increase reduces the number of UPDATE Benefit in-
creases to which you were entitled by one.

If you have not reached your 60th birthday on the last UPDATE Increase Date, you may
apply for an amendment providing additional UPDATE Benefit increases.  You can do this
by making formal application within the period of 60 days prior to and 31 days after
the last UPDATE Increase Date.  Approval will be subject to our underwriting guide-
lines then in effect.

## DEFINITIONS

**Injuries** means accidental bodily injuries occurring while your policy is in force.

**Sickness** means sickness or disease which is first manifested while your policy is in force.

**Physician** means any person other than you who is licensed by law, and is acting within the scope of the license, to treat Injuries or Sickness which results in covered loss.

**Total Disability** or **totally disabled** means that due to Injuries or Sickness:

1. you are not able to perform the substantial and material duties of your occupation; and

2. you are receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to you.

**your occupation** means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled.

**period of disability** means a period of disability starting while this policy is in force. Successive periods will be deemed to be the same period unless the later period:

1. is due to a different or unrelated cause, or

2. starts more than six months after the end of the previous period;

in which event, the later period will be a new or separate period of disability. A new Elimination Period must then be met. And, a new Maximum Benefit Period will apply.

**Elimination Period** means the number of days of disability that must elapse in a period of disability before benefits become payable. The number of days is shown on Page 3. These days need not be consecutive; they can be accumulated during a period of disability to satisfy an Elimination Period. Benefits are not payable, nor do they accrue, during an Elimination Period.

## EXCLUSIONS

We will not pay benefits for loss caused by:

1. war or any act of war, whether war is declared or not; or
2. normal pregnancy or childbirth, except we will pay benefits for loss caused by:
   a. complications of pregnancy; and
   b. normal pregnancy or childbirth on the later of the 91st day of disability or the day of disability following the Elimination Period.

   Complications are physical conditions physicians consider distinct from pregnancy even though caused or worsened by pregnancy.  Examples of conditions that are not complications include false labor and morning sickness.

We will not pay benefits for loss we have excluded by name or specific description; any such exclusion will appear in the Policy Schedule.

BENEFITS

## TOTAL DISABILITY

We will pay the Monthly Benefit for Total Disability shown on Page 3 as follows:

1. Benefits start on the day of Total Disability following the Elimination Period.
2. Benefits will continue while you are totally disabled during the period of disability but not beyond the Maximum Benefit Period.

In no event will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness or from both will not matter. We will pay benefits for the disability which provides the greater benefit.

## PRESUMPTIVE TOTAL DISABILITY — LOSS OF SPEECH, HEARING, SIGHT OR THE USE OF TWO LIMBS

You will be presumed totally disabled if Injuries or Sickness results in the entire and permanent loss of:

1. speech;
2. hearing in both ears;
3. the sight of both eyes; or
4. the use of both hands, or of both feet or of one hand and one foot.

You must present satisfactory proof of your loss. Your ability to work will not matter. Further medical care will not be required. Benefits will be paid according to the Total Disability provisions of this policy. But, benefits will start on the date of loss if earlier than the day benefits start as shown on Page 3. If loss occurs before your 65th birthday, the Monthly Benefit for Total Disability will be paid as long as you live regardless of the Maximum Benefit Period shown on Page 3.

## TRANSPLANT SURGERY

You might be disabled from the transplant of part of your body to another person. If so, we will consider it to be the result of a Sickness.

## COSMETIC SURGERY

You might be disabled from surgery to improve your appearance or to correct disfigurement. If so, we will consider it to be the result of a Sickness.

## WAIVER OF PREMIUM

After you have been totally disabled for 90 days during a period of disability, we will:

1. refund any premiums which became due and were paid while you were totally disabled; and
2. waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts. After it ends, to keep this policy in force, you must again pay any premiums which become due.

For premiums to be waived, you must give us satisfactory proof of disability.

.

**REHABILITATION**
Total Disability – Your participation in a program of occupational rehabilitation will
not of itself be considered a recovery from Total Disability.

Expense – If, during a period of Total Disability, you notify us in writing that you
want to participate in a program of occupational rehabilitation, we will consider
paying for certain expenses you incur.  The extent of our role will be determined by
written agreement with you.   Generally, we will pay for the reasonable cost of
training and education which is not otherwise covered under health care insurance,
workers' compensation or any public fund or program.

A program of occupational rehabilitation must be designed to help you return to work
and be:

   1.   a formal program of rehabilitation at an accredited graduate school, college
        or business school, or at a licensed vocational school;
   2.   a recognized program operated by the federal or a state government; or
   3.   any other professionally planned rehabilitation program of training or educa-
        tion.

**BENEFITS WHEN POLICY RENEWED AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS
LATER**
If this policy is continued in accordance with the "Conditional Right to Renew After
Your 65th Birthday or Five Years, Whichever is Later" on Page 1, all of the benefit
provisions on Pages 6 and 7 will be included in the continued policy. (If a Treatment
of Injuries Benefit and/or a Preliminary Term Benefit is contained in this policy,
it can be included in the continued policy. No other "Additional Benefits", if any,
named on Page 3 will be included in the continued policy.) The Maximum Benefit Period
starting while this policy is so continued is shown on Page 3. The Monthly Benefit
for Total Disability will not change unless you choose to renew with a lesser amount.

**PAYMENT FOR PART OF MONTH**
If any payment under this policy is for part of a month, the daily rate will be 1/30th
of the payment which would have been made if disability had continued for the whole
month.

**RESIDUAL DISABILITY/RECOVERY BENEFITS** with Cost of Living Indexing of Prior Monthly Income
(Nothing in this provision limits the policy definition of "Total Disability.")

## DEFINITIONS

**Monthly Income** means your monthly income from salary, wages, bonuses, commissions, fees or other payments for services which you render or your business provides. Normal and usual business expenses are to be deducted; income taxes are not. Monthly Income must be earned. It does not include dividends, interest, rents, royalties, annuities, sick pay or benefits received for disability under a formal wage or salary continuation plan or other forms of unearned income.

Monthly Income can be credited to the period in which it is actually received or to the period in which it is earned. We allow either the cash or accrual accounting method. But, the same method must be used to determine the Prior Monthly Income and the Current Monthly Income during a period of disability. If you elect the cash accounting method we will not include income received for services rendered prior to the start of the period of disability in your current monthly income.

**Prior Monthly Income** means the greatest of:

1. your average Monthly Income for the 12 months just prior to the start of the period of disability for which claim is made;
2. your average Monthly Income for the year with the highest earnings of the last two years prior to the start of such period of disability; or
3. your highest average Monthly Income for any two successive years of the last five years prior to the start of such period of disability.

**Current Monthly Income** means your Monthly Income in your occupation for each month of Residual Disability being claimed.

**Loss of Monthly Income** means the difference between Prior Monthly Income and Current Monthly Income. Loss of Monthly Income must be caused by the Residual Disability for which claim is made. The amount of the loss must be at least 20% of Prior Monthly Income to be deemed Loss of Monthly Income. If your loss is more than 75% of Prior Monthly Income, we will deem the loss to be 100%.

**Residual Disability or residually disabled,** during the Elimination Period, means that due to Injuries or Sickness:

1. you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usual daily business duties for as much time as it would normally take you to do them;
2. you have a Loss of Monthly Income in your occupation of at least 20%; and
3. you are receiving care by a Physician which is appropriate for the condition causing disability. We will waive this requirement when continued care would be of no benefit to you.

After the Elimination Period has been satisfied, you are no longer required to have a loss of duties or time. **Residual Disability or residually disabled** then means that as a result of the same Injuries or Sickness:

1. you have a Loss of Monthly Income in your occupation of at least 20%; and
2. you are receiving care by a Physician which is appropriate for the condition causing the Loss of Monthly Income. We will waive this requirement when continued care would be of no benefit to you.

**Monthly Benefit for Total Disability** is shown on Page 3.  (It can be increased by certain other benefit provisions if they are included in your policy and are applicable.  If included, they are titled "Cost of Living Adjustments" and "Social Insurance Substitute Benefit.")

**Residual Disability Monthly Benefit** is the benefit payable under this provision.  It is determined monthly by this formula.  Each month, it equals:

$$\frac{\text{Loss of Monthly Income}}{\text{Prior Monthly Income}} \times \text{Monthly Benefit for Total Disability}$$

## RESIDUAL DISABILITY/RECOVERY BENEFITS

We will pay Residual Disability Monthly Benefits as follows:

1.  Benefits start on the day of Residual Disability following the Elimination Period or, if later, after the end of compensable Total Disability during the same period of disability.
2.  Benefits will continue while you are residually disabled during a period of disability but the combined period for which benefits for Total and Residual Disability are payable can not exceed the Maximum Benefit Period shown on Page 3.
3.  The first six monthly payments for Residual Disability will be the greater of:
    a.  50% of the Monthly Benefit for Total Disability; or
    b.  the Residual Disability Monthly Benefit determined for each month.

Residual Disability benefits will not be paid for any days for which Total Disability benefits are paid.

In no event will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness or from both will not matter.  We will pay benefits for the disability which provides the greater benefit.

We can require any proof which we consider necessary to determine your Current Monthly Income and Prior Monthly Income.  Also, we or an independent accountant retained by us shall have the right to examine your financial records as often as we may reasonably require.

### COST OF LIVING INDEXING OF PRIOR MONTHLY INCOME
### (Applicable to benefits paid after the 12th month of a period of disability)

#### Definitions

CPI-U means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If the CPI-U is discontinued or if its method of computation is changed, we may use another nationally published index. We will choose an index which is similar in scope and purpose to the CPI-U. The CPI-U will then mean the index which is chosen.

Review Date means each anniversary date of the start of a period of disability.

Review Period means a one year period ending on a Review Date.

Index Month means the calendar month three months prior to a Review Date. But, the first Index Month means the calendar month three months prior to the start of a period of disability. We will measure all changes in the CPI-U from the first Index Month.

Index Factor is used by us to determine your adjusted Prior Monthly Income for each Review Period. We will compute this factor by dividing the CPI-U for the latest Index Month by the CPI-U for the first Index Month. We will compute it on each Review Date during a period of disability.

#### Adjusted Prior Monthly Income

If Injuries or Sickness results in a period of disability that lasts at least 12 months, we will compute Cost of Living Adjustments on each Review Date for Residual Disability Benefits. Monthly benefits which thereafter accrue during that period of disability will be adjusted by indexing your Prior Monthly Income as follows:

1.  On each Review Date, your Prior Monthly Income will be multiplied by your Index Factor. The result is your adjusted Prior Monthly Income. It will be used to figure your Loss of Monthly Income during the Review Period that follows. It will also be used in the formula to compute each Residual Disability Monthly Benefit payable during that Review Period.

    An increase in your Prior Monthly Income can cause your Loss of Monthly Income to be greater. This in turn can result in an increase in your Residual Disability Monthly Benefit. Other than your Index Factor (which is computed by using actual CPI-U values), there is no limit on the percent of increase in your Prior Monthly Income for a Review Period. If the CPI-U should go down, your adjusted Prior Monthly Income can decrease. But, it can never reduce below your Prior Monthly Income at the start of the period of disability.

2.  Indexing of your Prior Monthly Income will end on the earliest of:

   a.  the end of the period of disability (see Page 4);
   b.  the end of a benefit period; or
   c.  your 65th birthday.

If the computations end because of a or b above, disability benefits which can be paid for the first 12 months of a new period of disability will not include a Cost of Living Adjustment.  A new first Index Month and Review Date will apply to each new period of disability that lasts more than 12 months.

WAIVER OF PREMIUM

For periods of disability which start before your 65th birthday, the Waiver of Premium provision on Page 6 is replaced by the following:

"WAIVER OF PREMIUM – TOTAL DISABILITY AND RESIDUAL DISABILITY

If, during a period of disability, Injuries or Sickness results in more than 90 days of Total and/or Residual Disability, we will:

1.  refund any premiums which became due and were paid while you were so disabled; and
2.  waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts.  After it ends, to keep your policy in force, you must again pay any premiums which become due.

For premiums to be waived, you must give us satisfactory proof of disability."

NOTE:  All portions of this Residual Disability/Recovery Benefit expire on your 65th birthday, and no further premiums for it will be due, even though the policy may be renewed after that date and benefits may continue to be payable past your 65th birthday, as shown on Page 3.

**COST OF LIVING ADJUSTMENTS**
**(Applies to benefits payable after the 12th month of a period of disability)**

### DEFINITIONS

**CPI-U** means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If the CPI-U is discontinued or if its method of computation is changed, we may use another nationally published index. We will choose an index which is similar in scope and purpose to the CPI-U. The CPI-U will then mean the index which is chosen.

**Review Date** means each anniversary date of the start of a period of disability.

**Review Period** means a one year period ending on a Review Date.

**Index Month** means the calendar month three months prior to a Review Date. But, the first Index Month means the calendar month three months prior to the start of a period of disability. We will measure all changes in the CPI-U from the first Index Month.

**Benefit Factor** is determined by dividing the CPI-U for the latest Index Month by the CPI-U for the first Index Month. We will compute it on each Review Date during a period of disability. It will apply to the Review Period that follows.

**Monthly Benefit for Total Disability** is shown on Page 3. (It can be increased by a "Social Insurance Substitute (SIS) Benefit" if it is included in your policy and when it is applicable).

**Adjusted Monthly Benefit for Total Disability** is the Monthly Benefit for Total Disability multiplied by the Benefit Factor for a Review Period. But, an Adjusted Monthly Benefit for Total Disability can not:

1. exceed the Monthly Benefit for Total Disability increased at 7% compounded annually from the first to the latest Index Month;
2. exceed two times the Monthly Benefit for Total Disability; or
3. be reduced below the amount of the Monthly Benefit for Total Disability..

### BENEFITS

If Injuries or Sickness results in a period of disability that lasts at least 12 months, we will compute Cost of Living Adjustments on each Review Date. Monthly benefits which thereafter accrue during that period of disability will be adjusted as follows:

1. On each Review Date, we will compute the Benefit Factor and the Adjusted Monthly Benefit for Total Disability for the Review Period that follows.

2. For any Monthly Benefit for Total Disability that accrues during a Review Period, we will pay instead the Adjusted Monthly Benefit for Total Disability.

3. We will adjust any Residual Disability Monthly Benefit which accrues during a Review Period. To do this, we will use the Adjusted Monthly Benefit for Total Disability in the formula to determine each Residual Disability Monthly Benefit that is to be paid during that Review Period. It will be used in the formula instead of the Monthly Benefit for Total Disability.

337-COLA-MBO          MELVYN D TAYLOR 06-337-5031731          Page 12

4.  Computations of Cost of Living Adjustments will end on the earliest of:

    a.  the end of the period of disability (see Page 4);
    b.  the end of a benefit period; or
    c.  your 65th birthday.

If the computations end because of (a) or (b) above, benefit amounts will revert to those shown on Page 3.  Benefits payable for the first 12 months of a new period of disability will not include a Cost of Living Adjustment.  A new first Index Month and Review Date will apply to each new period of disability that lasts more than 12 months.

If the computations end because of (c) above and if any benefits continue to be payable after that date for a period of disability that started before your 64th birthday, we will apply to those benefits the Benefit Factor that last applied before your 65th birthday.

We will compute a Benefit Factor on the first Review Date for a period of disability that starts between your 64th and 65th birthdays.  This factor will continue to apply to any benefits paid during that period of disability.

### QUALIFIED RIGHT TO INCREASE MONTHLY BENEFIT TO ADJUSTED AMOUNT

When you return to active and gainful full-time work after the end of a period of disability during which Cost of Living Adjustments were made, you may elect to increase the amount of the Monthly Benefit for Total Disability shown on Page 3.  You may increase it to the amount of the Adjusted Monthly Benefit for Total Disability (less any SIS Benefit if included) which was used to determine the last monthly claim payment, if:

1.  you have not reached your 60th birthday on the date you elect the increase; and
2.  within 90 days after the period of disability ends, you make application to us on a form which we will furnish you upon request. On this form, you must confirm that you are actively and gainfully employed full time.  Other evidence of insurability will not be required.

The effective date of the increase will be the first of the month after we approve your application for the increase.  The required additional premium must be paid within 31 days of that date.  Later premiums for the increase must be paid as part of the renewal premiums for the policy.

The premium for the increase will be based on your attained age at the time of the increase.  It will also be based on our table of premium rates then in effect.

The increase in benefit will apply to new periods of disability which start after the effective date of the increase.

If you do not elect and obtain this increase, the Monthly Benefit for Total Disability will revert to the amount shown on Page 3 for new periods of disability.

NOTE:  All portions of this COLA benefit expire on your 65th birthday, and no further premiums for it will be due, even though the policy may be renewed after that date; except that if any disability benefits continue to be payable after your 65th birthday for a period of disability that started before your 64th birthday we will apply to those benefits the Benefit Factor that last applied before your 65th birthday.

## PREMIUMS AND RENEWALS

### POLICY TERM
The first term of this policy starts on the Effective Date shown on Page 3. It ends on the First Renewal Date also shown. Later terms will be the periods for which you pay renewal premiums when due. All terms will begin and end at 12:01 A.M., Standard Time, at your home. The renewal premium for each term will be due on the day the preceding term ends, subject to the grace period.

### GRACE PERIOD
This policy has a 31 day grace period. This means that if a renewal premium is not paid on or before the date it is due, it may be paid during the next 31 days. During the grace period, the policy will stay in force.

### CONDITIONAL RIGHT TO RENEW AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS LATER; PREMIUMS ARE NOT GUARANTEED
(Continued from Page 1)
You can renew this policy as long as you are actively and gainfully working full time. From time to time, we can require proof that you are actively and gainfully working full time. If you stop working, (except by reason of Total Disability), this policy will terminate; except that coverage will continue to the end of any period for which premium has been accepted.

Premiums must be paid on time. They will be based on our table of rates by attained age in effect at time of renewals for persons in your same rate class who are insured under policies of this form. Other than your attained age, the factors used to determine your rate class will be the same as those that applied to you on the Effective Date of this policy.

The benefit provisions which will be included in the continued policy are described on Page 7.

### REINSTATEMENT
If a renewal premium is not paid before the grace period ends, the policy will lapse. Later acceptance of the premium by us or by our agent authorized to accept payment without requiring an application for reinstatement will reinstate this policy.

If we or our agent require an application, you will be given a conditional receipt for the premium tendered. If the application is approved, the policy will be reinstated as of the approval date. Lacking such approval, the policy will be reinstated on the 45th day after the date of the conditional receipt unless we have previously written you of our disapproval.

The reinstated policy will cover only loss that results from Injuries which occur after the date of reinstatement or Sickness which is first manifested more than 10 days after such date. In all other respects, your rights and ours will remain the same, subject to any provisions noted on or attached to the reinstated policy.

## SUSPENSION DURING MILITARY SERVICE

If you enter full-time active duty in the military (land, sea or air) service of any nation or international authority, you may suspend your policy. But, you may not suspend the policy during active duty for training lasting 3 months or less. The policy will not be in force while it is suspended, and you will not be required to pay premiums. Upon receipt of your written request to suspend the policy, we will refund the pro-rata portion of any premium paid for a period beyond the date we receive your request.

If your full-time active duty in military service ends before your 65th birthday, you may place this policy back in force without evidence of insurability. Your coverage will start again when:

1. we have received your written request to place the policy back in force; and
2. you have paid the required pro-rata premium for coverage until the next premium due date.

However, your request and premium payment must be received by us within 90 days after the date your active duty in the military service ends. Premiums will be at the same rate that they would have been had your policy remained in force. The policy will not cover any loss due to Injuries which occur or Sickness which is first manifested while the policy is suspended. In all other respects you and we will have the same rights under the policy as before it was suspended.

## PREMIUM ADJUSTMENT AT DEATH

Any premium paid for a period beyond the date of your death will be refunded to your estate.

CLAIMS

## NOTICE OF CLAIM

Written notice of claim must be given within 20 days after a covered loss starts or as soon as reasonably possible. The notice can be given to us at our home office, Chattanooga, Tennessee, or to our agent. Notice should include your name and the policy number.

## CLAIM FORMS

When we receive your notice of claim, we will send you claim forms for filing proof of loss. If these forms are not given to you within 15 days, you will meet the proof of loss requirements by giving us a written statement of the nature and extent of your loss. You must give us this proof within the time set forth in the Proof of Loss section.

## PROOF OF LOSS

If the policy provides for periodic payment for a continuing loss, you must give us written proof of loss within 90 days after the end of each period for which we are liable. For any other loss, written proof must be given within 90 days after such loss.

If it was not reasonably possible for you to give written proof in the time required, we will not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be furnished no later than one year after the 90 days unless you are legally unable to do so.

**TIME OF PAYMENT OF CLAIMS**
After we receive written proof of loss, we will pay monthly all benefits then due you
for disability.  Benefits for any other loss covered by this policy will be paid as
soon as we receive proper written proof.

**PAYMENT OF CLAIMS**
Benefits will be paid to you.  Any benefits unpaid at death will be paid to your es-
tate.

If benefits are payable to your estate, we can pay benefits up to $3000 to someone
related to you by blood or marriage whom we consider to be entitled to the benefits.
We will be discharged to the extent of any such payment made in good faith.

**PHYSICAL EXAMINATIONS**
We, at our expense, have the right to have you examined as often as is reasonable while
a claim is pending.

**MISSTATEMENT OF AGE**
If your age has been misstated, the benefits will be those the premium paid would have
bought at the correct age.

**LEGAL ACTIONS**
You may not start a legal action to recover on this policy within 60 days after you
give us required proof of loss.  You may not start such action after the expiration
of the applicable statue of limitations from the time proof of loss is required.

<strong>GENERAL PROVISIONS</strong>

**ENTIRE CONTRACT**
This policy with the application and attached papers is the entire contract between
you and us.  No change in this policy will be effective until approved by one of our
officers.  This approval must be noted on or attached to this policy.  No agent may
change this policy or waive any of its provisions.

**TIME LIMIT ON CERTAIN DEFENSES**

  1. After two years from the Effective Date of this policy no misstatements, except
     fraudulent misstatements, made by you in the application for this policy will
     be used to void the policy or to deny a claim for loss incurred or disability
     that starts after the end of such two year period.

  2. No claim for loss incurred or disability that starts after two years from the
     Effective Date of this policy will be reduced or denied on the ground that a
     sickness or physical condition not excluded by name or specific description had
     existed before the Effective Date of this policy.

**CONFORMITY WITH STATE STATUTES**
Any provision of this policy which, on its effective date, is in conflict with the
laws of the state in which you reside on that date is changed to conform to the minimum
requirements of those laws.

**ASSIGNMENT**
No assignment of interest in this policy will be binding on us until a copy is on file
with us.  It must be approved by one of our officers.  We are not responsible for the
validity of any assignment.

### SALARY ALLOTMENT PREMIUM PAYMENT

In consideration of the Salary Allotment Agreement between your employer and us, we agree to accept Policy Premiums as billed to your employer.

The conditions of this rider are:

1. The policy will not continue in force beyond the time for which the premium is paid, subject to the grace period.

2. If your employer fails to pay premiums when due because of clerical error or negligence, your insurance under the policy will not be prejudiced.

3. This rider will be void if:

   a. your employment with your employer ends;

   b. the Salary Allotment Agreement is terminated; or

   c. for any reason, your employer fails to pay premiums.

4. If this rider is voided, premiums will be due and payable as required in the policy.

N°. 522691

I hereby apply to Provident Life and Accident Insurance Company for insurance based on the following representations:

1. (a) Full name? (Print) *MELVYN D. TAYLOR*     (b) Sex? M ☒ F ☐

(c) Height? ft. *5* in. *8* (d) Weight? lbs. *152* (e) Date of Birth? *05-18-37* (f) Birthplace? *PA*

2. (a) Occupation: *ENDODONTIST* (b) Exact duties: *DUTIES USUAL TO Occ.*

(c) Employer: *ROSENDALM & TRUKOE, DDS, PA*

(d) Are you actively at work fulltime in the above occupation? Yes ☒ No ☐ (e) Length of Employment: *18 YEARS*

3. (a) Annual Earned Income From Your Occupation for Federal Tax Purposes (After Business Expenses, if any):

| | Current Annual Rate of Earned Income | Actual Prior Calendar Year | Actual Year Prior to Last Calendar Year |
|---|---|---|---|
| Salary | $ *248,000* | $ *200,000* | $ *150,000* |
| Other (Describe) | $ | $ | $ |

(b) Unearned Income Prior 2 Years (Interest, Dividends, etc.)............$ *—0* $ *—0*

4. (a) Do you have or are you applying for other: (1) Individual, (2) Association, (3) Group, or (4) Employer Sick Pay disability income coverage; or (5) Overhead Expense disability coverage? Yes ☐ No☐ (If "Yes" give details below)

| Company or Source | Type (1, 2, 3, 4 or 5) | Monthly Disability Amount | Benefit Period Accident | Sickness |
|---|---|---|---|---|
| *PROVIDENT L&A* | *5* | *3000* | *12* | *12* |
| *PROVIDENT L&A* | *1* | *7945* | | |
| *UNUM* | *1* | *1500* | *L* | *L* |

(b) Do you have Social Security substitute coverage? Yes ☐ No ☒ Amount $_____Company_____
(c) Is any coverage to be replaced by the coverage applied for? Yes ☐ No ☒ If "Yes", complete Form 1336-Q4.
(d) Does your net worth exceed $4,000,000? Yes ☐ No ☒ If "Yes" complete Form 1336-NW.
(e) Have you smoked cigarettes within the last 12 months? Yes ☐ No ☒

5. Have you ever been treated for or ever had any known indication of:

| | | Yes | No |
|---|---|---|---|
| (a) | High blood pressure, diabetes, cancer, arthritis, asthma, emphysema, or emotional, nervous or mental disorder, or disease or disorder of the eyes, ears or speech? | ☐ | ☒ |
| (b) | Disease or disorder of the neck, back, spine, heart, lungs, breasts, or the circulatory, digestive, urinary or reproductive systems? | ☐ | ☒ |
| 6. | Have you ever been diagnosed by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS) or Aids Related Complex (ARC)?. . . . . . . . . . | ☐ | ☒ |
| 7. | Have you ever used barbiturates, narcotics, excitants or hallucinogens, or ever sought help or treatment for their use or alcohol use?. . . . . . . . . . | ☐ | ☒ |
| 8. | Other than above, have you, within the past 5 years, had medical or surgical advice or treatment, had a physical examination, or been under observation for any disease or disorder?. . . . . . . . . . | ☒ | ☐ |
| 9. | Have you ever made application for Disability, Health or Life Insurance which has been declined, modified or rated? (If "Yes", give names of organization, kinds of insurance, dates and reasons.). . . . . . . . | ☐ | ☒ |
| 10. | Do you have a physical impairment or deformity, or take any type of prescribed medication?. . . | ☒ | ☐ |

(Give details of "Yes" answers to Q5-10. Include diagnoses, dates, physicians and addresses)

*8) complete physical & colonoscopy, all tests fine. North Ridge Hosp.*
*out-patient checkup. Dr. Jack Giesee  5901 N. Dixie Hwy*
*3901 E. 48 Ct.  Ft. Lauderdale, FL.  Ft. Lauderdale*
*10) Rx Synthroid since thyroidectomy in 1978.*

11.(a) Will your employer pay for all disability coverage to be carried by you with no portion of the premium to be included in your taxable income? Yes ☒ No ☐ (b) How much premium is paid with this application? *—0—*

To the best of my knowledge and belief, all of the foregoing statements and all of those in Part II, if any, of this Application are true, complete, and correctly stated. They are offered to Provident Life and Accident Insurance Company as the basis for any insurance issued on this Application. I have received a disclosure concerning: (1) the Medical Information Bureau; and (2) an investigative consumer report which may be made for use with this Application.

I authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organizations, institution or person that has any records or knowledge of me or my health, to give to Provident Life and Accident Insurance Company and/or its reinsurers any such information.

I authorize all said sources, except the Medical Information Bureau, to give such records or knowledge to Equifax, Inc. This agency is employed by Provident Life and Accident Insurance Company to collect and send such information.

A copy of this authorization shall be as valid as the original. Signature of Proposed Insured X *Melvyn D. Taylor*

Signed at *Ft. Lauderdale, FL*
    City         State

I certify that I have truly and accurately recorded on this application the information supplied by the Proposed Insured.

this *10* day of *July* 19*90*

Field Office: *Miami (FLDO)*

X _____
(Licensed Agent's or Broker's Signature)

Form 1336    AGENCY NO. *00785*   *0006*   *KEC*

**EXHIBIT "D"**

Countersigned by _____

Licensed Resident Agent

## IMPORTANT NOTICE

Please read the copy of the application attached to this policy. Omissions or mis-statements in the application could cause an otherwise valid claim to be denied. Carefully check the application and write to us within 10 days if any information shown on it is not correct and complete, or if any past medical history has been left out of the application. This application is a part of the policy; and the policy was issued on the basis that the answers to all questions and the information shown on the application are correct and complete.

## D I S A B I L I T Y   I N C O M E   P O L I C Y

### NON-CANCELLABLE AND GUARANTEED CONTINUABLE TO AGE 65
CONDITIONAL RIGHT TO RENEW FROM AGE 65 TO AGE 75; PREMIUMS GUARANTEED TO AGE 65

MELVYN D TAYLOR, the Insured
Policy Number 6-334-548958

Notice of 10 day right to examine your policy – We want you to fully understand and be entirely satisfied with your policy. If you are not satisfied for any reason, you may return the policy within 10 days of its receipt. We will then refund any premiums you have paid. The policy will be considered never to have been issued.

334                    DUPLICATE                    

As you read this policy, remember that the words "you" and "your" mean you, the Insured named in the Policy Schedule on Page 3.  The words "we," "our" and "us" mean Provident Life and Accident Insurance Company.

We will pay benefits for Total Disability or other covered loss resulting from Injuries or Sickness subject to the definitions, exclusions and other provisions of this policy.  Loss must begin while the policy is in force.

This policy is a legal contract between you and us.  It is issued in consideration of the payment in advance of the required premium and of your statements and representations in the application.  A copy of your application is attached and made a part of the policy.

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE TO AGE 65 AT GUARANTEED PREMIUMS:**  You have the right to continue this policy in force to age 65 by paying premiums when due. The premiums shown on Page 3 are guaranteed to age 65.

**CONDITIONAL RIGHT TO RENEW FROM AGE 65 TO AGE 75; PREMIUMS ARE NOT GUARANTEED:**  If you are actively and gainfully employed full time when you attain age 65, you have the right to renew this policy to age 75 for as long as you continue to be so employed. You must pay premiums when due at our premium rates in effect at time of renewals. (For further conditions, see the page titled "Additional Provisions on Premiums, Renewals, Etc."   ·See Page 6 for the benefit provisions that will be included in the continued policy.)

## GUIDE TO POLICY PROVISIONS

Page

Renewal Conditions . . . . . . . . . . . . . . . . . . . . . . . . 1

Policy Schedule . . . . . . . . . . . . . . . . . . . . . . . . . 3

Definitions (age, period of disability, Injuries, Sickness, Physician,
  Total Disability, your occupation, etc.) . . . . . . . . . . . . . 4

Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Pre-Existing Condition Limitation . . . . . . . . . . . . . . . . 4

Benefits
  Total Disability . . . . . . . . . . . . . . . . . . . . . . . . 5
  Presumptive Total Disability . . . . . . . . . . . . . . . . . . 5
  Waiver of Premium . . . . . . . . . . . . . . . . . . . . . . . 5
  Transplant Surgery . . . . . . . . . . . . . . . . . . . . . . . 5
  Rehabilitation . . . . . . . . . . . . . . . . . . . . . . . . . 6
  Treatment of Injuries (Payable if disability benefits not paid) . . 6
  Benefits When Policy Renewed From Age 65 to Age 75 . . . . . . . 6
  Payment for Part of Month . . . . . . . . . . . . . . . . . . . 6

Additional Benefits
  Residual Disability (includes revised Waiver of Premium provision) . . 7
  Cost of Living Adjustment . . . . . . . . . . . . . . . . . . . 9

Additional Provisions on Premiums, Renewals, Etc.
  Policy Term . . . . . . . . . . . . . . . . . . . . . . . . . . 11
  Grace Period . . . . . . . . . . . . . . . . . . . . . . . . . 11
  Conditional Right To Renew From Age 65 To Age 75 - Premiums Are Not Guaranteed 11
  Reinstatement . . . . . . . . . . . . . . . . . . . . . . . . . 11
  Suspension During Military Service . . . . . . . . . . . . . . . 12
  Premium Adjustment At Death . . . . . . . . . . . . . . . . . . 12

Claims
  Notice of Claim . . . . . . . . . . . . . . . . . . . . . . . . 12
  Claim Forms . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  Proofs of Loss . . . . . . . . . . . . . . . . . . . . . . . . 12
  Time of Payment of Claims . . . . . . . . . . . . . . . . . . . 13
  Payment of Claims . . . . . . . . . . . . . . . . . . . . . . . 13
  Physical Examinations . . . . . . . . . . . . . . . . . . . . . 13
  Misstatement of Age . . . . . . . . . . . . . . . . . . . . . . 13
  Legal Actions . . . . . . . . . . . . . . . . . . . . . . . . . 13

General Provisions
  Entire Contract . . . . . . . . . . . . . . . . . . . . . . . . 13
  Incontestable . . . . . . . . . . . . . . . . . . . . . . . . . 13
  Conformity With State Statutes . . . . . . . . . . . . . . . . . 13
  Assignment . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Salary Allotment Premium Payment . . . . . . . . . . . . . . . . . 14

**READ YOUR POLICY CAREFULLY**

POLICY   SCHEDULE

Insured — MELVYN D TAYLOR                     Policy Number — 6-334-548958
Effective Date — January 1, 1983             First Renewal Date — January 1, 1984
*Policy Premium — $3,318.86   (Annually)      Renewal Term — Twelve Months

This policy was issued on December 27, 1982.

--------------MONTHLY BENEFIT FOR TOTAL DISABILITY AND STARTING DATE----------------

            *$3,625.00 starting on the day of Total Disability
                  after a 30 day Elimination Period‡

-----------------MAXIMUM BENEFIT PERIODS WHILE TOTALLY DISABLED--------------------

Monthly benefits are payable for as long as the applicable Maximum Benefit Period set
forth below:

Injuries — Total Disability starting before age 65 ...................... For Life
           *Total Disability starting at or after age 65 ................ 24 Months

Sickness — Total Disability starting before age 50 ...................... For Life
           Total Disability starting at or after age 50 but
             before age 65 ................................. to age 65, but not
                                                             less than 24 months
           *Total Disability starting at or after age 65 ................ 24 months
---------------------------------------------------------------------------------
*Rehabilitation Expense ................................. $10,875.00 Maximum Amount

*Treatment of Injuries (Payable if disability
    benefits not paid) ................................. $1,812.50 Maximum Amount

-----------------------------ADDITIONAL BENEFITS----------------------------------
       (The premium shown for each benefit is included in the Policy Premium)

Residual Disability .....................................Page 7   Premium $374.93
    Each Residual Disability Monthly Benefit is a percentage of the Monthly Benefit
    for Total Disability.  Benefits start on the day of Residual Disability:  (1)
    after a 30 day Elimination Period‡ or, if later, (2) after the end of compensable
    Total Disability during the same period of disability.  Benefits end as set forth
    in the benefit provision.

Cost of Living Adjustment ...............................Page 9   Premium $568.65

---------------------------------------------------------------------------------
‡Elimination Period is the number of days of disability, at the start of a period of
disability, for which benefits are not payable.  The number of days in an Elimination
Period is shown above with the Benefit to which it applies.  Days of Total and/or Res-
idual Disability may be used to satisfy the Elimination Period for either Total or
Residual Disability benefits.  However, if this policy is renewed after you attain
age 65, an Elimination Period starting thereafter must consist entirely of days of
Total Disability.
---------------------------------------------------------------------------------
*If you qualify to renew this policy from age 65 to age 75 (see Page 1), benefits shown
above with an asterisk (*) will be included in the continued policy.  Premiums then
payable will be those in effect at time of renewals.
            (Policy Schedule is continued on next page.)

POLICY SCHEDULE (continued)


THIS POLICY IS ISSUED IN LIEU OF AND REPLACES:

POLICY NO. 6-334-526298 DATED July 1, 1982

## DEFINITIONS

**age,** when used before a number, such as in "age 65", means the ending date of the policy term in which you attain that age. A policy term is described on the page titled "Additional Provisions on Premiums, Renewals, Etc."

**Injuries** means accidental bodily injuries occurring while your policy is in force.

**Sickness** means sickness or disease which is first manifested while your policy is in force.

**Physician** means any legally qualified physician other than you.

**Total Disability** means that due to Injuries or Sickness:

1.  you are not able to perform the substantial and material duties of your occupation; and
2.  you are under the care and attendance of a Physician.

**your occupation** means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled.

**period of disability.** Successive periods of disability will be considered separate periods of disability unless the later period:

1.  is due to the same or a related cause; and
2.  starts less than six months after the end of the previous period of disability.

**Monthly Benefit for Total Disability** is shown on Page 3.

## EXCLUSIONS

This policy does not cover loss caused by:

1.  war or any act of war, whether war is declared or not; or
2.  pre-existing conditions (see next provision).

## PRE-EXISTING CONDITION LIMITATION

We will not cover loss starting within two years of the Effective Date of this policy which is caused by a Pre-existing Condition unless the condition:

1.  was disclosed and not misrepresented in answer to a question in the application for this policy; and
2.  is not excluded by name or specific description.

After two years from the Effective Date of the policy, a Pre-existing Condition that is not excluded by name or specific description will be covered as set forth in paragraph 2 of the provision titled "Incontestable." A Pre-existing Condition means an accidental bodily injury which occurred before the Effective Date of the policy or a sickness or disease which manifested itself before the Effective Date of the policy.

## BENEFITS

**TOTAL DISABILITY**
We will pay the Monthly Benefit for Total Disability as follows:

1. Benefits are payable for Total Disability due to Injuries or Sickness.
2. Benefits start on the day shown on Page 3. They do not accrue before that day.
3. Benefits are payable while a period of Total Disability continues. But, in no event are benefits payable beyond the applicable Maximum Benefit Period shown on Page 3 during a period of disability.

**PRESUMPTIVE TOTAL DISABILITY - LOSS OF SPEECH, HEARING, SIGHT OR THE USE OF TWO LIMBS**
You will be presumed totally disabled if Injuries or Sickness results in:

1. the entire and irrecoverable loss of speech or hearing;
2. the entire and irrecoverable loss of sight of both eyes; or
3. the entire and irrecoverable loss of the use of both hands, both feet or one hand and one foot.

You must present satisfactory proof of your loss. Your ability to engage in any occupation will not matter. Further medical care and attendance will not be required. Benefits will be paid according to the Total Disability provisions of this policy. But, benefits will start on the date of loss if earlier than the day benefits start as shown on Page 3. If loss occurs prior to age 65, the Monthly Benefit for Total Disability will be paid as long as you live regardless of the Maximum Benefit Period shown on Page 3.

**WAIVER OF PREMIUM**
If Injuries or Sickness results in a period of more than 90 days of Total Disability, we will:

1. refund any premiums which became due and were paid during this 90 day period; and
2. waive the payment of each premium which thereafter becomes due for as long as the period of Total Disability continues. After it ends, you must again pay any premiums which become due in order to keep your policy in force.

You must present satisfactory proof of Total Disability in order for premiums to be waived.

**TRANSPLANT SURGERY**
You might be disabled from the transplant of part of your body to another person. If so, we will consider it to be the result of a Sickness.

**REHABILITATION**
Total Disability - Your participation in a program of occupational rehabilitation will
not of itself be considered a recovery from Total Disability.

Expense - If, during a period of Total Disability, you participate in a program of
occupational rehabilitation which we approve, we will pay for certain expenses you
incur.  That is, we will pay for the reasonable cost of training and education which is
not otherwise covered under health care insurance, workers' compensation or any public
fund or program.  But, we will not pay more than the Maximum Amount for Rehabilitation
Expense shown on Page 3.

A program of occupational rehabilitation must be designed to help you return to work
and be:

   1.  a formal program of rehabilitation at an accredited graduate school, college or
       business school, or at a licensed vocational school;
   2.  a recognized program operated by the federal or a state government; or
   3.  any other professionally planned rehabilitation program of training or educa-
       tion.

**TREATMENT OF INJURIES (PAYABLE IF DISABILITY BENEFITS NOT PAID.)**
If Injuries require medical treatment prescribed by a Physician, we will pay your
expenses for the treatment.  But, we will not pay more than the Maximum Amount for
Treatment of Injuries shown on Page 3 as a result of any one accident.

If you qualify for payment under this provision and also under a disability provision
of this policy because of the same accident, payment will be made under the provision
which provides the greater benefit.

**BENEFITS WHEN POLICY RENEWED FROM AGE 65 TO AGE 75**
If this policy is continued in accordance with the "Conditional Right to Renew from
Age 65 to Age 75" on Page 1, all of the benefit provisions on Pages 5 and 6 will be
included in the continued policy.  (Any additional benefit provision contained in this
policy will not be included unless it is named on Page 3 as one that will be included
in the continued policy.)  The Maximum Benefit Period for Total Disability or Presump-
tive Total Disability starting while this policy is so continued will be 24 months.
The Monthly Benefit for Total Disability will not change unless you choose to renew
with a lesser amount.

**PAYMENT FOR PART OF MONTH**
If any payment under this policy is part of a monthly benefit payment, the daily rate
will be 1/30th of the monthly benefit.

**RESIDUAL DISABILITY**
(Nothing in this provision limits the policy definition of "Total Disability.")

### DEFINITIONS

**Monthly Income** means your monthly income from salary, wages, bonuses, commissions, fees or other remuneration. Normal and customary business expenses are to be deducted; income taxes are not. Monthly income must be earned for services performed by you. It does not include dividends, rents, royalties, annuities or other forms of unearned income.

**Prior Monthly Income** means the greater of:

1.  your average Monthly Income during the 12 months just prior to the start of the period of disability for which claim is made; or
2.  your average Monthly Income during the calendar year just prior to the start of that period of disability.

**Current Monthly Income** means your Monthly Income for each month of Residual Disability being claimed.

**Loss of Monthly Income** means the difference between Prior Monthly Income and Current Monthly Income. Loss of Monthly Income must be caused by the Residual Disability for which claim is made. The difference must equal at least 25% of Prior Monthly Income to be considered Loss of Monthly Income. If Loss of Monthly Income is more than 75% of Prior Monthly Income, we will consider it to be 100%.

**Residual Disability** means that due to Injuries or Sickness:

1.  you are unable to perform one or more of your important daily business duties or you are unable to perform your usual daily business duties for as much time as is normally required to perform them;
2.  your Loss of Monthly Income is at least 25% of your Prior Monthly Income; and
3.  you are under the care and attendance of a Physician.

**Monthly Benefit for Total Disability** is shown on Page 3.

**Residual Disability Monthly Benefit** is the benefit payable under this provision. It is determined monthly by this formula:

$$\frac{\text{Loss of Monthly Income}}{\text{Prior Monthly Income}} \times \text{Monthly Benefit for Total Disability} = \text{Residual Disability Monthly Benefit}$$

### BENEFITS

We will pay the Residual Disability Monthly Benefit during Residual Disability as follows:

1.  Benefits start on the day shown on Page 3. They do not accrue before that day.
2.  Benefits are not payable for any period when Total Disability benefits are payable.

3. Benefits are payable until age 65.
4. The first six monthly payments for Residual Disability will be the greater of:
   a. 50% of the Monthly Benefit for Total Disability; or
   b. the Residual Disability Monthly Benefit determined for each month.

We have the right to require proof of your Current Monthly Income and Prior Monthly Income.

**WAIVER OF PREMIUM**
For periods of disability starting before age 65, the Waiver of Premium provision on Page 5 is replaced by the following:

   "WAIVER OF PREMIUM - TOTAL DISABILITY AND RESIDUAL DISABILITY

   If Injuries or Sickness results in a period of more than 90 days of Total and/or Residual Disability, we will:

   1. refund any premiums which became due and were paid during this 90 day period; and
   2. waive the payment of each premium which thereafter becomes due for as long as the period of disability (Total and/or Residual) continues. After it ends, you must again pay any premiums which become due in order to keep your policy in force.

   You must present satisfactory proof of disability in order for premiums to be waived."

COST OF LIVING ADJUSTMENT

## DEFINITIONS

CPI-U means the Consumer Price Index for All Urban Consumers. It is published by the Bureau of Labor Statistics of the United States Department of Labor. If the CPI-U is discontinued or if its method of computation is changed, we may use another nationally published index. An index comparable in scope and purpose to the CPI-U will be chosen. CPI-U will then mean the chosen index.

Review Date means each anniversary date of the start of a period of disability.

Index Month means the calendar month three months before the Review Date. But, the first Index Month means the calendar month three months before the start of a period of disability. All changes in the CPI-U will be measured from the first Index Month.

Monthly Benefit for Total Disability is shown on Page 3.

Adjusted Monthly Benefit for Total Disability means the Monthly Benefit for Total Disability plus the Cost of Living Adjustment.

## BENEFITS

For Total or Residual Disability, the Cost of Living Adjustment will be computed on each Review Date. In computing the adjustment, we will compare the CPI-U for the latest Index Month to the one for the first Index Month.

Annual computations of the Cost of Living Adjustment will end on the earliest of:

    1.  the date a period of disability ends (see Page 4);
    2.  the date a benefit period ends; or
    3.  your 65th birthday.

If the computations end because of 1 or 2 above, benefits payable at the start of a later period of disability will not include the Cost of Living Adjustment. A new first Index Month and Review Date will apply to a later period of disability.

If the computations end because of 3 above and if you qualify for monthly benefits after your 65th birthday for a period of disability that starts before your 64th birthday, we will continue to pay the same monthly benefit amount payable just before your 65th birthday. No more adjustments will be made. One adjustment will be made on the first Review Date for a period of disability that starts between your 64th and 65th birthdays.

If Injuries or Sickness results in a period of disability that lasts at least one year, your benefits will be adjusted as follows:

For Total Disability-

    1.  For any Monthly Benefit for Total Disability which accrues on or after each Review Date, we will pay instead the Adjusted Monthly Benefit for Total Disability.

2.  On each Review Date, the Adjusted Monthly Benefit for Total Disability will be computed by multiplying the Monthly Benefit for Total Disability by a factor equal to the CPI-U for the latest Index Month divided by the CPI-U for the first Index Month.  But, the Adjusted Monthly Benefit for Total Disability will not:

    a.  be paid if you are engaged in any gainful occupation;
    b.  exceed the Monthly Benefit for Total Disability increased at 7% compounded annually from the first to the latest Index Month;
    c.  exceed two times the Monthly Benefit for Total Disability; or
    d.  be reduced below the amount of the Monthly Benefit for Total Disability.

3.  If during a period of disability you qualify for Total Disability benefits after Residual Disability benefits were payable, we will start paying the Adjusted Monthly Benefit for Total Disability.  It will be paid as if your entire period of disability had been Total Disability.

4.  If you receive benefits under the Presumptive Total Disability provision of the policy, the Adjusted Monthly Benefit for Total Disability will only be paid if you are not engaged in any gainful occupation.

**For Residual Disability—**

1.  For any Residual Disability Monthly Benefit which accrues on or after each Review Date, we will adjust your Prior Monthly Income.

2.  On each Review Date, your Prior Monthly Income will be multiplied by a factor equal to the CPI-U for the latest Index Month divided by the CPI-U for the first Index Month.  The result is your adjusted Prior Monthly Income.  It will be used to figure your Loss of Monthly Income.  It will also be used in the formula to compute the Residual Disability Monthly Benefit.  Your adjusted Prior Monthly Income will not:

    a.  exceed your Prior Monthly Income increased at 7% compounded annually from the first to the latest Index Month; or
    b.  be reduced below your Prior Monthly Income at the start of the period of disability.

3.  If during a period of disability you qualify for Residual Disability benefits after an Adjusted Monthly Benefit for Total Disability was payable, we will compute your Residual Disability Monthly Benefit based on both:

    a.  your adjusted Prior Monthly Income described in 2 above; and
    b.  the amount of the Adjusted Monthly Benefit for Total Disability last payable before the start of Residual Disability.  (This amount will be used in the formula instead of the Monthly Benefit for Total Disability.)

4.  If during a period of disability you incur a Loss of Monthly Income which is deemed to be a 100% loss, the Residual Disability Monthly Benefit will be paid.  It will be equal to the monthly benefit amount for Total Disability payable just before the start of Residual Disability.  This monthly benefit amount will not, however, be changed by a later Cost of Living Adjustment as long as your Loss of Monthly Income is deemed a 100% loss.

## ADDITIONAL PROVISIONS ON PREMIUMS, RENEWALS, ETC.

**POLICY TERM**
The first term of this policy starts on the Effective Date shown on Page 3. It ends on the First Renewal Date also shown. Later terms will be the periods for which you pay renewal premiums when due. All terms will begin and end at 12:01 A.M., Standard Time, at your home. The renewal premium for each term will be due on the day the preceding term ends, subject to the grace period.

**GRACE PERIOD**
This policy has a 31 day grace period. This means that if a renewal premium is not paid on or before the date it is due, it may be paid during the next 31 days. During the grace period, the policy will stay in force.

**CONDITIONAL RIGHT TO RENEW FROM AGE 65 TO AGE 75; PREMIUMS ARE NOT GUARANTEED**
(Continued from Page 1)
You have the right to renew this policy to age 75 for as long as you continue to be actively and gainfully employed full time. We have the right to require proof from time to time that you are so employed. If you cease to be so employed before age 75 (except by reason of Total Disability), this policy will terminate; except that coverage will continue to the end of any period for which premium has been accepted.

Premiums must be paid when due. They will be based on our table of rates by attained age in effect at time of renewals for persons in your same rate class who are insured under policies of this form. Other than your attained age, the factors used to determine your rate class will be the same as those that applied to you on the Effective Date of this policy.

The benefit provisions which will be included in this policy, if it is continued after you attain age 65, are described on Page 6.

**REINSTATEMENT**
If a renewal premium is not paid before the grace period ends, the policy will lapse. Later acceptance of the premium by us or by our agent authorized to accept payment without requiring an application for reinstatement will reinstate this policy.

If we or our agent require an application, you will be given a conditional receipt for the premium tendered. If the application is approved, the policy will be reinstated as of the approval date. Lacking such approval, the policy will be reinstated on the 45th day after the date of the conditional receipt unless we have previously written you of our disapproval.

The reinstated policy will cover only loss that results from Injuries which occur after the date of reinstatement or Sickness which starts more than 10 days after such date. In all other respects, your rights and ours will remain the same, subject to any provisions noted on or attached to the reinstated policy.

## SUSPENSION DURING MILITARY SERVICE

If you enter full-time active duty in the military (land, sea or air) service of any nation or international authority, you may suspend your policy. But, you may not suspend the policy during active duty for training lasting 3 months or less. The policy will not be in force while it is suspended, and you will not be required to pay premiums. Upon receipt of your written request to suspend the policy, we will refund the pro-rata portion of any premium paid for a period beyond the date we receive your request.

If your full-time active duty in military service ends before age 65, you may place this policy back in force without evidence of insurability. Your coverage will start again when:

1. we have received your written request to place the policy back in force; and
2. you have paid the required pro-rata premium for coverage until the next premium due date.

However, your request and premium payment must be received by us within 90 days after the date your active duty in the military service ends. Premiums will be at the same rate that they would have been had your policy remained in force. The policy will not cover any loss due to Injuries which occur or Sickness which starts while the policy is suspended. In all other respects you and we will have the same rights under the policy as before it was suspended.

## PREMIUM ADJUSTMENT AT DEATH

Any premium paid for a period beyond the date of your death will be refunded to your estate.

## CLAIMS

## NOTICE OF CLAIM

Written notice of claim must be given within 20 days after a covered loss starts or as soon as reasonably possible. The notice can be given to us at our home office, Chattanooga, Tennessee, or to our agent. Notice should include your name and the policy number.

## CLAIM FORMS

When we receive your notice of claim, we will send you forms for filing proof of loss. If these forms are not given to you within 15 days, you will meet the proof of loss requirements by giving us a written statement of the nature and extent of your loss within the time limit stated in the Proofs of Loss section.

## PROOFS OF LOSS

If the policy provides for periodic payment for a continuing loss, you must give us written proof of loss within 90 days after the end of each period for which we are liable. For any other loss, written proof must be given within 90 days after such loss.

If it was not reasonably possible for you to give written proof in the time required, we will not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than one year from the time specified unless you were legally incapacitated.

**TIME OF PAYMENT OF CLAIMS**
After receiving written proof of loss, we will pay monthly all benefits then due you
for disability.  Benefits for any other loss covered by this policy will be paid as
soon as we receive proper written proof.

**PAYMENT OF CLAIMS**
Benefits will be paid to you.  Any benefits unpaid at death will be paid to your
estate.

If benefits are payable to your estate, we can pay benefits up to $3000 to someone
related to you by blood or marriage whom we consider to be entitled to the benefits.
We will be discharged to the extent of any such payment made in good faith.

**PHYSICAL EXAMINATIONS**
We, at our expense, have the right to have you examined as often as reasonably neces-
sary while a claim is pending.

**MISSTATEMENT OF AGE OR SEX**
If your age or sex has been misstated, the benefits will be those the premium paid
would have purchased at the correct age or sex.

**LEGAL ACTIONS**
No legal action may be brought to recover on this policy within 60 days after written
proof of loss has been given as required by this policy.  No such action may be brought
after the expiration of the applicable statute of limitations from the time written
proof of loss is required to be given.


## GENERAL PROVISIONS

**ENTIRE CONTRACT**
This policy with the application and attached papers is the entire contract between
you and us.  No change in this policy will be effective until approved by one of our
officers.  This approval must be noted on or attached to this policy.  No agent may
change this policy or waive any of its provisions.

**INCONTESTABLE**

1.  After this policy has been in force for two years during your lifetime, we can-
    not contest the statements in the application.

2.  No claim for loss incurred or disability that starts after two years from the
    Effective Date of this policy will be reduced or denied on the ground that a
    sickness or physical condition not excluded by name or specific description had
    existed before the Effective Date of this policy.

**CONFORMITY WITH STATE STATUTES**
Any provision of this policy which, on its effective date, is in conflict with the laws
of the state in which you reside on that date is amended to conform to the minimum
requirements of such laws.

**ASSIGNMENT**
No assignment of interest in this policy will be binding on us until a copy is on file
with us.  It must be approved by one of our officers.  We are not responsible for the
validity of any assignment.

## SALARY ALLOTMENT PREMIUM PAYMENT

In consideration of the Salary Allotment Agreement between your employer and us, we agree to accept Policy Premiums as billed to your employer.

The conditions of this rider are:

1.  The policy will not continue in force beyond the time for which the premium is paid, subject to the grace period.

2.  If your employer fails to pay premiums when due because of clerical error or negligence, your insurance under the policy will not be prejudiced.

3.  This rider will be void if:

    a.  your employment with your employer ends;

    b.  the Salary Allotment Agreement is terminated; or

    c.  for any reason, your employer fails to pay premiums.

4.  If this rider is voided, premiums will be due and payable as required in the policy.

# PROVIDENT
# LIFE AND ACCIDENT
### INSURANCE COMPANY

CHATTANOOGA, TN 37402

**APPLICATION FOR DISABILITY INSURANCE**                    № 257194

---

**1** **(a) Name** (Print in full)
Last: T A Y L O R
First & Middle: M E L V Y N  D.

**(b)** Height: 5 ft. 8 in.

**(c)** Weight: 155

**(d) Sex** M ☒  F ☐   **(e) Birthdate:** Mo. 5  Day 18  Yr. 37   **(f)** Age, last birthday: 45

**(g) State of Birth:** (Country if other than U.S.) PA

**(h) Social Security No.:** 2 6 7 4 8 6 9 3 0

---

**2** **(a) Residence Address** (Print):
Street: 9681 Conch shell Manor    Apt. #
City: Plantation    State: FL    Zip Code: 33324

**Prior Address Within 2 Years**
Street:    Apt. #
City:    State:    Zip Code:

**(b) Business Address** (Print):
Street: 2633 E. Commercial Blvd
City: Ft. Lauderdale    State: FL    Zip Code: 33308

**(c) Send Premium Notices to:**  ☒ Business Address   ☐ Residence Address

---

**3** **(a) Occupation:** Endodontist \ D.D.S.
**(b) Exact duties:** Endodontist
**(c) Employer:** Melvyn D. Taylor, D.D.S., P.A. (Rosenbaum + Taylor DDS PA)
**(d) Nature of business:** Endodontist \ D.D.S.
**(e)** How long have you been employed in your present occupation? 12½ yrs.
**(f)** How long have you been employed by your present employer? 10½ yrs.
**(g)** Are you actively at work fulltime in the above occupation? Yes ☒ No ☐

---

**4** **(a) Annual Earned Income From Your Occupation for Federal Tax Purposes** (After Business Expenses, if any):

|  | Actual Prior Calendar Year | Current Annual Rate of Earned Income |
|---|---|---|
| Salary | $ 100,000 | $ 105,000 |
| Fees |  |  |
| Commissions |  |  |
| Other (describe) |  |  |
| TOTAL | $ 100,000 | $ 105,000 |

Comments, if any, regarding change in income:

**(b)** Did you report Unearned Income* for Federal Tax purposes in excess of $2,500 for the Prior Calendar Year?

Yes ☒  No ☐  If "Yes" show amounts ........ $    $

*(Such as dividends, interest, net rentals, pensions, etc.)

FORM 1807

**(c)** Does your net worth exceed $1,000,000? Yes ☒ No ☒ (if "Yes", give details below. Amounts expressed to the nearest $10,000 are acceptable. Show current values less indebtedness.)



| CURRENT NET WORTH | |
|---|---|
| Cash, Savings, Stocks & Bonds | $ |
| Personal Property (such as jewelry, furnishings) | |
| Personal Residence | |
| Other Real Estate | |
| Business Interest | |
| Other | |
| TOTAL $ | |

**5** **(a)** Do you have, or are you applying for other:

(1) Individual, Association or Group disability income coverage?    Yes ☒    No ☒

(2) Formal employer sick pay or Union disability income coverage not included in (1)? Yes ☒    No ☒

(3) Business Overhead Expense disability coverage?    Yes ☒    No ☒

(Give details below of all disability coverage in force and applied for. Type should be shown as: I — Individual, A — Association, G — Group, E — Employer Sick Pay or Union, and BOE — Business Overhead Expense).



| MONTHLY DISABILITY COVERAGE | | | | |
|---|---|---|---|---|
| Company or Source | Type (I, A, G, E or BOE) | Monthly Disability Amount | Benefit Period Accident | Sickness |
| Paul Revere | I | 1500 | Life | Life |
| Provident LHA | BOE | 6000 | 6 mo. | 12 mo. |
| Provident LHA | I | 2500 | Life | Life |

**(b)** Does any of the above coverage include a Social Security supplement or substitute benefit? Yes ☒ No ☒ . If "Yes", Give the company and amount of such benefit:

PROVIDENT L&A - $350

**(c)** Are you covered by Social Security?    Yes ☒    No ☒

**(d)** Is any of the above disability coverage to be replaced by the policy being applied for?    Yes ☒    No ☒ (If "Yes," complete Form 1807-Q5)

**(e)** Do you have, or are you applying for, life insurance?    Yes ☒    No ☒    (If "Yes," give details below.)



| LIFE INSURANCE | | |
|---|---|---|
| Company | Amount | Year Taken |
| NWM | 500000 | 1995 |
| Provident LHA | 1000000 | 1998 |

QUESTIONS 6 THRU 10 NEED NOT BE ANSWERED IF A PROVIDENT MEDICAL EXAM, DATED ON OR AFTER THE DATE OF THIS APPLICATION, IS BEING FURNISHED.

| | | Yes | No |
|---|---|---|---|
| **6** | Have you ever been treated for or ever had any known indication of: | | |
| | **(a)** Diabetes, cancer or venereal disease? | ☐ | ☒ |
| | **(b)** Disease or disorder of the back, neck or spine, or arthritis or rheumatism in any form? | ☐ | ☒ |
| | **(c)** Emotional, mental, nervous, urinary or digestive disorder? | ☐ | ☒ |
| | **(d)** High blood pressure or disease of the heart or circulatory system? | ☐ | ☒ |
| | **(e)** Disease or disorder of the reproductive organs, breasts, eyes, ears or speech? | ☐ | ☒ |
| | **(f)** Allergy, asthma, emphysema or any disease of the lungs? | ☐ | ☒ |
| **7** | Have you ever had surgery? | ☒ | ☒ |
| **8** | Have you ever been advised to have surgery not yet performed? | ☐ | ☒ |
| **9** | Other than above, have you, within the past five years, had medical or surgical advice or treatment, had a physical check-up or examination, or been under observation for any disease or disorder? | ☒ | ☐ |
| **10** | Do you have a physical impairment or deformity? | ☐ | ☒ |
| **11** | Do you take any type of prescribed medication? | ☐ | ☒ |
| **12** | Have you ever made application for Disability, Hospital, Surgical, Medical or Life Insurance which has been declined or postponed; or has any such insurance been modified, rated or cancelled? (If "Yes" give names in space below of organization, kinds of insurance, dates and reasons.) | ☐ | ☒ |
| **13** | Have you ever presented a claim for loss due to injuries or sickness? (If "Yes," give names of all organizations, date, nature and duration of disability.) | ☒ | ☐ |

Explain fully all "Yes" answers to Questions 6 through 13. IDENTIFY QUESTION NUMBER. Include diagnoses, dates, durations and names and addresses of all attending physicians and hospitals.

#9 - Howard Rudwick M.D. - May, 1982 - Routine Exam for Exec. App.
2620 Hollywood Blvd. #215, Hollywood FL 33020
Saul Nitzberg, M.D. - 1979 - Routine Exam
5100 Hollywood Blvd. Hollywood, FL 33021

| | | | |
|---|---|---|---|
| **14** | Will your employer pay for all Accident and Sickness disability coverage to be carried by you? | Yes ☒ | No ☒ |
| **15** | How much premium is paid with this application? ○ | | |

**I UNDERSTAND AND AGREE AS FOLLOWS:**

(a) To the best of my knowledge and belief, all of the foregoing statements and all of those in Part II, if any, of this Application are true, complete, and correctly stated. They are offered to Provident Life and Accident Insurance Company as the basis for any policy issued on this Application.

(b) Provident Life and Accident Insurance Company will incur no liability until: (a) the first full premium is paid; and (b) any policy applied for has been delivered to and accepted by me. When I accept any such policy, my state of health must be the same as set forth in this Application; except that, if at least a minimum premium has been paid in exchange for the receipt bearing the same number as this Application, the insurance will be in force as set forth by the terms of the receipt.

(c) The Agent or Broker cannot accept risks; nor can the Agent or Broker make or alter contracts. Notice to or knowledge of any agent, broker or medical examiner will not be notice to or knowledge of Provident Life and Accident Insurance Company unless it is set out in writing in this Application.

I have received a disclosure concerning: (1) the Medical Information Bureau; and (2) an investigative consumer report which may be made for use with this Application.

I authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organization, institution or person that has any records or knowledge of me or my health, to give to Provident Life and Accident Insurance Company and/or its reinsurers any such information.

I authorize all said sources, except the Medical Information Bureau, to give such records or knowledge to Equifax, Inc. This agency is employed by Provident Life and Accident Insurance Company to collect and send such information.

A copy of this authorization shall be as valid as the original.

Signed at Ft. LAUDERDALE, FL.

City        State

this 3 day of Nov 19 82        Signature of Proposed Insured X _____

Branch Office or Agency: ABRAHAM, AXELROD & FRAIDSTERN, INC.
2535 N. 40th Avenue
Hollywood, Florida 33021

I certify that I have truly and accurately recorded on this application the information supplied by the Proposed Insured

_____ (Licensed Agent's or Broker's Signature)
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

FT. LAUDERDALE DIST. OFFICE

09372 09103-005-IDE        Taxpayer I. D. Number 59-1565277

FORM 1807        AGENT OR BROKER CODE

№ 257194

## SALARY ALLOTMENT AGREEMENT

This memorandum witnesses an agreement between _ROSENBAUM +_ _Taylor D.D.S, P.A._ of _Ft. LAUDERDALE, Fl._ (hereinafter called 'the Employer) and Provident Life and Accident Insurance Company of Chattanooga, Tennessee (hereinafter called the Insurance Company) as follows:

The Employer agrees as respects policies issued by the Insurance Company to certain individuals: (Check below)

☐ To make salary deductions for required premiums for such policies and to remit such premiums to the Insurance Company when due; or

☐ To pay a portion of the required premiums and to make salary deductions of the remainder of the required premiums for such policies, and to remit such premiums to the Insurance Company when due; or

☒ To pay in full the required premiums for such policies and to remit such premiums to the Insurance Company when due.

In consideration of this, the Insurance Company agrees to accept premiums for such policies on a reduced basis in accordance with its published rates for policies where premiums are so deducted and so remitted.

It is mutually understood and agreed that either the Employer or the Insurance Company may terminate this Agreement by thirty days' notice in writing to the other party hereto.

Dated and effective this _16_ day of _FEBRUARY_ 19_76_

_Rosenbaum + Taylor, DDS, PA._ Employer

by _[signature]_

_Secretary-Treasurer_ Title

### PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY

by _D. Dixon Rule_

**Assistant Vice President**

Form 1476 (Rev. 6–69)                                    Printed in U.S.A.

EXHIBIT E

**TO BE SIGNED IN DUPLICATE**

PLAAP00007

SUMMARY SHEET

Salary Allotment Plan
EPP Plan
Buy-Out Plan

| Pending Dates | | RC Follow-up    UMH Follow-up |
| --- | --- | --- |

**NEW PLAN**

- ☐ S/A Plan
- ☑ 10/12 Plan
- ☐ EPP Plan
- ☐ Buy-Out Plan
- ☐ Key Man

**ADDITION TO**

| Existing | Pending |
| --- | --- |
| ☐ S/A Plan | ☐ S/A Plan |
| ☐ 10/12 Plan | ☐ 10/12 Plan |
| ☐ EPP Plan | ☐ EPP Plan |
| ☐ Buy-Out Plan | ☐ Buy-Out Plan |
| ☐ Key Man | ☐ Key Man |

Comments:

Risk No. **11993**    No. of Apps **2**    Underwriter _____

Name of Company: **Rosenbaum & Taylor, DDS, PA**

Applicant's Names:

1. UNDERWOOD, KATHLEEN H
2. LEISTNER, ANGELIN M
3. Taylor, Melvyn D.
4. Rosenbaum, Jerry H.
5.
6.
7.
8.
9.
10.
11.
12.
13.
14.
15.
16.
17.

18.
19.
20.
21.
22.
23.
24.
25.
26.
27.
28.
29.
30.
31.
32.
33.
34.

PLAAF00006

**EXHIBIT F**

Form 1129 (Rev. 11/73)

11993

ACCIDENT DEPARTMENT

09372

THIS IS A LIST OF PREMIUMS DUE FOR THE MONTH INDICATED
EACH ITEM MUST BE ACCOUNTED FOR

THIS IS NOT AN INVOICE. PLEASE REMIT PAYMENT PROMPTLY,
WITH ONE COPY IN THE ENCLOSED ENVELOPE

| NAME | | DATE | AMOUNT | CODE |
|---|---|---|---|---|
| A BASIAN LEISTNER | JUL 11 | 15.45 | 07-82 |
| JERRY N ROSENBAUM | JUL 11 | 166.92 | 07-82 |
| JERRY N ROSENBAUM | JUL 11 | 34.19 | 07-82 |
| MELVIN D TAYLOR | JUL 11 | 203.24 | 01-82 |
| MELVIN D TAYLOR | JUL 11 | 42.53 | |

404.33

245.82
201.11

909.31

PAID
SEP 30 1982
Amt 446.93

* WAIVER OF PREMIUM

LEGEND OF CODES

1-CREDIT FOR REPLACED POLICY        3-CHARGE FOR UNDER PAYMENT
2-CREDIT FOR OVER PAYMENT           4-CREDIT FOR PREVIOUSLY
                                       TERMINATED POLICY

EXHIBIT C

**PROVIDENT
LIFE & ACCIDENT**
INSURANCE COMPANY

CHATTANOOGA, TN 37402

September 20, 1982

Rosenbaum & Taylor, DDS,PA
2633 E. Commercial Blvd.
Ft. Lauderdale, FL  33308

Provident Disability Insurance
Risk Number: 11993
Re Premium Due: August, 1982
Amount Due: $909.31

Dear Policyholder:

The premium described above is unpaid according to our records.  However, we have received your remittance accompanied by the billing for the month of August.

If the premium in question has been overlooked, won't you please send it along promptly?  A copy of the billing for the outstanding premiums is enclosed.

If your records reflect payment, please send us a copy of your cancelled check, or any other information which will help us locate the missing payment.

May we hear from you within 15 days from the date of this letter?  A self addressed envelope is enclosed for your convenience.

Sincerely,


Accounting/Accident Department


Enclosure
83171


177

PLAAP00045

11993
ROSENBAUM & TAYLOR DDS PA
ROSENBAUM & TAYLOR DDS PA
3037 E COMMERCIAL BLVD
FT LAUDERDALE, FL          33308

CHATTANOOGA, TENNESSEE 37402
ACCIDENT DEPARTMENT

| AGENCY NO. | PAGE NO. | MO. YR. | OFF. |
|---|---|---|---|
| 09163 | 001 | 08-01-91 | 013 |

| DIV NO. | BROKER CODE | POLICY NUMBER | CODE | NAME | EFF DAY | PREMIUM DUE | PLEASE EXPLAIN ANY DIFFERENCE IN PAYMENTS |
|---|---|---|---|---|---|---|---|
| 06 | 012 | BE 526296 | | JERRY H ROSENBAUM | 01 M | 34.19 | |
| 06 | 001 | 334 548954 | | JERRY H ROSENBAUM | 01 M | 204.00 | |
| 06 | 006 | 337 5041916 | | JERRY H ROSENBAUM | 01 M | 229.87 | |
| 06 | 001 | 334 548958 | | MELVYN D TAYLOR | 01 M | 248.92 | |
| 06 | 002 | 335 836766 | | MELVYN D TAYLOR | 01 M | 125.96 | |
| 06 | 006 | 337 5023645 | | MELVYN D TAYLOR | 01 M | 313.22 | |
| 06 | 006 | 337 5031731 | | MELVYN D TAYLOR | 01 M | 188.13 | |
| 06 | 012 | 173 5031733 | | MELVYN D TAYLOR | 01 M | 89.51 | |
| | | | | | | 1,433.80 | |

THIS IS AN INVOICE. PLEASE REMIT PAYMENT PROMPTLY IN THE ENCLOSED ENVELOPE

1HS IS A LIST OF PREMIUMS DUE FOR THE MONTH INDICATED EACH ITEM MUST BE ACCOUNTED FOR

*WAIVER OF PREMIUM
+AUTOMATIC BENEFIT INCREASE INCLUDED

LEGEND OF CODES
1-CREDIT FOR REPLACED POLICY    3-CHANGE FOR UNDER PAYMENT
2-CREDIT FOR OVER PAYMENT    4-CREDIT FOR PREVIOUSLY TERMINATED POLICY

PLAAP00107

# PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY
## CHATTANOOGA, TENNESSEE 37402
### ACCIDENT DEPARTMENT

RISK 11993

ROSENBAUM & TAYLOR DDS PA
3037 E COMMERCIAL BLVD
FT LAUDERDALE, FL          33308

AGENCY NO. 09163   PAGE NO. 001   MO. YR. 09-01-91   OFF. 013

| DIV NO. | BROKER CODE | POLICY NUMBER | CODE | NAME | EFF DAY | PREMIUM DUE | PLEASE EXPLAIN ANY DIFFERENCE IN PAYMENTS |
|---|---|---|---|---|---|---|---|
| 06 | 012 | BE 526296 | | JERRY H ROSENBAUM | 01 M | 34.19 | |
| 06 | 001 | 334 548954 | | JERRY H ROSENBAUM | 01 M | 204.00 | |
| 06 | 006 | 337 5041916 | | JERRY H ROSENBAUM | 01 M | 229.87 | |
| 06 | 001 | 334 548958 | | MELVYN D TAYLOR | 01 M | 248.92 | |
| 06 | 002 | 335 836766 | | MELVYN D TAYLOR | 01 M | 125.96 | |
| 06 | 006 | 337 5023645 | | MELVYN D TAYLOR | 01 M | 313.22 | |
| 06 | 006 | 337 5031731 | | MELVYN D TAYLOR | 01 M | 188.13 | |
| 06 | 012 | 173 5031733 | | MELVYN D TAYLOR | 01 M | 89.51 | |
| | | | | | | 1,433.80 | |

THIS IS A LIST OF PREMIUMS DUE FOR THE MONTH INDICATED
EACH ITEM MUST BE ACCOUNTED FOR

THIS IS AN INVOICE, PLEASE REMIT PAYMENT PROMPTLY
IN THE ENCLOSED ENVELOPE

*WAIVER OF PREMIUM
+AUTOMATIC BENEFIT INCREASE INCLUDED

LEGEND OF CODES
1-CREDIT FOR REPLACED POLICY    3-CHARGE FOR UNDER PAYMENT
2-CREDIT FOR OVER PAYMENT    4-CREDIT FOR PREVIOUSLY TERMINATED POLICY

PLAAP00106

P R O V I D E N T   L I F E   A N D   A C C I D E N T   I N S U R A N C E   C O.

9/10/91

ROSENBAUM & TAYLOR DDS PA
3037 E COMMERCIAL BLVD
FT LAUDERDALE,FL        33308

PROVIDENT DISABILITY INSURANCE
RISK NUMBER: 11993
PREMIUM PAID TO: AUGUST   1991
AMOUNT DUE: 2,867.60

DEAR CLIENT FIRM:

PREMIUM PAYMENT STATUS FOR YOUR PLAN OF INSURANCE IS SHOWN ABOVE.
IF YOUR RECORDS AGREE WITH OURS, PLEASE SEND US THE AMOUNT DUE SO
THAT THE INSURANCE WILL BE IN FORCE WHEN NEEDED FOR THE DISABILITY
OF A COVERED EMPLOYEE.  IF YOU HAVE ALREADY PAID THE PREMIUM, PLEASE
SEND US A COPY OF YOUR CANCELLED CHECK.

PREMIUM PAYMENT MUST BE CURRENT TO KEEP YOUR PLAN OF INSURANCE IN
FORCE.  TO ASSIST YOU IN BECOMING CURRENT, WE WILL DELAY FINAL
HANDLING UNTIL 30 DAYS FROM THE DATE OF THIS LETTER.  PLEASE CONTACT
US BY THEN TO AVOID TERMINATION OF THE INDIVIDUAL INSURANCE POLICIES
IN YOUR PLAN.

THANK YOU FOR YOUR PROMPT COOPERATION.

SINCERELY,

CUSTOMER SERVICE REPRESENTATIVE
ACCIDENT DEPARTMENT

COPY TO

MIAMI BRANCH OFFICE
PROVIDENT LIFE & ACCIDENT
P O BOX 344180
CORAL GABLES, FL  33114

TELEPHONE   (305) 443-1898

PLAAP00108

DISABILITY INSURANCE **11993**

09/06/94

DISABILITY OPERATIONS

H    ROSENBAUM & TAYLOR DDS PA
     3037 E COMMERCIAL BLVD
     FT LAUDERDALE, FL  33308

10 01 94        1,689.14

OFFICE    013 MONTHLY        1
AGENCY    09163
RISK      11993
          ACCT# 000001005501-01

AMT PAID      REASON

| | | | | |
|---|---|---|---|---|
| DI06 | 5041916 | | JERRY H ROSENBAUM | 285.90 |
| DI06 | 548954 | | JERRY H ROSENBAUM | 204.00 |
| OE06 | 526256 | | JERRY H ROSENBAUM | 34.19 |
| OE06 | 5031733 | 2 | MELVYN D TAYLOR | 125.01 |
| DI06 | 5031731 | 2 | MELVYN D TAYLOR | 251.01 |
| DI06 | 5023645 | | MELVYN D TAYLOR | 391.61 |
| DI06 | 836766 | | MELVYN D TAYLOR | 148.50 |
| DI06 | 548958 | | MELVYN D TAYLOR | 248.92 |

TOTAL      1,689.14

IN ORDER TO KEEP OUR RECORDS UP TO DATE, PLEASE PROVIDE CURRENT ADDRESSES FOR
ANY PERSON LEAVING THE GROUP.

MIAMI              0013  G

RETURN
THIS PORTION

PLEASE INDICATE ANY CORRECTION BELOW:

NAME _____

STREET _____

CITY/STATE _____ ZIP _____

| 27 | Date Due | Total Premium |
|---|---|---|
| | 10/01/94 | S      1,689.14 |

DISABILITY OPERATIONS
ACCT # 000001005501-01

11993   ROSENBAUM & TAYLOR DDS PA
        3037 E COMMERCIAL BLVD
        FT LAUDERDALE, FL  33308

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY
ACCIDENT DEPARTMENT
P. O. BOX 12027
CHATTANOOGA, TN      37401

OFFICE    013
AGENCY    09163

09/04/94

1061300412422 110100010055013 04001689149 299994090432

27

10 01 94        1,689.14

DISABILITY OPERATIONS
ACCT # 000001005501-01

11993   ROSENBAUM & TAYLOR DDS PA
        3037 E COMMERCIAL BLVD
        FT LAUDERDALE, FL  33308

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY
ACCIDENT DEPARTMENT
P. O. BOX 12027
CHATTANOOGA, TN      37401

OFFICE    013
AGENCY    09163

09/06/94

1061300412422 110100010055013 04001689149 299994090432

PLAAP00137

DISABILITY INSURANCE

10/09/94

DISABILITY OPERATIONS

H

ROSENBAUM & TAYLOR DDS PA
3037 E COMMERCIAL BLVD
FT LAUDERDALE, FL  33308

11 01 94          1,689.14

OFFICE    013 MONTHLY         1
AGENCY   09163
RISK       11993

ACCT# 000001005501-01

AMT PAID          REASON

| | | | | |
|---|---|---|---|---|
| DI06 | 5041916 | | JERRY H ROSENBAUM | 285.90 |
| DI06 | 548954 | | JERRY H ROSENBAUM | 204.00 |
| OE06 | 526296 | | JERRY H ROSENBAUM | 34.19 |
| OE06 | 5031733 | 2 | NELVYN D TAYLOR | 125.01 |
| DI06 | 5031731 | 2 | NELVYN D TAYLOR | 251.01 |
| DI06 | 5023645 | 2 | NELVYN D TAYLOR | 391.61 |
| DI06 | 836766 | | NELVYN D TAYLOR | 148.50 |
| DI06 | 548958 | | NELVYN D TAYLOR | 248.92 |

TOTAL          1,689.14

IN ORDER TO KEEP OUR RECORDS UP TO DATE, PLEASE PROVIDE CURRENT ADDRESSES FOR
ANY PERSON LEAVING THE GROUP.

MIAMI          0013   G

PLEASE INDICATE ANY CORRECTION BELOW:

NAME _____

STREET _____

CITY/STATE _____ ZIP _____

R E T U R N
THIS PORTION

| Date Due | Total Premium |
|---|---|
| 11/01/94 | $   1,689.14 |

11993    ROSENBAUM & TAYLOR DDS PA
3037 E COMMERCIAL BLVD
FT LAUDERDALE, FL  33308

DISABILITY OPERATIONS
ACCT # 000001005501-01

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY
DISABILITY OPERATIONS
P. O. BOX 2702
MEMPHIS, TN   38101-2702

OFFICE    013
AGENCY   09163

10/09/94

0120000010055010l2 l00819941l0ll9940 00l689l40l0ll995l l1009l9940000002O

11 01 94          1,689.14

DISABILITY OPERATIONS
ACCT # 000001005501-01

11993    ROSENBAUM & TAYLOR DDS PA
3037 E COMMERCIAL BLVD
FT LAUDERDALE, FL  33308

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY
DISABILITY OPERATIONS
P. O. BOX 2702
MEMPHIS, TN   38101-2702

OFFICE    013
AGENCY   09163

10/09/94

0120000010055010l2 l00819941l0ll9940 00l689l40l0ll995l l1009l9940000002O

PLAAP00135

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

### CASE NO. 99-6302-CIV-DAVIS/BROWN

MARK S. JAFFE,

          Plaintiff,

v.

PROVIDENT LIFE AND
ACCIDENT INSURANCE COMPANY,
a foreign company,

          Defendant.

_____/



FILED by _____ D.C.

MAR 2 1 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

### ORDER

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment [D.E. #56], and Defendant's Motion to Strike Plaintiff's Demand for Jury Trial [D.E. #45].[1] This action arises out of Defendant Provident Life and Accident Insurance Company's ("Provident") denial of Plaintiff Mark Jaffe's claim for disability payments under an insurance contract he entered into with Defendant. The question dispositive of both motions is whether the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001-1461, preempts Plaintiff's state law contract cause of action and governs this case. In turn, the Court finds that resolution of the preemption question requires further evidence to determine whether at least one non-owner employee carried or was eligible to carry disability insurance as part of Jaffe Eye Institute's plan. Accordingly, the parties are ordered to submit evidence with explanatory memoranda solely on the question whether Dr. Susan Luscombe's insurance policy included, or could have included, disability coverage. If

---

[1] We reject as patently frivolous Plaintiff's argument that Defendant's motion to strike is untimely.

# EXHIBIT H

Luscombe was eligible for disability coverage, ERISA controls this action. If not, Plaintiff's disability policy is beyond ERISA's reach and Plaintiff has properly plead a common law breach of contract claim.[2]

### STANDARD OF REVIEW

Because Provident's Motion to Strike relies on evidence outside the scope of the pleadings, we review both the Motion to Strike and Plaintiff's Motion for Summary Judgment under the standards set forth in Fed. R. Civ. P. 56. A moving party is entitled to summary judgment only where no genuine issue of material fact exists and the party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988).

### BACKGROUND

The Court states only the facts pertinent to the instant motions. Plaintiff, Mark Jaffe, practiced ophthalmology and eye surgery at the Jaffe Eye Institute ("JEI"), a professional association owned in equal parts by Plaintiff, two of his brothers, and his father, Norman Jaffe. The "partnership" was in fact a corporation and the "partners" were paid by the corporation as employees. (*See* Plaintiff's Motion for Summary Judgment, Exhibit M, p. 21). Plaintiff entered into a disability insurance contract with Defendant in April 1990. From 1990 through 1997, JEI paid the policy

---

[2] If ERISA controls this action then Plaintiff is not entitled to a jury trial. *See Broaddus v. Florida Power Corp.*, 145 F.3d 1283 (11th Cir. 1998); *Stewart v. KHD Deutz of Am. Corp.*, 75 F.3d 1522 (11th Cir. 1996) (no Seventh Amendment right to a jury trial under ERISA). Moreover, were we to follow the few cases from other jurisdictions holding to the contrary, Plaintiff in the instant case seeks purely equitable remedies and those cases are therefore distinguishable.

2

premiums on Plaintiff's behalf pursuant to a Salary Allotment Agreement that JEI entered into with Provident. Under the agreement, JEI paid in full the premiums for individual employees' insurance policies. (*See id.*, Exhibit D). In 1998 and thereafter, Plaintiff either paid the disability premiums or reimbursed JEI for the premiums it paid.

Plaintiff contends that JEI paid disability policy premiums only on behalf of its owners as a benefit of ownership, but that JEI paid health and malpractice policy premiums on behalf of all employees. Defendant contends that JEI paid disability policy premiums for at least one non-owner employee, Dr. Susan Luscombe. The parties produced the following evidence on this issue:

> (1) Invoices dated August 1992 and November 1992 stamped as paid to Provident by JEI for monthly premiums on seven insurance policies, including one to Dr. Susan Luscombe (*see* Plaintiff's Motion for Summary Judgment, Exhibit D);
>
> (2) A Salary Allotment Agreement between JEI and Defendant pursuant to which JEI, as "employer," agreed "[t]o pay in full the required premiums" for policies issued by Defendant "to certain individuals" (*see id.*); and
>
> (3) Deposition testimony from Dr. Norman Jaffe, Plaintiff's father and partner in JEI. (*See id.*, Exhibit P, p. 30).

Norman Jaffe testified that his uncertain recollection was that Dr. Luscombe only received health and malpractice insurance from JEI because only owners are eligible for disability insurance. (*See id.* at p. 26). However, he later makes an inconsistent statement. After being shown what counsel represented to him as "documents from Provident, what we call the Provident risk jacket for disability insurance policies issued . . . to Jaffe Eye Institute," Norman Jaffe stated: "From this, it looks like she [Dr. Luscombe] was still an employee of the practice and it looks like the corporation made out a check for her disability insurance." (*See id.* at p. 30).[3] The shortcoming the Court finds in the

---

[3] It is unclear whether Norman Jaffe was shown only the invoices presently in evidence, or something more.

3

evidence is that nowhere do the invoices indicate what type of insurance each premium covered. No explanatory materials have been submitted with the premium invoices or Salary Allotment Agreement. Thus, Dr. Luscombe, the sole non-owner employee, might have carried only health insurance, or might have carried both health and disability insurance. Norman Jaffe's inconclusive deposition testimony is insufficient to convince the Court either way on this crucial point.

After suffering a heart attack in 1998, Plaintiff filed a disability claim with Defendant pursuant to his policy, which Defendant denied. Plaintiff filed a two count complaint in the 17th Judicial Circuit Court in and for Broward County, Florida, alleging breach of the insurance contract and failure to pay residual and total disability benefits. Defendant removed the action to this Court alleging diversity of citizenship. The parties then filed the instant motions seeking this Court's ruling on the applicability of ERISA to the claims.

## DISCUSSION

The parties have argued the elements of "superpreemption," which the Court finds an overbroad inquiry in this case. In *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207 (11th Cir. 1999), the Eleventh Circuit explained two different, although related, kinds of ERISA preemption which the Supreme Court first outlined in *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983):

> The first kind is what this circuit has called complete preemption or "super preemption." Superpreemption arises from Congress's creation of a comprehensive remedial scheme in 29 U.S.C. § 1132 for loss or denial of employee benefits. When Congress comprehensively occupies a field of law, "any civil complaint raising this select group of claims is necessarily federal in character" and thus furnishes subject-matter jurisdiction under 28 U.S.C. § 1331. Therefore, federal courts have subject-matter jurisdiction over state-law claims that have been superpreempted, and defendants may remove to federal court those actions that contain such claims.

. . . .

4

The second kind of preemption we will call "defensive." It originates in ERISA's express preemption provision, 29 U.S.C. § 1144(a).[4] Defensive preemption provides only an affirmative defense to certain state-law claims. As an affirmative defense, defensive preemption does not furnish federal subject-matter jurisdiction under 28 U.S.C. § 1331 . . . . On the other hand, defensive preemption does require dismissal of state-law claims.

*Butero*, 174 F.3d at 1211-12.

The *Butero* court explained that there is complete preemption, or "superpreemption," when four elements are satisfied:

> (1) The Plaintiff's policy was an employment benefit plan subject to ERISA;
> (2) The Plaintiff has standing to sue under ERISA;
> (3) The Defendant is an ERISA entity; and
> (4) The Plaintiff's complaint seeks relief identical to benefits available under ERISA.

*Id.* at 1212-14. Defensive preemption, on the other hand, requires only that the Plaintiff's claim (1) relate to (2) an ERISA plan. *Id.* at 1215 (citing 29 U.S.C. § 1144(a); and *Lordmann Enters. v. Equicor, Inc.*, 32 F.3d 1529, 1532 (11th Cir. 1994)).[5]

In the instant case, the Defendant has set up the affirmative defense of ERISA preemption, and has moved to strike Plaintiff's jury demand on the same grounds. Plaintiff moves to strike Defendant's affirmative defense, asserting that ERISA is inapplicable to this action. Therefore, there

---

[4] "[T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). Defensive preemption arising under section 1144(a) has also been characterized as "conflict" or "ordinary" preemption. *See Hiemann v. National Elevator Indus. Pension Fund*, 187 F.3d 493, 513 n.4 (5th Cir. 1999) (Garza, J., concurring in part and dissenting in part).

[5] To the extent that both super and defensive preemption require proof of "an ERISA plan," the two concepts are related. In addition, where a Plaintiff's claims are superpreempted, they are also defensively preempted, although the converse is not true. *See Butero*, 174 F.3d at 1215.

5

being no question about the existence of subject matter jurisdiction,[6] we are not concerned with the existence *vel non* of superpreemption and our inquiry focuses on the narrower question of whether 29 U.S.C. § 1144(a)'s defensive preemption clause requires recharacterization and/or dismissal of Plaintiff's common law breach of contract claims.

The Supreme Court has given the "relates to" preemption clause the same expansive interpretation which Congress intended: "[A] state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 45, 49, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987) (quoting *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 729, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985)). Because Plaintiff seeks benefits which he claims are due under a disability insurance contract, if the insurance contract is part of an ERISA plan, there can be no dispute that Plaintiff's claims "relate to" that plan. Thus, the issue dispositive of the instant motions is whether Plaintiff's claims arise out of an ERISA plan, and we turn now to that question.

### *Was Plaintiff's Policy An Employment Welfare Benefit Plan Subject To ERISA?*

"The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." *Harper v. American Chambers Life Ins. Co.*, 898 F.2d 1432, 1433 (9th Cir. 1990). For present purposes, an "employee welfare benefit plan" is "any (1) 'plan, fund or program,' (2) established or maintained (3) by an employer, (4) to provide participants or their beneficiaries (5) [disability] benefits through an insurance policy. 29 U.S.C. § 1002(a)." *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207,

---

[6] The parties are of diverse citizenship and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

6

1214 (11ᵗʰ Cir. 1999) (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11ᵗʰ Cir. 1982) (en banc)).[7]  There is no dispute that element (5) is satisfied in the case at bar.  The parties disagree as to whether the remaining four elements are met on these facts.

We have a "plan."  An employee welfare benefit plan exists whenever, "from the surrounding circumstances, a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits."  *Donovan*, 688 F.2d at 1373; *see also Slamen v. Paul Revere Life Ins. Co.*, 166 F.3d 1102, 1104 (11ᵗʰ Cir. 1999).  The intended benefits in the present case are the potential payment of monies pursuant to the disability insurance policies.  The intended beneficiaries are Plaintiff, the other owner-employees, and Dr. Luscombe, if she received disability insurance.  Financing was provided entirely by JEI through monthly premium payments pursuant to the Provident-JEI Salary Allotment Agreement.  A reasonable person could figure out procedures for receiving benefits, as Plaintiff did here, by following the procedures outlined in the policies themselves.  *See Butero*, 174 F.3d at 1214; *see also MacDonald v. Provident Life & Accident Ins. Co.*, 1999 WL 1330803, *4 (S.D. Ala. June 1, 1999).

The Court finds that JEI is an "employer" for ERISA purposes, and therefore element (3) is satisfied.  Norman Jaffe testified, and no one disputes, that JEI was organized as a corporation whose owners were employees paid by the employer corporation.  In addition, the insurance documents in evidence state that JEI is the employer, and that Plaintiff and the other insureds were employees of

---

[7]  ERISA defines an employee welfare benefit plan as
> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise[,] . . . benefits in the event of . . . disability . . . ."

29 U.S.C. § 1002(1).

7

JEI.  The next question for the Court's determination is whether JEI "established or maintained" the

plan at issue.

"A plan is 'established' when there has been some degree of implementation by the employer

going beyond a mere intent to confer a benefit."  *Butero*, 174 F.3d at 1214.  "Acts or events that

record, exemplify or implement the decision will be direct or circumstantial evidence that the decision

has become reality--e.g., financing or arranging to finance or fund the intended benefits, establishing

a procedure for disbursing benefits, assuring employees that the plan or program exists--but it is the

reality of a plan . . . and not the decision to extend certain benefits that is determinative."  *Donovan*,

688 F.2d at 1373.

The Provident-JEI Salary Allotment Agreement is evidence of JEI's decision to extend certain

benefits by agreeing to pay the premiums on all of the policies.   Moreover, Norman Jaffe testified

that all employees' employment contracts assured certain benefits.  JEI made the decision a reality

when it paid the premiums on the policies.[8]  *See also Butero*, 174 F.3d at 1214-15 (plan "established"

where employer represented availability of insurance, took payroll deductions for premiums, sent

premium payments, and intended for insurance to take effect).

Only element (4)-the existence of a plan "participant"--remains to be established.  The Court

finds that the parties have submitted insufficient evidence on this issue.  ERISA defines "participant"

as

> any employee or former employee of an employer . . . who is or may become eligible
> to receive a benefit of any type from an employee benefit plan which covers
> employees of such employer . . . or whose beneficiaries may become eligible to
> receive any such benefit.

---

[8]  We agree with Provident that Plaintiff's commencing payment of his own premiums in
1998 does not affect our finding that the employer established or maintained the plan.

8

29 U.S.C. § 1002(7).  However, an owner-employee "cannot be considered a 'participant' for purposes of determining the existence of an employee benefit plan." *Madonia v. Blue Cross & Blue Shield of Virginia*, 11 F.3d 444, 448 (4th Cir. 1993).  At least one employee other than the owner(s) must participate in the plan to satisfy the "participant" requirement.  *See Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 407 (9th Cir. 1995) ("Neither an owner of a business nor a partner in a partnership can constitute an 'employee' for purposes of determining the existence of an ERISA plan.").  *See also* 29 C.F.R. § 2510.3-3(b) (1998) ("[T]he term 'employee benefit plan' shall not include any plan, fund, or program . . . under which no employees are participants covered under the plan.").  As the Eleventh Circuit recently explained,

> The gist of ERISA's definitions of employer, employee organization, participant, and beneficiary is that a plan, fund, or program falls within the ambit of ERISA only if the plan, fund, or program covers ERISA participants because of their employee status in an employment relationship, and an employer or employee organization is the person that establishes or maintains the plan, fund, or program.  Thus, plans, funds, or programs under which no . . . employees or former employees participate are not employee welfare benefit plans under title I of ERISA.

*Slamen*, 166 F.3d at 1104 (quoting *Donovan*, 688 F.3d at 1373) (footnotes and internal quotations omitted).[9]

In the instant case, the evidence before the Court conclusively establishes only that Plaintiff

---

[9] While an owner-employee like Plaintiff may not be considered a "participant" for the employee welfare benefit plan inquiry, a partner or shareholder is a participant for purposes of standing in 29 U.S.C. § 1132(a) and 29 U.S.C. § 1002(7).  *See Madonia v. Blue Cross & Blue Shield of Virginia*, 11 F.3d 444, 448-50 (4th Cir. 1993).  Plaintiff in the instant case clearly has standing to sue under ERISA.  He practiced for many years at JEI, drew a salary from JEI, was treated as an employee for tax purposes by JEI, and received a W-2 annually. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24, 112 S.Ct. 1344, 1348-49, 117 L.Ed.2d 581 (1992).

9

was a participant in JEI's disability plan,[10] because before the Court is his disability insurance agreement. However, as an owner-employee, Plaintiff cannot be considered a participant in determining the existence of an ERISA plan.

As to whether at least one non-owner employee was a participant, Norman Jaffe testified that only owners were eligible for disability insurance, while non-owners were eligible only for health and malpractice coverage. The invoices reflecting policy premium payments for both owners and non-owner employees do not indicate the type of insurance the premiums covered. Counsel's statement to Norman Jaffe, during the latter's deposition, that the invoices reflected only disability premiums is insufficient to convince the Court that a non-owner employee participated in JEI's disability plan. At this stage, therefore, we must reject Provident's bare assertion that Dr. Luscombe was a participant in JEI's disability plan, and reserve ruling on the instant motions until the parties have submitted evidence on the following narrow question:

> (1) Did at least one non-owner employee (Dr. Luscombe) receive, or was she eligible to receive, disability insurance under JEI's disability plan?

Accordingly, it is

---

[10] The Court finds that the relevant "plan" for our inquiry is JEI's disability plan and not JEI's overall benefits program. *See Slamen,* 166 F.3d at 1104 (analyzing life and health program available to all employees separately from disability program available only to owner); *Kemp v. IBM Corp.,* 109 F.3d 708, 713 (11th Cir. 1997) ("non-ERISA benefits do not fall within ERISA's reach merely because they are included in a multibenefit plan along with ERISA benefits."); *Agrawal v. Paul Revere Life Ins. Co.,* 2000 WL 193114, *2-4 (6th Cir. Nov. 2, 1999).

10

**ORDERED AND ADJUDGED** that the parties shall present documentary evidence and supporting memoranda to the Court on the specific question set forth above during the calendar call for this action at 9:00 a.m., Monday, March 27, 2000.

**DONE AND ORDERED** in Chambers in Miami, Florida this 21st day of March, 2000.

EDWARD B. DAVIS
CHIEF UNITED STATES DISTRICT JUDGE

cc:
David L. Kahn, P.A.
633 S.E. 3rd Avenue
Suite 202
Fort Lauderdale, Florida 33301

John T. Kolinski
Shutts & Bowen LLP
201 S. Biscayne Blvd.
1500 Miami Center
Miami, FL 33131

11

## INSURING PROVISION

In consideration of the application herefor, a copy of which is attached hereto and made a part hereof, and the payment in advance of the premium specified in the Schedule, UNUM Life Insurance Company of America does hereby insure the above-named Insured, subject to all the provisions, exceptions and reductions contained herein, attached hereto or endorsed hereon, against disability and loss, as indicated in the Schedule, resulting from:

    (a)   Sickness or disease of the Insured which first manifests itself while this policy is in force, hereafter called "sickness," or

    (b)   Accidental bodily injury occurring while this policy is in force, hereafter called "injury."

Coverage hereunder shall begin on the Policy Date.

## NOTICE OF TEN DAY RIGHT TO EXAMINE POLICY

Within ten days after its delivery to the Insured, this policy may be surrendered by delivering or mailing it to the Home Office at Portland, Maine, or to any branch office or to the agent through whom it was purchased. Upon such surrender, the Company will return any premium paid and the policy shall be deemed void from the Policy Date.

The provisions written or printed by the Company on the following pages hereof are a part of this policy.

**In Witness Whereof,** the UNUM LIFE INSURANCE COMPANY OF AMERICA has caused this policy to be signed by its President and Secretary and countersigned by a Licensed Resident Agent on the Policy Date.

_____ _Secretary_             _____ _President_

Examined by ............................................ Countersigned by ............................................................................

                                                   _Licenced Resident Agent_

## NONCANCELLABLE AND GUARANTEED RENEWABLE TO AGE 65
## QUALIFIED RIGHT OF RENEWAL THEREAFTER TO AGE 72.

EXHIBIT

IH 3-70                                                           1048-71 (10/98)

## RENEWAL PROVISION

**Renewal Provision.** The first premium under this policy in the amount shown in the Schedule is payable on the Policy Date and will continue the policy for the term specified, subject to the grace period provided herein. The policy may be continued thereafter for like terms by the periodic payment of renewal premiums as specified in the Policy Schedule until the age 65 anniversary when the coverage hereunder shall terminate with respect to any disability incurred thereafter except as otherwise provided by the "Policy Continuance After 65" provision.

Until the age 65 anniversary, the only condition for the renewal of this policy is the timely payment of premiums as herein required. While this policy is maintained in force, and before the age 65 anniversary, the Company cannot cancel the policy, increase the premiums in the Policy Schedule, reduce benefits because of change to a more hazardous occupation or place any restrictive rider hereon.

**Policy Continuance After Age 65.** The Insured has the right, by the timely payment of required premiums, to continue this policy beyond the age 65 anniversary, for as long as he is regularly and gainfully employed on a full-time basis, but not beyond the age 72 anniversary. If the Company accepts a premium which covers any period of one year or less beginning on or after the age 72 anniversary, coverage under this policy will continue until the end of such period.

The Maximum Benefit Period for Total Disability commencing after the age 65 anniversary is twenty-four months. Premiums payable on and after the age 65 anniversary will be based on the Company's table of rates then in effect for the Insured's attained age. The Company's table of rates may be changed at any time, but the change shall apply only to premiums due after the effective date of the change, and no change will be made in the premium for this policy which does not also apply to all other persons of the same attained age and rating classification covered under policies of this form.

During such continuance, the Company may at any time require proof that the Insured continues to be regularly and gainfully employed on a full-time basis. If the Insured ceases to be so employed (except by reason of Total Disability),

this policy will terminate as of the date of cessation of employment, except that coverage will continue to the end of any period of one year or less for which premium has been paid. The termination of this policy will be without prejudice to (1) any loss resulting from sickness and commencing prior to the effective date of such termination, or (2) any loss commencing within 20 days following such effective date and resulting from injury occurring on or before such date.

## DEFINITIONS

Wherever used in this policy:

"Total Disability" means the inability of the Insured to perform the duties of his regular occupation, except that if benefits are payable beyond the age 65 anniversary for continuous disability, and this policy provides benefits in excess thereof, then for the remainder of any period of his disability after such anniversary, "Total Disability" shall mean complete inability of the Insured to engage in any gainful occupation for which he is reasonably fitted in consideration of his training, education, experience and/or prior average earnings. However, the total loss by the Insured of the use of both hands, both feet, or one hand and one foot, or the total loss of speech, hearing of both ears, or sight of both eyes shall be deemed to constitute "Total Disability" so long as such total loss of use, speech, hearing or sight shall continue, irrespective of whether the Insured engages in his or any other gainful occupation; and

"Elimination Period" means the number of days at the beginning of the period of Total Disability, commencing with the first day thereof, for which no benefits are payable;

"age 65 anniversary" means the policy anniversary on or next following the Insured's sixty-fifth birthday;

"age 72 anniversary" means the policy anniversary on or next following the Insured's seventy-second birthday.

## BENEFIT PROVISIONS

**Total Disability Benefits – Sickness.** If, as the result of sickness, the Insured suffers continuous Total Disability commencing while this policy is in force, and at the same time requiring the attendance of a licensed physician other than himself, the Company will pay periodically at the rate

IH 3-70                    Page 2

12-14-1999

POLICY SCHEDULE

| | |
|---|---|
| INSURED | MELVYN D TAYLOR |
| POLICY NUMBER | LA  N505951 |
| POLICY DATE | OCTOBER 28, 1972 |
| PREMIUM TERM | ANNUALLY |
| INITIAL PREMIUM | $    828.00 |

RENEWAL PREMIUMS*    $    828.00 PAYABLE ANNUALLY UNTIL 10-28-2002.

*PREMIUM GUARANTEED TO AGE 65. THEREAFTER AT COMPANY RATES THEN IN EFFECT.

MONTHLY BENEFIT- FOR TOTAL DISABILITY $ 1,500.00

ACCIDENT ELIMINATION PERIOD-   30 DAYS.  SICKNESS ELIMINATION PERIOD-   30 DAYS.

MAXIMUM BENEFIT PERIOD- TO THE LATER OF A OR B.
                          A. AGE 65 POLICY ANNIVERSARY.
                          B. 24 MONTHS AFTER DISABILITY PAYMENTS COMMENCE.

BENEFICIARY- AS DESIGNATED IN THE APPLICATION FOR THIS POLICY UNLESS SUBSE-
QUENTLY CHANGED IN ACCORDANCE WITH THE POLICY PROVISIONS. (APPLICABLE ONLY
IF PRINCIPAL SUM PROVIDED HEREIN.)

RIDERS ATTACHED

| FORM | DESCRIPTION | BENEFIT AMOUNT | ANNUAL PREMIUM | YEARS PAYABLE |
|---|---|---|---|---|
| CIHR22-76 | RESIDUAL DISABILITY BENEFIT | SEE RIDER | $ 163.50 | 26 |
| | QUALIFICATION PERIOD...... 30 DAYS | | | |
| | MAXIMUM BENEFIT PERIOD.... SEE RIDER | | | |
| | RIDER DATE................ 08-28-1976 | | | |
| CIHR8-70 | LIFETIME MONTHLY ACCIDENT BENEFIT FOR | | | |
| | TOTAL DISABILITY | $ 1,500.00 | $    58.50 | 30 |
| | MAXIMUM BENEFIT PERIOD- | | | |
| | FOR ACCIDENT............. LIFETIME | | | |

RIDER PREMIUMS FOR THE PREMIUM TERM ARE INCLUDED IN THE POLICY PREMIUM.

CIH3-70                          PAGE 3

LA   N505951      1                              12-14-1999

UNUM LIFE INSURANCE COMPANY OF AMERICA

ENDORSEMENTS

(ENDORSEMENTS MAY BE MADE ONLY BY THE COMPANY AT ITS HOME OFFICE)

THE RENEWAL AFTER AGE 65 PROVISION OF POLICY FORM IH3-70 IS
CHANGED AS FOLLOWS:

AGE 72 IS CHANGED TO AGE 75.

THE FOLLOWING PROVISION IS ADDED TO POLICY FORM IH3-70:

TRANSPLANT DONOR BENEFIT. TOTAL DISABILITY WHICH RESULTS FROM
THE TRANSPLANT OF A PART OF YOUR BODY TO ANOTHER PERSON'S BODY
WILL BE CONSIDERED A SICKNESS. HOWEVER, SUCH TOTAL DISABILITY
WILL NOT BE COVERED IF IT BEGINS BEFORE THIS POLICY HAS BEEN
IN FORCE FOR SIX MONTHS.

SIGNED FOR THE COMPANY AT ITS HOME OFFICE.

BY

625-82                            SECRETARY

PAGE 3A

## BENEFIT PROVISIONS — Continued

of the Monthly Benefit for Total Disability specified in the Policy Schedule, provided however, that no benefit will be payable for the Sickness Elimination Period, nor for any period of disability in excess of the Maximum Benefit Period as specified in said Policy Schedule.

**Total Disability Benefits — Accident.** If, as the result of injury, the Insured suffers continuous Total Disability commencing while this policy is in force, and at the same time requiring the attendance of a licensed physician other than himself, the Company will pay periodically at the rate of the Monthly Benefit for Total Disability specified in the Policy Schedule, provided however, that no benefit will be payable for the Accident Elimination Period, nor for any period of disability in excess of the Maximum Benefit Period as specified in said Policy Schedule.

**Consecutive Disabilities.** Consecutive periods of total disability will be considered as separate periods of total disability, each subject to its own elimination period and maximum benefit period, provided that each such period is due to different causes or that each is separated by at least six months during which the Insured is continuously working on a full-time basis.

**Rehabilitation.** If the Insured is receiving Monthly Benefits for Total Disability, the Company, upon written request from the Insured, will consider a rehabilitation program for the Insured. The extent of the Company's participation in the program shall be determined by mutual agreement between the Insured and the Company giving consideration to such items as additional living costs, tuition and books. Monthly Benefits shall continue to the Insured during his rehabilitation subject to the terms of the agreement.

**Waiver of Premium for Disability Commencing Prior to Age 65.** After any Total Disability that commences prior to the age 65 anniversary has continued for ninety consecutive days, the Company will refund any premiums due and paid during the continuance of such Total Disability and will waive all premiums coming due during such Total Disability. Following such a period of disability during which the Company has waived premiums, the insurance provided in this contract shall continue in full force and effect until the next premium due date, at which time the Insured shall have the right to resume payment of premiums as they become due.

## EXCEPTIONS

This policy does not cover any loss caused by war or any act of war, whether declared or undeclared.

Under no circumstances will the Insured be considered to be suffering from more than one total disability at the same time.

## GENERAL PROVISIONS

**Entire Contract: Changes.** This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance. No change in this policy shall be valid until approved by an executive officer of the Company and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions.

**Incontestable.** (a) After this policy has been in force for a period of two years during the lifetime of the Insured, it shall become incontestable as to the statements contained in the application, and (b) No claim for loss incurred or disability (as defined in this policy) commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from the coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

**Grace Period until Age 65 Policy Anniversary.** A grace period of thirty-one days will be granted for the payment of each premium falling due after the first premium until payment of the premium covering the period ending with the age 65 anniversary, during which grace period this policy shall continue in force.

**Grace Period after Age 65 Policy Anniversary.** Unless, not less than five days prior to the premium due date, the insurer has delivered to the Insured or has mailed to his last address as shown by the records of the Company written notice of its intention not to renew this policy beyond the period for which the premium has been accepted, a grace period of thirty-one days will be granted for the payment of each premium falling due on or after the age 65 anniversary, during which grace period this policy shall continue in force.

**Reinstatement.** If any renewal premium be not paid within the time granted the Insured for payment, a subsequent acceptance of premium by the Company or by any agent duly authorized by the Company to accept such premium, without requiring in connection therewith an application for reinstatement, shall reinstate this policy; provided, however, that if the Company or such agent requires an application for reinstatement and issues a conditional receipt for the premium tendered, this policy will be reinstated upon approval of such application by the Company or, lacking such approval, upon the forty-fifth day following the date of such conditional receipt unless the Company has previously notified the Insured in writing of its disapproval of such application. The reinstated policy shall cover only loss resulting from such accidental injury as may be sustained after the date of reinstatement and loss due to such sickness as may begin more than ten days after such date. After sixty days following the age 65 anniversary, any premium accepted in connection with a reinstatement and applied to a period for which premium has not been previously paid, shall not be

## GENERAL PROVISIONS — Continued

applied to the period more than sixty days prior to the date of reinstatement. In all other respects, the Insured and the Company shall have the same rights thereunder as they had under this policy immediately before the due date of the defaulted premium, subject to any provisions endorsed hereon or attached hereto in connection with the reinstatement.

**Notice of Claim.** Written notice of claim must be given to the Company within twenty days after the occurrence or commencement of any loss covered by this policy, or as soon thereafter as is reasonably possible. Notice given by or on behalf of the Insured or the beneficiary (if designated in this policy) to the Company at its Home Office in Portland, Maine, or to any authorized agent of the Company, with information sufficient to identify the Insured, shall be deemed notice to the Company.

**Claim Forms.** The Company, upon receipt of a notice of claim, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not furnished within fifteen days after the giving of such notice, the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting, within the time fixed in this policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made.

**Proofs of Loss.** Written proof of loss must be furnished to the Company at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within ninety days after the termination of the period for which the Company is liable and in case of claim for any other loss within ninety days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.

**Time of Payment of Claims.** Benefits payable under this policy for any loss other than loss for which this policy provides any periodic payment will be paid immediately upon receipt of due written proof of such loss. Subject to due written proof of loss, all accrued benefits for loss for which this policy provides periodic payment will be paid monthly and any balance remaining unpaid upon the termination of liability will be paid immediately upon receipt of due written proof.

**Payment of Claims.** The benefit for loss of life (if provided by this policy) will be payable in accordance with the beneficiary designation and the provisions respecting such payment which may be prescribed herein and effective at the time of payment. If no such designation or provision is then effective, such benefit shall be payable to the estate of the Insured. Any other accrued benefits unpaid at the In-

sured's death may, at the option of the Company, be paid either to such beneficiary or to such estate. All other benefits will be payable to the Insured.

If any benefit of this policy shall be payable to the estate of the Insured, or to an Insured or beneficiary (if designated in this policy) who is a minor or otherwise not competent to give a valid release, the Company may pay such benefit, up to an amount not exceeding $1,000, to any relative by blood or connection by marriage of the Insured or beneficiary who is deemed by the Company to be equitably entitled thereto. Any payment made by the Company in good faith pursuant to this provision shall fully discharge the Company to the extent of such payment.

**Physical Examinations.** The Company at its own expense shall have the right and opportunity to examine the person of the Insured when and as often as it may reasonably require during the pendency of a claim hereunder.

**Legal Action.** No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

**Change of Beneficiary.** The right to change beneficiary (if designated in this policy) is reserved to the Insured and the consent of the beneficiary or beneficiaries shall not be requisite to surrender or assignment of this policy or to any change of beneficiary or beneficiaries, or to any other changes in this policy.

**Misstatement of Age.** If the age of the Insured has been misstated, all amounts payable under this policy shall be such as the premium paid would have purchased at the correct age.

If, because of misstatement of the Insured's age, the Company shall accept any premium which falls due on a date when, according to the correct age, this policy, including endorsements or attachments hereto, would not have been issued or coverage would have ceased, then the liability of the Company shall be limited to the refund, upon request, of all premiums paid for the period not covered.

**Payment of Premiums.** All premiums are payable in advance, subject to the terms of the grace period provided herein, at the Home Office of the Company in Portland, Maine, or to any authorized agent of the Company. Premiums may be paid annually, semi-annually or quarterly in advance in accordance with the Company's premium rates in force on the effective date of this policy, as elected in the application, hereof and, except in any period during which the Insured is totally disabled, the mode of premium payment may be changed on any anniversary of the effective date of this policy upon request approved in writing by the Company at its Home Office. The payment of any premium

SPECIMEN

## GENERAL PROVISIONS — Continued

shall not continue this policy in force beyond the date when the next premium is due and payable, except as may be otherwise provided by said grace period.

**Military Service Provision.** If the Insured becomes a member of the armed forces of any country or military authority, or a member of any civilian noncombatant unit serving such forces, he may elect to continue or suspend this policy. Upon receipt of written notice by the Company that the Insured has elected to suspend this policy, the Company will refund that portion of the premium which would have provided coverage for the period following the date such notice was received by the Company.

If, within five years from the date on which this policy was so suspended, the Insured terminates his full-time active duty, the policy will be reinstated without evidence of insurability, on receipt by the Company of (a) written election of reinstatement and (b) payment of the pro-rata unearned premium covering the period from the termination of such active duty to the next premium due date.

If the Insured does not terminate his full-time active duty within five years from the date on which this policy was suspended, or if he does not reinstate this policy within 90 days following termination of his full-time active duty, he may reinstate this policy then only in accordance with the Reinstatement provision.

**Conformity with State Statutes.** Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which the Insured resides on such date, is hereby amended to conform to the minimum requirements of such statutes.

**Premium Refund at Death.** In the event of the death of the Insured while this policy is in force, the Company will refund, on a pro-rata basis, any unearned premium paid by the Insured. Such refund may, at the option of the Company, be paid to the beneficiary or to the estate of the Insured or to any other person to whom benefits may be payable and under the same conditions of such payment.

**Assignment.** No assignment of interest under this policy shall be binding upon the Company unless and until the original or a duplicate thereof is filed with the Company at its Home Office. The Company will assume no responsibility for the validity or sufficiency of any assignment.

**Owner.** The Owner of this policy shall be the Insured unless other person(s) are designated as Owner in the application for this policy or designated as provided below. The Owner may change the designation of Owner by written notice during the lifetime of the Insured received at the Home Office of the Company in such form as the Company may require, accompanied by this Policy. While more than one person is Owner, all persons acting as owner shall act jointly unless such designation so endorsed or accepted by the Company provides otherwise.

The Owner during the lifetime of the Insured may exercise all rights and privileges under this policy without the consent of any person (including any contingent Owner) unless required by law or unless the designation of Owner provides otherwise, EXCEPT that (1) such power shall be subject to the rights of any assignee or other persons then of record, and (2) in processing the particulars of any claim, the Company before paying any benefit may deal with either the Insured or the Owner alone or require both to participate where necessary.

 **UNUM.**

UNUM Life Insurance Company of America
HOME OFFICE — PORTLAND, MAINE

## LIFETIME MONTHLY BENEFIT FOR ACCIDENT TOTAL DISABILITY RIDER

This rider extends the monthly benefit period for total disability. This benefit is subject to the terms of this rider and this policy.

Premiums for this benefit are shown in the rider description on page 3 of this policy. They are payable at the same time as premiums for this policy.

### LIFETIME MONTHLY BENEFIT FOR ACCIDENT

**Benefit Amount.** We will pay the Lifetime Monthly Benefit for Accident Total Disability shown on page 3 if:

(1)   the total disability is caused by injury;

(2)   the Monthly Benefit for Total Disability is payable under this policy;

(3)   the total disability begins before the policy anniversary when your age is 65; and

(4)   the total disability continues beyond the Maximum Benefit Period.

**Benefit Period.** We will begin to pay this benefit at the end of the Maximum Benefit Period in the policy.

We will stop paying this benefit on the date when total disability, as defined in the policy, ends.

### TERMINATION

Premiums for this rider are payable to the policy anniversary when your age is 65. Coverage terminates at that time except for total disability which began before that date.

### EFFECTIVE DATE

The effective date of this rider is the Policy Date. If this rider is added at a later date, the effective date will be the Rider Date shown on page 3.

Signed for us at our Home Office on the effective date.

Secretary

President

CIHR 8-70M

1003-79
(11/86)

**Unionmutual** 

**Unionmutual Stock Life Insurance Co. of America**
*A STOCK INSURANCE COMPANY*
HOME OFFICE — PORTLAND, MAINE

Special Rider attached to and made a part of Policy No. *LAN 505951* ..........................

### IMPORTANT NOTICE

Please read the copy of the application attached to this policy. Carefully check the application and write to the Company at Portland, Maine, within 10 days, if any information shown on it is not correct and complete, or if any past medical history has been left out of the application. This application is a part of the policy and the policy was issued on the basis that the answers to all questions and the information shown on the application are correct and complete.

IN WITNESS WHEREOF, the Company has caused this Rider to be executed on the Policy Date.

*Viola J. Vlahakos*

Secretary

CIHR 30-70

1068-71

 UNUM.

**UNUM Life Insurance Company of America**
**A Stock Insurance Company**
**Portland, Maine 04122**

## Change in Definition of "Total Disability"

This rider is a part of the policy to which it is attached.

The definition of "Total Disability" is hereby deleted and the following substituted therefor.

"Total Disability" means the inability of the Insured to perform the duties of his regular occupation. However, the total loss by the Insured of the use of both hands, both feet, or one hand and one foot, or the total loss of speech, hearing of both ears, or sight of both eyes shall be deemed to constitute "Total Disability" so long as such total loss of use, speech, hearing, or sight shall continue, irrespective of whether the Insured engages in his or any other gainful occupation.

This rider is subject to all the provisions, conditions and exclusions of the policy as well as any riders, amendments or agreements which are a part thereof.

IN WITNESS WHEREOF, the Company has caused this rider to be executed effective on the policy date.

Secretary

CIHR 57-70                                                                                                481-73

 **UNUM**

UNUM Life Insurance Company of America
HOME OFFICE — PORTLAND MAINE

## RESIDUAL DISABILITY BENEFIT RIDER

This rider is a part of the policy to which it is attached. It is issued in consideration of the application and the payment of the premium shown on page 3. Premiums for this rider are payable at the same time and under the same conditions as premiums for the policy.

The Company agrees, subject to the terms and conditions of this policy, to pay the benefits provided herein. In order to fully understand the benefits provided by this rider, please read your policy carefully.

### DEFINITIONS

As used in this rider:

(1) "Residual disability" means
   (a) inability of the Insured to perform one or more but not all of the material and substantial duties of his regular occupation; or

   (b) loss by the Insured of at least 25% of the time usually required for the performance of the material and substantial daily duties of his regular occupation,

   as a result of the sickness or accident which caused total disability.

(2) "Net Earned Income" means payments received by the Insured for personal services in the performance of his regular occupation or profession after deduction of usual and customary business expenses but before deduction of any income taxes. It does not include interest, dividends, rents, royalties, annuities, pensions, deferred compensation, wage continuation payments, and other forms of unearned income.

(3) "Average Net Earned Income" means the greater of:
   (a) the Insured's Net Earned Income for the twelve months immediately preceding total disability divided by twelve; or

   (b) the Insured's highest average monthly Net Earned income for any two consecutive years in the three-year period immediately preceding total disability.

(4) "Loss of Net Earned Income" means Average Net Earned Income minus monthly Net Earned Income during residual disability.

(5) "Monthly Benefit for Total Disability" means the Monthly Benefit for Total Disability specified on page 3 of the policy unless increased as follows by other benefits added by rider if the riders are listed on page 3 of the policy.

   If an Additional Benefit Rider is attached to this policy, the "Monthly Benefit for Total Disability" will be increased by the amount of Additional Monthly Benefit until the Maximum Additional Benefit Period terminates.

   If a Deferred Monthly Benefit Rider is attached to this policy, the amount of Deferred Monthly Benefit will be included in the "Monthly Benefit for Total Disability" following completion of the Deferred Benefit Elimination Period.

(6) "Residual Monthly Benefit" means

   (A ÷ B) x C where:

   A = Loss of Net Earned Income – (4) above,
   B = Average Net Earned Income – (3) above, and
   C = Monthly Benefit for Total Disability – (5) above.

(7) "Qualification Period" means the period specified in the rider description on page 3 of the policy during which total disability must be continuous.

### RESIDUAL DISABILITY BENEFIT

The Company will pay a Residual Monthly Benefit for a period of residual disability following a period of total disability which resulted from the same or a related cause if all of the following conditions are met:

(1) the total disability began prior to the policy anniversary when the Insured's age is 65; and

(2) the total disability is continuous for the Qualification Period; and

(3) the Insured suffers a Loss of Net Earned Income of more than 25% of his Average Net Earned Income as a result of such residual disability; and

(4) the Insured is not totally disabled, as defined in the policy.

The maximum Residual Monthly Benefit payable is 75% of the "Monthly Benefit for Total Disability" defined in definition (5) above.

**Residual Benefit Period.** The maximum Residual Benefit Period is the Maximum Benefit Period for Total Disability specified on page 3 of the policy if (a) total disability begins prior to the age 55 policy anniversary or (b) total disability begin on or after the age 55 policy anniversary and is continuous for at least one year.

If total disability which begins on or after the age 55 policy anniversary is not continuous for at least one year, the maximum Residual Benefit Period is limited to 24 months.

However, no Residual Monthly Benefit is payable after the age 65 policy anniversary.

**Evidence of Earned Income.** The Company may require any evidence which is needed to determine the Insured's Net Earned Income prior to disability and during a Residual Benefit Period. From time to time, the Company may require certified audits to verify such evidence and the amounts paid or payable.

**Waiver of Premium.** Premiums which are due for this policy after the 90th day of continuous total and/or residual disability and during a period for which the Residual Monthly Benefit is paid will be waived. The Company will refund all premiums due and paid during such 90 days.

**Accumulation of Elimination Period.** Periods of Total Disability immediately preceding and immediately following residual disability will be deemed to be continuous for purposes of accumulating all Elimination Periods.

**Termination of Residual Monthly Benefit.** Benefits for a period of residual disability will cease at the earliest of:

(1) the end of the Residual Benefit Period described above;

(2) the date on which residual disability, as defined above, ceases; or

(3) the date on which the average of the Insured's Net Earned Income for the preceding six months is equal to or greater than 75% of his Average Net Earned Income.

**Successive Disabilities.** This provision replaces the "Consecutive Disabilities" provision on page 5 of the policy.

Successive periods of total disability will be considered separate periods of total disability if:

(1) the new period is due to different cause(s); or

(2) the periods are separated by at least six months during which the Insured is able to perform material and substantial duties of his regular occupation and

    (a) is continuously working on a full-time basis, or

    (b) is earning at least 75% of his Average Net Earned Income.

Any such successive period of total disability will be considered a new period and be subject to its own elimination period and maximum benefit period and residual disability will be subject to a new Qualification Period.

### LIMITATIONS

The combined benefit periods for total disability and residual disability cannot exceed the Maximum Benefit Period for Total Disability specified on page 3 of the policy.

### TERMINATION

On the policy anniversary when the Insured's age is 65, the coverage under and the premium for this rider will cease.

Subject to any modifications contained herein, this rider is subject to the provisions, conditions, and exclusions of this policy and any riders, amendments, or agreements which are a part of the policy.

Signed for the Company at its Home Office on the Policy Date or the Rider Date shown on page 3 of the policy, if later.

Secretary

N505.95†

FILE

# AMENDMENT OF APPLICATION

**UNION MUTUAL LIFE INSURANCE COMPANY**                    **Portland, Maine**

I, MELVYN D TAYLOR                                    , hereby amend my application
as follows:

The policy applied for shall contain the following provision:

All rights and benefits under the Policy are reserved to the Insured, except that it is hereby agreed that premiums will be payable by the Insured's Employer, under an employee accident or health plan, and during the continuance of such plan, as certified by the Employer, the Company may deal solely with such Employer, without thereby incurring any liability to the Insured, with respect to: (1) premium billings and payment; (2) voluntary termination by the Employer of premium payments upon the Insured's termination of employment or termination under said plan; (3) refund of unearned premiums, if any, allowed by The Company upon such termination. In the event that the Insured shall continue premium payments following such termination, such premiums shall be billed to him by the Company and may be adjusted by the Company in accordance with its usual rules as to mode and amount.

I hereby agree that this change shall be an amendment to and form part of the original application and of the Policy issued thereunder.

If, by the above amendment, I have agreed to any special restriction in the Policy applied for in my original application, the consideration for such agreement shall be deemed to be the issuance to me of such Policy containing such restriction.

I hereby certify that I have executed a duplicate copy of this Amendment of Application which has been attached to the policy to which it related.

Dated at _____ this ____ day of _____ 19___

Witness _____    Signed _____

                                         Applicant

                              MELVYN D TAYLOR

12208

**PART I**

**Unionmutual** 🔵

791-2824

Q 654 00
Q 348 PA

**Insurance Application to**
**Unionmutual Stock Life Insurance Co. of America**
*A STOCK LIFE INSURANCE COMPANY*
HOME OFFICE – PORTLAND, MAINE

| 1. Proposed Insured (Print last name, first name, mid. init.) | ☒ Male ☐ Female | 3. Soc. Sec. No. 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 |
|---|---|---|

TAYLOR, MELVYN D.

4. Birthdate 5-18-37 (mo.) (day) (year) — Age Last Birthday 35

2. Address (Street & No., RFD, City, County, State and Zip Code)   Send Notices To

a. Home 800 EL DORADO PARKWAY, PLANTATION, FLA 33314 ☒
Birthplace PHILA, PA.

b. Business 2633 E. COMMERCIAL BLVD #5, FT. LAUDERDALE, FLA ☐

5. ☐ Single ☒ Married ☐ Widowed  ☐ Separated ☐ Divorced ✓

| 6. Occupation (include specific duties) | Name of Employer and Address (if different than 2b) | How long so Employed? |
|---|---|---|
| DENTIST - ENDODONTIST | SELF | 2 |

| 7. Owner, if other than Proposed Insured | State of Incorp. or Partnership | Address | Soc. Sec. No. or Taxpayer Ident. No. |
|---|---|---|---|

**8. HAVE YOU:**   Give details of each "Yes" answer

YES NO

a. Ever received or claimed benefits or a pension for sickness, injury or impairment? ☐ ☒

b. An application for life or health insurance now pending in another company? ☐ ☒

c. Flown or do you expect to fly as a pilot or crew member of any aircraft? ☐ ☒

d. Any intention of traveling or residing outside the U.S. or Canada? ☐ ☒

e. Any expectation of military service within 6 months? ☐ ☒

f. Engaged in underwater diving below forty feet, parachuting, motor vehicle racing, or do you intend to do so? ☐ ☒

**9. Insurance in force on Proposed Insured (if none, write "none")**

| Company | Year Issued | Life | Accidental Death | Monthly Income | Benefit Period Sickness | Accident |
|---|---|---|---|---|---|---|
| SUN LIFE | 1971 | $ -0- | $ -0- | $ 1200 | TO 65 | LIFE |
| | | $ | | | | |
| | | $ | | | | |
| | | | | | | |

**COMPLETE ITEMS 10-15 AND 21, IF NECESSARY, WHEN APPLYING FOR LIFE INSURANCE.**

| 10. Plan | Amt. | 12. Amt. Paid for Life Ins. with this App. $ |
|---|---|---|

13. Automatic Premium Loan Privilege will be effective unless this box is checked. ☐

**Optional Benefits:**
☐ Waiver of Premium, if eligible
☐ Accidental Death Benefit $ _____
☐
☐
☐

14. Beneficiary(ies) With Right of Change. Give name(s) and relationship(s)

Primary:

Contingent:

Amt. of Ins. (incl. any benefits checked above) Purchasable by
$ _____ Prem based on mode checked in Item 11

15. Will this insurance discontinue or change any insurance in any other Company? ☐ Yes ☐ No
Company _____ Amount _____

| Premium | Ann. | S.A. | Quar. | Mo. | P.A.C. | Oth. | Gov. Allot. |
|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**COMPLETE ITEMS 16-20 AND 21, IF NECESSARY, WHEN APPLYING FOR DISABILITY INCOME OR OVERHEAD EXPENSE INS.**

Plan **3-70**                     Monthly Benefit $ **1500**

Maximum Benefit Period:
Sickness **TO 65**    Accident **LIFE**

Elimination Period:
Sickness **30**    Accident **30**
Other:

Optional Benefits:
☒ Lifetime Sickness $ **250**    ☐ Lifetime Acc. $ _____
☐ Partial:    ☐ Sick. & Acc.    ☐ Acc. only
☐ Additional Mo. Benefit $ _____ for _____ months
  Elimination Period
☐ Deferred Mo. Benefit $ _____ after _____
☐ Daily Hospital or Nurse $ _____ per day
☐ First Day Hospital    ☐ A.D.&D. $ _____
☐ Additional Insurance Option Amount $ _____

17. Premiums    Ann.    S.A.    Quar.    PAC    Sal. Ded
    Payable    ☐    ☒    ☐    ☐    ☐

18. Amount paid for Health Insurance with this Application
    $    **COD**

19. Will any Health Insurance be discontinued if this policy is
    issued?   ☒ Yes    ☐ No    If yes give:
    Company        Amount        Date of Termination
    **SUN LIFE**    **1200**    **10/72**

20. Beneficiary(ies): Give full name(s) and relationship(s)
    (for Acc. Death Benefit only)

21. SPECIAL REQUESTS (use with Life or Health Ins.)

ALTERNATE ISSUE REQUESTED FOR $ 1000/MONTH. OTHER CRITERIA
TO BE THE SAME

22. FOR HOME OFFICE USE ONLY

IT IS UNDERSTOOD AND AGREED by the undersigned Proposed Insured and Applicant that: (1) The statements and answers given herein together with those in each Part II or Part III hereof are, to the best of my/our knowledge and belief, true and complete and correctly recorded, and are offered to induce the Company to issue the policy(ies) applied for. (2) No agent, broker, medical examiner or employee except an authorized Company employee at its Home Office has authority to determine insurability or to make or modify any contract of insurance, or to waive any requirement of the Company. (3) Except as provided under the Conditional Receipt (if any) identically herewith (if such Receipt has been given to Applicant), no insurance applied for hereunder shall become effective until the policy shall have been issued by the Company and the first premium paid in full thereon, and then only if the statements and answers referred to in Item (1) above would represent, without material change, to the best of my/our knowledge and belief, true and complete answers to the same questions, on such payment date. (4) If such Receipt has been given to Applicant, EACH AND EVERY CONDITION OF THE RECEIPT MUST BE MET BEFORE ANY INSURANCE BECOMES EFFECTIVE. (5) No corrections, additions or changes made by the Company shall be effective unless agreed to in writing by the Applicant. (6) The Applicant for any insurance shall be the Proposed Insured, unless another person or firm shall execute this application below as Applicant, and if insurance policy issued hereon providing for ownership, the Proposed Insured shall be the Owner unless otherwise designated herein.

_____ Fort Lauderdale, Fla. _____    Date Signed _____

Signature of Proposed Insured

Applicant's Name (if other than Proposed Insured)

Applicant's Signature (if other than Proposed Insured)

Printed in U.S.A.

**PART II**

**Unionmutual** 🔵

**Unionmutual Stock Life Insurance Co. of America**
A STOCK LIFE INSURANCE COMPANY
HOME OFFICE • PORTLAND, MAINE

*To be completed by Agent, if non-medical basis, or by Medical Examiner if on medical basis*

| | |
|---|---|
| 1. Full name of Proposed Insured | 1a. Birthdate |
| MELVYN TAYLOR | 8 Jul 37 |

FULL DETAILS OF EACH "YES" ANSWER
*(Include dates, duration, results and names and addresses of physicians and hospitals — identify answer by its number.)*

|  | YES | NO |
|---|---|---|
| 2. HAVE YOU EVER: | | |
| a. applied for insurance which was declined, postponed, rated or modified in any way? | ☐ | ☑ |
| b. been rejected, deferred, or discharged from military service for physical or mental reasons? | ☐ | ☑ |
| c. changed occupation or residence because of health? | ☐ | ☑ |
| d. used narcotics or sedatives habitually or been treated for alcoholism or a drug habit? | ☐ | ☑ |
| 3. Have any of your parents, brothers or sisters had diabetes? | ☐ | ☑ |
| 4. Have you any deformity, amputation or impairment of sight or hearing? | ☑ | ☐ |
| 5. a. Have you had a physical check-up within 5 years? *(Give names of physicians, dates and reason for last examination.)* | ☑ | ☐ |
| b. Did any complaints or symptoms prompt the examination? | ☐ | ☑ |
| c. Were you given any treatment, prescription or advice? | ☐ | ☑ |
| 6. HAVE YOU EVER HAD: | | |
| a. a surgical operation? | ☑ | ☐ |
| b. surgery advised and not yet performed? | ☐ | ☑ |
| c. treatment or observation in a hospital, clinic or sanitarium? | ☑ | ☐ |
| 7. HAVE YOU EVER BEEN TREATED FOR OR HAD ANY KNOWN INDICATION OF: | | |
| a. high blood pressure? | ☐ | ☑ |
| b. pain, pressure or discomfort in the chest, palpitation, heart murmur, rheumatic fever or other disorder of the heart? | ☐ | ☑ |
| c. anemia, varicose veins or other disorder of the blood or blood vessels? | ☐ | ☑ |
| d. asthma, pleurisy, tuberculosis or other disorder of the lungs or respiratory system? | ☐ | ☑ |
| e. epilepsy, convulsions, recurrent dizziness, fainting spells, paralysis, mental illness, nervous breakdown or other disorder of brain or nervous system? | ☐ | ☑ |
| f. hernia, ulcer or other disorder of the stomach, gallbladder, liver, intestines or rectum? | ☐ | ☑ |
| g. diabetes, thyroid or other glandular disorder? | ☑ | ☑ |
| h. arthritis, back trouble, gout or other disorder of the skin, bones or joints? | ☐ | ☑ |
| i. any tumor or cancer? | ☐ | ☑ |
| j. sugar, albumin or blood in your urine? | ☐ | ☑ |
| k. nephritis, kidney stones, prostatitis or other disorder of the genitourinary system? | ☐ | ☑ |
| l. any disorder of eyes or ears? | ☐ | ☑ |
| 8. OTHER THAN AS MENTIONED ABOVE, HAVE YOU IN THE LAST 5 YEARS: | | |
| a. been treated by a doctor? | ☐ | ☑ |
| b. had x-ray, electrocardiogram or other special test? | ☐ | ☑ |
| c. had any disease, illness, injury or impairment? | ☐ | ☑ |

FULL DETAILS (handwritten):

4. Myopic — Wears Corrective Lenses

5a. Life Insurance — July 1972 Stuyvsant

Life Ins. 1971

6a. T+A. age 3 yrs.

7g. Hyperthyroid 1967 Medical [illegible] — Presently Euthyroid

Pt. had Disability Ins c Unionmutual [illegible] Thyroid problem — [illegible] have complete records

**FAMILY RECORD**

| | AGE | LIVING HEALTH | AGE | DEAD CAUSE OF DEATH |
|---|---|---|---|---|
| Father | 67 | Good | | |
| Mother | 55 | Good | | |
| Brothers No. Living 1 / No. Dead 0 | 32 | Good | | |
| Sisters No. Living 0 / No. Dead 0 | | | | |
| | 32 | Good | | |

**10. Complete if female**
a. If pregnant, give expected date of delivery
b. Have you ever had any disease or disorder of the generative organs or breasts? If "yes", give details

**11. Complete if non-medical**
a. Height _____ ft. _____ in.
b. Weight _____ lbs.
c. Weight change during past year: _____
d. Cause _____

[faded statement text at bottom about statements and answers being complete and true, forming part of the contract of insurance applied for]

## Unionmutual

**Unionmutual Stock Insurance Co. of America**
**A STOCK INSURANCE COMPANY**
HOME OFFICE – PORTLAND, MAINE

### REQUEST FOR POLICY CHANGE OR REINSTATEMENT (HEALTH)

Print or Type Name of Insured    Melvyn Taylor

The undersigned hereby requests that policy number    N 505951    be modified as checked below.

**1.** Add, remove, or change the following coverage(s)

| Add | Remove | Change | Type of Coverage | New Amt. | Old Amt. |
|-----|--------|--------|------------------|----------|----------|
| ☐ | ☐ | ☐ | AD&D | $_____ | $_____ |
| ☐ | ☐ | ☐ | Hospital/Nurse | | |
| ☐ | ☐ | ☐ | Additional Ins. Option | _____ | |
| ☐ | ☐ | ☐ | Add. Mon. Benefit | | |
| ☐ | ☐ | ☐ | Deferred Mon. Benefit | | |
| ☐ | ☐ | ☐ | Non-Disabling Injury | | |
| ☐ | ☐ | ☐ | Lifetime Accident | | |
| ☐ | ☐ | ☐ | Lifetime Loss of Use | | |
| ☐ | ☐ | ☐ | Lifetime Sickness | | |
| ☐ | ☐ | ☐ | Partial Accident | | |
| ☐ | ☐ | ☐ | Partial Sickness | | |
| ☐ | ☐ | ☐ | Recovery Benefit | | |
| ☐ | ☐ | ☐ | Other (Specify) | | |
| ☒ | ☐ | ☐ | Residual Disability Benefit Rider | _____ | |

**2.** Make the following change(s):

☐ Change elimination period on policy to _____ days Accident _____ days Sickness.

☐ Change elimination period on Add. Mon. Benefit to _____ days.

☐ Change elimination period on Deferred Mon. Benefit to _____ days.

☐ Change maximum benefit period on policy to _____

☐ Change maximum benefit period on Add. Mon. Benefit to _____

☐ Remove Step Rate Premium Rider (Unless requested otherwise, coverage will continue, with no change, for the level premium rate applicable to the attained age of the Insured.)

☐ Change beneficiary to _____

☐ Add to covered person(s):

| | | | |
|--|--|--|--|
| Name | _____ | _____ | _____ |
| Relationship | _____ | _____ | _____ |
| Date of Birth | _____ | _____ | _____ |
| Sex | _____ | _____ | _____ |

☐ Remove from covered person(s):

| | | | |
|--|--|--|--|
| Name | _____ | _____ | _____ |
| Date of Birth | _____ | _____ | _____ |

☐ Other (Specify)

### APPLICATION TO REINSTATE POLICY

The undersigned hereby applies for reinstatement of policy number _____ and all coverages provided by rider.

IT IS UNDERSTOOD AND AGREED THAT: (1) The policy shall be deemed changed, reinstated or delivered, and effective, as the case may be, as of the date this application is executed; subject, however, to approval of this application by the Company at its Home Office, and payment in full of the premium(s) required in conjunction herewith. (2) The policy, if reinstated or changed so as to increase benefits thereunder, shall not become incontestable with respect to the representations made herein, or in a Part II application, or in any other application required in conjunction herewith, until expiration of a period of the same duration following the effective date of change or reinstatement as is provided under the incontestable provision of the policy with respect to the original issue of the policy, except that, if this application is furnished in connection with a requested increase in benefits, this provision (2) shall apply only to such increase in benefits. (3) If this application is not approved, any payment made to the Company in connection herewith shall be refunded by the Company to the Applicant, without interest, and any receipt given therefor will be surrendered upon request.

Signed at   FORT LAUDERDALE FLORIDA          Date Signed _____ 19 76

_____                    _____
Witness                                 Signature of Applicant

_____
Signature of Agent

If family coverage, answer for all persons covered. Include names of persons to whom "yes" answers apply.

Underline condition causing "yes" answer

**GIVE FULL DETAILS OF EACH "YES" ANSWER**
(Include date, results, and names and addresses of physicians and hospitals — identify answer by its number.)

Since you applied for the above numbered policy:

|  |  | YES | NO |
|---|---|---|---|
| 1. | Have you received or claimed benefits or a pension for any sickness, injury, or impairment? |  | ✓ |
| 2. | Have you applied for insurance that was declined, postponed, rated, or modified in any way? |  | ✓ |
| 3. | Have you been issued new insurance? (Give kind, amount, and name of company.) |  | ✓ |
| 4. | Have you done any flying other than as a fare-paying passenger on a regularly scheduled non-chartered airline? | ☐ | ✓ |
| 5. | Have you engaged in underwater diving below forty feet, parachuting or motor vehicle racing, or do you intend to do so? | ☐ | ✓ |

During the past five years:

|  |  | YES | NO |
|---|---|---|---|
| 6. | Have you had or been advised to have a surgical operation? | ☐ | ☑ |
| 7. | Have you received treatment for, or been advised to receive medical treatment for, or had any known indication of: |  |  |
| a. | high blood pressure, heart trouble, or blood vessel disease? | ☐ | ☑ |
| b. | diabetes, or sugar or albumin in urine? | ☐ | ☑ |
| c. | cyst, polyp, tumor, or cancer? | ☐ | ☑ |
| d. | asthma, tuberculosis, or any disease of the lungs or respiratory system? | ☐ | ☑ |
| e. | kidney, stomach, liver, or other disorder of the digestive system? | ☐ | ☑ |
| f. | nervous breakdown, or other mental or nervous disorder? | ☐ | ☑ |
| g. | alcoholism or drug addiction? | ☐ | ☑ |
| 8. a. | Have you consulted a physician for any reason not listed above? | ☑ | ☐ |
| b. | Did any complaints or symptom prompt the consultation? | ☐ | ☑ |
| c. | Were you given any treatment, prescription, or advice? | ☐ | ☑ |
| 9. | Have you had any disease, illness, or injury not mentioned above? | ☐ | ☑ |

*General exam 8/76*
*Dr. Nathbury*
*Hollywood Blvd.*
*Hollywood, Fla.*
*good health*

| 10. a. | Height | 5 ft 7 1/2 ins. |
|---|---|---|
| b. | Weight | 75 lbs. |
| c. | Weight change during past year _____ lbs. ☐ Gain ☐ Loss |
| d. | Cause |

11. Complete if female
   a. If pregnant, give expected date of delivery.
   b. During the past 5 years, have you had any disease or disorder of the female generative organs or breasts? (If "yes", give details above.)

IT IS UNDERSTOOD AND AGREED THAT: the representations made herein are, to the best of my/our knowledge and belief, true, complete, and correctly recorded.

Signed at _Fort Lauderdale, Florida_      Date signed _8/26/76_

_____       _____
Witness        Signature of Soliciting Agent       Signature of Insured

Date _8/26/76_

I hereby authorize any physician, hospital, clinic, insurance company or other organization, institution, or person that has any records or knowledge of me or my health, to give to the Unionmutual Stock Life Insurance Co. of America any and all information about me with reference to my health and medical history and any hospitalization, advice, diagnosis, treatment, disease, or ailment. A photographic copy of this authorization shall be as valid as the original.

_____       _____
Witness        Signature of Soliciting Agent       Signature of Insured